**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 10-cv-3770** |
| **CATERPILLAR, INC.,** | ) ) | **Judge Milton I. Shadur** |
| **Defendant** | ) ) ) | |
| **CATERPILLAR INC.,** | ) ) | |
| **Counterclaim – Plaintiff.** | ) ) | |
| **v.** | ) ) | |
| **MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,** | ) ) ) | |
| **Counterclaim – Defendants.** | ) | |

**PLAINTIFFS/COUNTER-DEFENDANTS MILLER UK LTD.'S AND MILLER
INTERNATIONAL LTD.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS COUNT 2 IN DEFENDANT/COUNTER-PLAINTIFF
<u>CATERPILLAR INC.'S COUNTERCLAIM</u>**

Plaintiffs/Counter-Defendants Miller UK Ltd. and Miller International Ltd. (collectively

"Miller"), by its attorneys, hereby submit this Memorandum of Law in support of their Motion to

Dismiss Count 2 in Defendant/Counter-Plaintiff Caterpillar, Inc.'s ("Caterpillar") Counterclaims

- 1 -

13154656.3

Against Miller (the "Caterpillar Counterclaims"). For the reasons outlined herein, Miller respectfully requests that this Court dismiss Count 2 in the Caterpillar Counterclaims for "Declaratory Judgment" with prejudice.

## INTRODUCTION

Miller filed this action for breach of contract stemming from Miller's 1999 Supply Agreement with Caterpillar (the "Supply Agreement") (Count 1), misappropriation of trade secrets (Count 2), fraudulent inducement (Count 3), and unjust enrichment (Count 4) as a result of Caterpillar's misappropriation of Miller's confidential information and trade secrets while Miller was one of Caterpillar's suppliers (Compl. ¶¶ 64-89.) Caterpillar took advantage of its relationship with Miller to surreptitiously misappropriate and use Miller's proprietary information and trade secrets for its own purposes, thereby depriving Miller of a return on the substantial investment it made in the development of its products.

Caterpillar answered the Complaint and asserted counterclaims against Miller for breach of a one-page form confidentiality agreement dated February 12, 1998 between Caterpillar and Miller Welding Engineers, Ltd., the predecessor to Plaintiff/Counter-Defendant Miller UK Ltd. (the "1998 Agreement") ("Counterclaim Count 1"). Caterpillar additionally asserted a counterclaim for a "Declaratory Judgment" that Miller is not entitled to judgment in its favor on the causes of action set forth in Miller's Complaint ("Counterclaim Count 2").

For the reasons below, Caterpillar's Counterclaim Count 2 for "Declaratory Judgment" should be dismissed because there is no remedy at law. Fed. R. Civ. Pro. 12(b)(6). Caterpillar's Counterclaim Count 2 is wholly redundant and duplicative of the affirmative claims against Caterpillar as set forth in Miller's Complaint, therefore, it is an improper use of the Declaratory Judgment Act (28 U.S.C. § 2201), and should be dismissed with prejudice.

- 2 -

## FACTUAL BACKGROUND

Miller is a leading international engineering company involved in all aspects of the design and manufacture of proprietary quick couplers, buckets and other attachments used worldwide with earthmoving equipment. (Compl. ¶¶ 7,10.) Caterpillar is an Original Equipment Manufacturer ("OEM") of equipment used in the earthmoving industry. (Compl. ¶ 8; Answer and Countercl., ¶ 9.)

### The Miller "Bug" Coupler

In 1989, Miller designed and manufactured a pin grabber quick coupler known as the "Mag 7."[1] (Compl. ¶ 19.) In the years that followed, major OEMs, including Caterpillar, turned to Miller for specifically-designed quick couplers to fit their machines. (Compl. ¶ 21.) Then, in or about 1998, Miller designed the "Bug" coupler, the world's first-ever, fully automatic, universal quick coupler. The design of this product permitted hydraulic operation within the cab of a machine with an automatic mechanical safety device. This negated the need for a manual safety pin. (Compl. ¶ 16.) The Bug coupler also was the first quick coupler to be universally compatible with most attachments, regardless of the OEM for which they were built. (Compl. ¶ 23.)

In or about 1998, Miller and Caterpillar began to discuss the manufacture and sale of Miller's proprietary couplers to Caterpillar. (Compl. ¶ 24.) On March 31, 1999, Miller and Caterpillar entered into a Supply Agreement in connection with Caterpillar's purchase of couplers designed and manufactured by Miller. (Compl. ¶ 25; Answer and Countercl., ¶ 5.) Among other things, the Supply Agreement obligated Miller to provide its proprietary trade

---

[1] A coupler connects a piece if industrial equipment, such as a backhoe, to a device such as a bucket. The Mag 7 reduced the long and often dangerous attachment changeover procedure to a speedy, simple, and safe process. In fact, the one to two hour changeover process was reduced to a mere seven seconds, hence its name. (Compl. ¶ 19.)

13154656.3

secret and confidential information to Caterpillar as a condition of Caterpillar's purchase of couplers designed and manufactured by Miller, and it also obligated Caterpillar to maintain as confidential any proprietary trade secret and confidential information provided by Miller. (Compl. ¶¶ 26-27)

In the years that followed, Miller provided to Caterpillar its proprietary trade secrets and confidential information related to the design, manufacture and testing of Miller's proprietary coupler technology pursuant to the Supply Agreement. (Compl.¶ 28.) Unbeknownst to Miller, however, Caterpillar was developing its own coupler technology based on Miller's proprietary trade secrets and confidential information. In 2008, Caterpillar advised Miller that Caterpillar would be phasing out its purchases of the Miller couplers. (Compl. ¶¶ 29-41.)

The Miller Scoop Bucket

Miller is also a leading engineering company involved in all aspects of the design and manufacture of proprietary buckets, including buckets that can be connected to equipment using Miller's proprietary couplers such as the Miller Bug coupler. (Compl. ¶¶ 7,10.) Miller engineered a revolutionary new bucket, the Miller Scoop, designed specifically for operation with quick couplers, which addressed and overcame the disadvantages of conventional buckets. (Compl. ¶ 47.) In or about 1998, Miller sought to further expand its business relationship with Caterpillar by advising Caterpillar of its innovations in bucket technology as Caterpillar did not then have a bucket that included the "integrated pin innovation" or the "triple radius innovation." Miller agreed to provide Caterpillar with access to Miller's proprietary and confidential Scoop bucket technologies and innovations based on verbal agreements and understandings that Caterpillar would purchase buckets incorporating the Miller Scoop technologies or Caterpillar would compensate Miller if Caterpillar manufactured products based on the technologies of the Miller Scoop bucket. (Compl. ¶ 50.)

- 4 -

Caterpillar subsequently requested and Miller provided substantial proprietary and confidential information in connection with Miller's Scoop bucket technologies purportedly for purposes of evaluating the commercial viability of these technologies. (Compl.¶ 51.) Based on Caterpillar's representations, Miller invested thousands of hours and hundreds of thousands of dollars in the research, design and testing of the scoop bucket technologies. (Compl. ¶ 58.) However, unbeknownst to Miller, Caterpillar planned to commercialize the confidential and proprietary integrated pin innovation of the Scoop bucket without compensating Miller. (Compl. ¶ 59.) It was not until the summer of 2006 that Miller first learned that Caterpillar decided to manufacture its own bucket product, which incorporated the integrated pin innovation of the Miller Scoop bucket without compensating Miller. (Compl. ¶ 62.)

Caterpillar answered Miller's Complaint largely denying Miller's allegations and asserting various affirmative defenses. In its counterclaim for "Declaratory Judgment" (Counterclaim Count 2), Caterpillar "denies Plaintiffs' allegations that it: (1) breached the Supply Agreement; (2) misappropriated Miller's trade secrets; (3) fraudulently induced Miller to make investments, and (4) was unjustly enriched by the same." (Answer and Countercl., ¶ 61.) Thus, Caterpillar contends because "[a]n actual case and controversy exists as to whether the allegations listed are true," Caterpillar is entitled to a "declaration of the parties' rights." (Answer and Countercl., ¶¶ 62-63.)

## STANDARD OF REVIEW

"In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint." *He v. Chertoff*, 528 F. Supp. 2d 879, 881 (N.D. Ill. 2008) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007)). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a

13154656.3

complaint, not the merits of the case. *Triad Assoc., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The court is not required to accept allegations regarding a proposition of law in deciding a motion to dismiss. *U. S. ex rel. Kennedy v. Aventis Pharms., Inc.*, 610 F. Supp. 2d 938, 946 (N.D. Ill. 2009) (*citing County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006)).

## ARGUMENT

"'The Declaratory Judgment Act allows a party to bring a lawsuit based on a reasonable apprehension that it will be sued.' It is not, however, a vehicle for bringing counterclaims to a suit that has already been filed when those counterclaims mirror defenses already raised." *U.S. v. Saporito*, 684 F. Supp. 2d 1043, 1064 (N.D. Ill. 2010); *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009). "When the original complaint puts in play all of the factual and legal theories, it makes no difference whether another party calls its pleadings counterclaims, affirmative defenses, or anything else. The original complaint brought the dispute into court, and the parties to that complaint are parties to each aspect of the imbroglio." *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) (*citing Green Pay Packaging, Inc. v. Hoganson & Associates, Inc.*, 362 F. Supp. 78 (N.D. Ill. 1973) (noting that when one party to a contract seeks a declaration of the contract's meaning, another party's counterclaim seeking to enforce the agreement is "repetitious and unnecessary."); *Rayman v. Peoples Savings Corporation*, 735 F. Supp. 842, 851-853 (N.D. Ill. 1990) (Shadur, J.) (denying motion for leave to file counterclaim because proposed counterclaim was duplicative of the defendant's defenses to the complaint).

Here, by its own admission, Caterpillar's counterclaim for "Declaratory Judgment" is repetitive and duplicative of the denials and defenses in its Answer to Miller's Complaint

13154656.3

- 7 -

(Answer and Countercl., ¶ 61.) A case and controversy already exists based on the allegations in Miller's Complaint. Caterpillar denies all of Miller's claims. (Answer and Countercl., ¶ 61.) Caterpillar is not entitled to a separate "declaration of the parties' rights" under the Declaratory Relief Act because the Court is already going to make that determination when it decides Miller's claims and Caterpillar's affirmative defenses.

Accordingly, this Court should dismiss Count 2 of Caterpillar's Counterclaim with prejudice.

## CONCLUSION

For the reasons set forth above, Counterclaim Count 2 for Declaratory Judgment in Defendant Caterpillar's Answer and Counterclaims Against Miller should be dismissed with prejudice.

\*　　\*　　\*

Dated: October 15, 2010                  Respectfully submitted,

**Miller UK Ltd. and Miller International Ltd.**
By:     /s/ Jason S. Kray
        R. Mark Halligan
        Deanna R. Swits
        Jodi Rosen Wine
        Jason S. Kray
        NIXON PEABODY LLP
        300 South Riverside Plaza, 16th Floor
        Chicago, IL 60606
        Robert A. Weikert
        NIXON PEABODY LLP
        One Embarcadero Center, 18th Floor
        San Francisco, CA 94111

13154656.3

- 8 -

**CERTIFICATE OF SERVICE**

The undersigned certifies that **PLAINTIFFS/COUNTER-DEFENDANTS MILLER UK LTD.'S AND MILLER INTERNATIONAL LTD.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF CATERPILLAR INC.'S COUNTERCLAIM** was filed electronically in compliance with the General Order on Electronic Case Filing, Section III(B)(1). As such, these documents were served on all counsel who are deemed to have consented to electronic service. Fed. R. Civ. P. 5(b)(2)(D) and Local Rule 5.9.

Robert G. Abrams, Esq.
Gregory L. Baker, Esq.
Michael P. Padden, Esq.
Mark A. Klapow, Esq.
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
(202) 783-0800 phone
(202) 383-6610 facsimile
*Attorneys for Defendant and Counter-Plaintiff Caterpillar Inc.*

/s/ Jason S. Kray
*An Attorney for Plaintiffs/Counter-Defendants Miller UK Ltd. and Miller International Ltd.*

- 8 -

13154656.3