1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2    EASTERN DIVISION

3    MILLER UK, LTD.,                    )   No. 10 C 3770
                                         )
4                    Plaintiffs,         )   Chicago, Illinois
                                         )   October 28, 2010
5                                        )   9:15 o'clock a.m.
     -vs-                                )
6                                        )
                                         )
7    CATERPILLAR, INC.,                  )
                                         )
8                    Defendant.          )

9
            TRANSCRIPT OF PROCEEDINGS - STATUS
10        BEFORE THE HONORABLE MILTON I. SHADUR

11   APPEARANCES:

12   For the Plaintiffs:      NIXON PEABODY LLP
                              300 South Riverside Plaza
13                            16th Floor
                              Chicago, Illinois 60606
14                            BY:  MS. JODI ROSEN WINE
                                   MS. DEANNA R. SWITS
15
     For the Defendant:       HOWREY LLP
16                            1299 Pennsylvania Avenue, N.W.
                              Washington, D.C. 20004
17                            BY:  MR. GREGORY L. BAKER

18

19

20

21

22

23   Court Reporter:          ROSEMARY SCARPELLI
                              219 South Dearborn Street
24                            Room 1412
                              Chicago, Illinois  60604
25                            (312) 435-5815

1    THE CLERK:  10 C 3770, Miller U.K. versus

2   Caterpillar.

3    MR. BAKER:  Good morning, your Honor, Gregory Baker

4   for Caterpillar.

5    MS. ROSEN WINE:  Jodi Rosen Wine for the

6   plaintiffs.

7    MS. SWITS:  Deanna Swits for the plaintiffs.

8    THE COURT:  Good morning.  Well, there is a lot of

9   stuff on this thing, and my suggestion is that instead of

10  standing around shifting from foot to foot, that maybe you

11  ought to sit down, hear what I have got to say, and then I

12  will hear from you,, okay?

13    MR. BAKER:  All right.

14    MS. ROSEN WINE:  Thank you, your Honor.

15    THE COURT:  Let me begin with something that the

16  parties haven't posed, and that is it is kind of fortuitous

17  that each of -- each side had brought on motions for

18  reconsideration and otherwise, because what that did was to

19  trigger my review of Caterpillar's answer, something that I

20  had not done in my customary way when it came in.  As I would

21  guess most people are aware, my bad habit and usual practice

22  is to review every filing in detail within a day or two after

23  its arrival.  And frequently that results in a sua sponte

24  opinion that I always think about as having the goal of

25  serving the purposes of federal pleading, that is, mostly the

1   function of informing the opposing party and the Court of

2   what is and what is not an issue as between the parties.

3           Well, for whatever reason, maybe it was because of

4   the length of the pleading, I didn't do that here.  But

5   because I have now conducted a detailed review of

6   Caterpillar's responsive pleading -- and I have a strong

7   feeling that it is problematic in several respects -- I am

8   going to begin there before I turn to what you have actually

9   noticed up for motions.

10          In some ways I regret to say that the answer is

11  kind of a model of how not to plead.  And I say that -- well,

12  and there are other ways in which it poses some matters that

13  call for explanation.  In the latter respect, maybe you can

14  help me -- and you don't have to stand up for this one -- on

15  what basis in Paragraph 6 does Caterpillar deny venue?

16          You don't have to stand, you can just talk loud.

17          MR. BAKER:  That is all right, Judge.  I feel

18  better standing.

19          We are not denying that venue exists, Judge.  We

20  are denying that venue exists under the provisions that they

21  have stated.

22          THE COURT:  Well, but that is not a very good way

23  to inform.  How am I supposed to guess that, what -- with a

24  flat-out denial?  If you -- if you admit that venue -- notice

25  that that statement is "Venue is proper in this judicial

1    district pursuant to" some section.  Now, the right way to

2    respond to that is that we don't challenge venue, but we

3    don't think those are the applicable provisions.  Then I know

4    and opposing counsel knows.  The way it reads literally,

5    there is a denial of venue.  Okay?  Not wise.  Okay.  But

6    that is -- that is a nit.

7            Let me talk about the problems that I really see

8    with a lot of the answer here.  I don't understand what

9    purpose is legitimately served by tacking on the repetitive

10   parroting of the sentence that says, "In all other respects

11   Caterpillar denies the allegations of paragraph" so and so

12   "of the complaint."  If you look at a lot of those, there is

13   nothing else to deny, that is, Caterpillar has been fully

14   responsive to what is said.  So you don't create anything but

15   confusion by adding that sentence.

16           Take a look, for example, at -- at Paragraph 26 --

17   26 and 27 -- 26 quotes a provision from the supply agreement.

18   And Caterpillar admits that the paragraph contains language

19   similar to that, but the purported quotation is not entirely

20   accurate.  And then you go on to say, "In all other respects

21   Caterpillar denies the allegations of Paragraph 26."  What

22   else?  Nothing.

23           Same way in 27.

24           MR. BAKER:  Your Honor --

25           THE COURT:  Even better or worse, I guess, take a

1    look at 38, which I noted particularly.  Paragraph 38 says,
2    "In 2007 Bob Meng and other Caterpillar employees visited
3    Miller's China facility in person."  Okay?  And you elaborate
4    on that somewhat.  You admit that, but you elaborate a
5    little.  You say one other Caterpillar employee and you
6    explain that Caterpillar understood or had a connection to
7    Miller U.K.  And then you say, "In all other respects
8    Caterpillar denies the allegations."  Nothing to deny.

9          So you may think that this is a small item, but
10   remember the whole purpose of federal pleading is notice
11   pleading that is intended to inform the other side and the
12   Court of what is at issue and what is not.  And so when you
13   muddy the waters this day, it doesn't really assist anybody.
14   And I singled out only a few paragraphs.  I noted -- mention
15   them.  I noted, for example, as well as the ones I have
16   talked about, 24 and 25 and 30 and 31, 32, 34.  That is
17   really not thoughtful.  And I -- and I think that -- that
18   although you may regard pleading as formalistic, thought is
19   important in connection with drafting it.

20          I also found somewhat troublesome the use of the
21   disclaimer Rule 8(b)(5) disclaimer in a couple of situations.
22   Look, for example, at paragraph -- I think 29 when it is an
23   allegation that Miller provided some proprietary information
24   in response to a request by a Cat employee during a telephone
25   conference.  Now, I am puzzled as to why anybody can say we

1    don't have enough information, sufficient to form a belief

2    about that.  An inquiry would, I suppose, get a response.  I

3    am not -- I am not asking you to do anything now or to

4    respond now, but I -- I just noted these as troubling.

5          Look at 30 -- 33 as well.  33 talks about a further

6    meeting at which there was a meeting to discuss matters in

7    February 2005, that some information was provided, and the

8    response says, "We lacked knowledge or information or

9    information sufficient to form a belief."  I don't know that

10   either.  I mean, you know, it is not as though you are the

11   third monkey or all three monkeys, you know.  Hear no evil,

12   see no evil, speak no evil.

13         30 -- 43 also jumped off the page.  43 talks about

14   over the course of the relationship dozens of Cat employees,

15   including, but not limited to, the following were exposed to

16   proprietary trade secrets.  And they list a laundry list of

17   -- I don't know, I didn't know count them -- but a great

18   many.  And the response says, "Lack information or knowledge

19   sufficient to form a belief."  Don't believe it.

20         Anyway, what is going to happen is that you are

21   going to go back and you are going to do a rewrite of this

22   response and -- I think, as I sometimes do in these

23   situations, that because I view this as a lawyer-created

24   issue, I don't think that it would be fair to Caterpillar to

25   charge it for services in having to rewrite.  So I am -- I am

1    going to require, as I say, that the response be redone so

2    that all of us are better informed about where the parties

3    are really at issue and where we don't have needless

4    complications within the thing by purported denials of things

5    where there is nothing to deny.

6         Now let me turn to the Caterpillar motion about

7    quantification of damages.  With what kind of -- as I read

8    what Miller or what the Miller entities did, they haven't

9    really complied with Rule 26.  And I can understand, as

10   Caterpillar mentioned, the possibility that some of that may

11   be attributable to the fact that the information is within

12   Caterpillar's knowledge and, therefore, it would be hard to

13   quantify to some extent.  But that is not true as to

14   everything.

15        And the rule really says that you are supposed to

16   do that.  Keep in mind -- and this is true for both sides --

17   that the rules also require in connection with discovery,

18   updating.  So if you have some information now and you get

19   more information later on, you simply update it to do that.

20        Now, why can't you do that?

21        MS. ROSEN WINE:  Well, your Honor, we did tell

22   Caterpillar's counsel that we would be supplementing the

23   disclosures as discovery progresses and also are in the

24   process of collecting all the documentation that supports the

25   damage calculation.

1          THE COURT:  Okay.

2          MR. ROSEN WINE:  They are very comm --

3          THE COURT:  How much time do you think you might

4     need?

5          MS. ROSEN WINE:  We really would like 30 days to

6     complete this because the plaintiffs are in Europe, some of

7     the documents are in China --

8          THE COURT:  Okay.

9          MS. ROSEN WINE:  -- and they have the --

10         THE COURT:  I will give you four weeks from now.

11    Keep in mind -- but again it is unexceptionable to the extent

12    that you can say accurately, well, a material part of this is

13    material that is within Caterpillar's knowledge and,

14    therefore, we are not in a position to answer that component

15    of it now.

16         MS. ROSEN WINE:  Right.

17         THE COURT:  And that is -- and they recognize that

18    that is an acceptable part of the response.

19         MS. ROSEN WINE:  Sure.

20         THE COURT:  So I think four weeks you will get.

21         MS. ROSEN WINE:  Right.  I was just going to say

22    that plaintiff's primary damage claim is really an unjust

23    enrichment theory --

24         THE COURT:  Yeah, yeah.

25         MS. ROSEN WINE:  -- which would be within the --

1    THE COURT:  Yeah.  Okay.  All right.  So that

2    motion is granted.  And the requirement is -- let's see, four

3    weeks would  make it, I think -- oh, that is bad because that

4    is Thanksgiving.  Let's make it the following Monday, which

5    would be November 29th.  Okay?

6    All right.  Now let me turn to the -- the motion to

7    dismiss Count 2 of the counterclaim.  You know, I went to

8    that one, and again I have got a -- got a major question

9    about it right at the beginning.  Let me pose this and get

10    the thing in front of me.  Count 22, which is for declaratory

11    judgment, starts out by saying, "Caterpillar incorporates by

12    reference the allegations it made in Paragraphs 1 through 10

13    above."  Now, what are Paragraphs 1 through 10?

14    MR. BAKER:  They are on Pages 36 through 38 of the

15    document, your Honor.

16    THE COURT:  Well, wait just a minute.  So that

17    basically that sets up the fact that there -- that the

18    parties have a dispute and it gives your version of it and

19    says that at -- that Miller then filed suit.  Okay.

20    Now, it then goes on to say, "Caterpillar denies

21    plaintiff's allegations that it breached the supply

22    agreement, misappropriated Miller's trade secret,

23    fraudulently induced Miller to make investments, was unjustly

24    enriched by the same."  Regrettably the -- when I read the

25    submission by Caterpillar on this motion, it really,

1    unfortunately, mischaracterizes things.

2         If you look at the  opposition of the motion, what

3    it says, for example, on Page 1 is, "Indeed in the past this

4    Court has refused to strike a compulsory declaratory judgment

5    counterclaim by Caterpillar's counterclaim here."  That is

6    not true.  I will tell you why.  Then on Page 4 it says,

7    "This Court has held that it is inappropriate to dismiss a

8    compulsory judgment counterclaim," and this times it cites

9    two cases -- no, one case at this point.  I guess there is a

10   second one later.  That is not true either, and I will

11   explain why also.

12        Then over on Page 6 -- well, I should say, by the

13   way, the caption on Page 4 that says, "This Court has refused

14   to strike compulsory counterclaims under Rule 12(f)," is also

15   inaccurate.  And then I guess the cap is that Page 6 says,

16   "Moreover, plaintiff's proposed reading of the Green Bay case

17   is contrary to the recent precedential rulings in the Century

18   Insurance and Employer Insurance of Wausau cases, which are

19   more closely analogous."

20        Why do I say that those are false?  What is "this

21   Court"?  You know, my usage, which I confess to having

22   adopted as either the lesser of two evils -- or maybe it is

23   the least of more than two evils -- is probably the result of

24   the fact that I know some of my colleagues use the term "we."

25   And I have always thought that for a district judge to use

1  "we" suggests that he or she has a tape worm or something.

2  And, you know, I use that when I sit, of course, with Courts

3  of Appeals and I speak for a panel, but I don't think that

4  you use "we" when you are a single person.

5  Other of my highly-respected colleagues -- Judge

6  Bucklo, for example -- if you look at the reproduced opinions

7  in Federal Supplement -- used the "I."  And for no good

8  reason that I can think of -- I always thought of the first

9  person singular as really -- I am just uncomfortable doing

10  that in opinions.

11  So the only trouble -- so I adopted "this Court" as

12  -- you may think of that as presumptuous, but the only time

13  that it gets really awkward is when I drop a footnote, for

14  example, and I say, "When this Court was in private

15  practice," and then I proceed to go on and say something.

16  Keep in mind -- and this is the important part of

17  it, and that is none of us -- none of us who sit in the

18  District Court makes precedent.  Our Court of Appeals reminds

19  us properly of that regularly.  Any opinions that I write or

20  any opinions that any of my colleagues write may be found

21  persuasive by other judges simply by reason of the force of

22  persuasion but not as a matter of precedent.  So the idea of

23  labeling what has been done by a couple of other judges as

24  somehow precedential when -- and indeed one of them is a

25  Magistrate Judge up in Wisconsin.

1          Now, I don't have anything against magistrate

2     judges -- I love all of ours here -- but the idea of

3     ascribing precedent to somebody who doesn't even have the

4     Article III diploma on his or her wall is really bizarre.

5     So, you know, when you make an argument like this, it really

6     ought to be an accurate one.  You ought to say, well, Judge

7     Zagel did so and so in this case and try to -- and try to

8     argue that it is more persuasive than the things that are to

9     the contrary.  But don't use "this Court" because that is

10    really not an accurate characterization.

11         Now, as it happens, to my knowledge there really is

12    only one 7th Circuit case that -- and that goes back to my --

13    to a time when I subscribed to that one in an opinion of my

14    own, and that is one that had approved an opinion by my good

15    friend Bill Bauer at a time when he was a district judge.

16    That is that Green Bay case.  So the idea of pooh-poohing the

17    Green Bay case when our Court of Appeals at least chose to

18    honor it by citing it in support of its position is really

19    troublesome.

20         Now to go to the ultimate substance, what in the

21    world is added by setting up a purported counterclaim that

22    does nothing other than to present the mirror image of what

23    is already at issue and is disputed and denied vigorously by

24    the answer?  The one thing that might be said would deal with

25    a highly unlikely scenario, that is, suppose that Miller

1    somewhere along the line surrenders or does something or

2    drops the claim, and at that point Caterpillar has not had

3    the opportunity to pose the issues that are represented by

4    the complaint.  One thing you know, and that is with Miller

5    being responsible for dismissing the counterclaim at this

6    point, there is no way in the world that they could oppose

7    the reassertion of a counterclaim at a point when their own

8    actions have really frustrated the opportunity of Caterpillar

9    to dispute the issues that both sides agree are disputed.

10          And for that reason this Count 2 counterclaim

11   really adds nothing to the dialogue.  The issues are going to

12   be precisely the same.  They are already put in place by the

13   Miller complaint and your answer and affirmative defenses.

14   And it would only be, as I say, in what would be a highly

15   unlikely circumstance, but could arise, and that is if

16   somehow they either think better or think worse of it,

17   depending on your perspective, and they drop out any portion

18   of what they are claiming.  Then at that point I would

19   cheerfully welcome reassertion of a counterclaim that would

20   then have a legitimate purpose.  It would have the purpose of

21   posing issues that have not been posed by the parties'

22   pleading and activity.

23          So the answer on that one is that I am granting --

24   and, by the way, you know, I don't have to go back -- I know

25   that both sides have looked at what I did -- how many years

1    ago was it -- 20 years ago in Rayman against People Savings

2    Corp., 735 F.Supp. 842, at Pages 851 to 853, in which I

3    explained pretty much what I have just gone through now.

4              I just want to add one other thing and that is on

5    the -- on the affirmative defenses.  All of us know that the

6    function of the affirmative defenses as set out by Rule 8(c)

7    is one that says we accept the allegations of the complaint

8    as accurate, but we are not liable at all or maybe we are

9    liable for less than is claimed because of other factors.

10   And the cases regularly say that it won't do just to parrot

11   the labels that are in there, laches, estoppel and what have

12   you.

13             Now, Caterpillar has done something more than that

14   in its setting up the affirmative defenses, although whenever

15   you see a laundry list like that, you know, the antenna goes

16   up because it gets kind of suspect.  But my feeling on that

17   one is this:  If you consider that any of these affirmative

18   defenses are really effective to block part or all of the

19   Miller -- of the Miller claims, then all of us are better off

20   by having those fronted by actually bringing them on by way

21   of a motion.  Because if it is potentially available to cut

22   Miller off at the pass by one or more of these defenses, then

23   what that would tend to do would be either narrow the scope

24   of discovery, for example.  It would really reshape the

25   lawsuit in a constructive way.

1    So what I would urge is that you take a look at
2    those affirmative defenses.  Don't let them lie fallow.  Take
3    a look at the affirmative defense.  And if there are any that
4    really would carve out or cut away aspects of the Miller
5    claim because of issues of law that are posed by that, I
6    think the most constructive thing to do is to bring those on
7    by motion.  Some of them may not require any discovery at
8    all.  Some of this would require perhaps very limited
9    discovery.  But in that way I think all of us would be better
10   advanced in terms of what is really going to have to be
11   resolved in connection with the lawsuit in factual terms.  So
12   I am simply making that as a -- what I would think of a
13   strong suggestion that may be a very constructive one for
14   those purposes.

15   Okay.  So now I dealt I think with all of the --
16   all the issues that are raised by the motions as well as I
17   guess going out of my way to pose something that I think is
18   important to moving the case forward in a constructive way.

19   My question really of both sides is, what does it
20   look like in terms of the whole discovery process on both
21   sides?  What has been done up to this point and what needs
22   remains to be done?  You don't have to tell me chapter and
23   verse on what has been done, but what does it look like for
24   the future?

25   MS. ROSEN WINE:  Your Honor, there has been written

1    discovery that has been propounded by Caterpillar and already

2    responded to by Miller and then we have recently served

3    discovery requests on Caterpillar.  It is kind of the first

4    round.  We are at preliminary stages.

5              THE COURT:  And how about what you have launched,

6    that is, that calls has Caterpillar been fully responsive to

7    that yet?

8              MS. ROSEN WINE:  Oh, we just served them, so their

9    deadline for doing so has not come.  We are also negotiating

10   a protective order right now to put confidentiality into some

11   of the documents.

12             MR. BAKER:  I agree with everything counsel said.

13             THE COURT:  Okay.  I -- it sounds to me as though

14   maybe about a three-month date for a next status to find out

15   how far down the road you have traveled would make sense,

16   unless -- and that is simply for the purpose of -- as I

17   explain all the time, I don't set -- although Rule 16 says I

18   am supposed to, I have never seen one of those schedules that

19   gets set at the beginning that doesn't get vacated, but it is

20   kind of dum to assume that one size fits all, especially a

21   complicated -- a lot of complications in this case.  So the

22   idea of setting a schedule that says all dispositive motions

23   must be filed by X date doesn't make any sense at all and the

24   other firm date schedule.

25             So instead what I do is to have statuses at

1   periodic intervals.  And when both sides are comfortable, you

2   know, that, yes, every -- everything can get done by that

3   time, I will then set a close of discovery scheduling.  So

4   with that in mind, that is my reason for suggesting about a

5   three-month date for a next status, which would put us toward

6   the very end of January.  Does that makes sense for both

7   sides?

8                MR. BAKER:  Yes, Judge, that is fine with us.

9                MS. ROSEN WINE:  Right.  I do think we will be back

10  in for entry of a protective order.

11               THE COURT:  Okay.  Let me take a look.  By the way,

12  let me see what I had previously set.

13               MS. ROSEN WINE:  Your Honor, there is a status set

14  for November 5th, which I guess we could strike.

15               THE COURT:  Well, I am going to vacate that.  That

16  doesn't make any sense.  Wait just a minute.  All right.  So

17  I am going to vacate the November 5th date for status.  And I

18  am going to replace it with a status, let's say, in the last

19  week of January, which is the last full week of January, runs

20  from Monday, the 24th, through Friday, the 28th.  And I can

21  handle 9:00 o'clock any day that week.  So if something is

22  good for you or bad for you, tell me.

23               MR. BAKER:  Any of those days would be fine for our

24  side, your Honor.

25               MS. ROSEN WINE:  Our side as well.

1        THE COURT:  All right.  I will give you Thursday
2    then, January 27, at 9:00 o'clock.  And with that that means
3    I am not going to set the particular deadline for your -- for
4    your recasting the thing because you are going to be engaged
5    in discovery process anyway.  So do it at your early
6    convenience.

7        MR. BAKER:  All right, Judge.  May I take a
8    moment --

9        THE COURT:  Sure.

10       MR. BAKER:  -- to talk with you a bit about the
11   answer because I want to be responsive to your comments.  And
12   at the same time we have certain practical difficulties in
13   responding.  For example, they act as if there are trade
14   secrets.  They haven't defined for us what the trade secrets
15   are.  So when they make an allegation that Caterpillar
16   personnel -- in Paragraph 43 they identify a long list of
17   people were exposed to their trade secrets.  We have the very
18   practical problem of how to respond to that.

19       THE COURT:  But it is not such a difficult problem.
20   You see, remember the homelier example that I gave you in
21   which it is possible to respond to something like that in
22   kind of a split way, that is, that you can respond that a
23   great many of the Caterpillar people did in fact meet with
24   Miller people, but you are not in the position to -- you can
25   then repeat the 8(b)(5) language as to because of the absence

1    of their identification of trade secrets.  In other words,

2    what you can do basically is inform.  That is the whole

3    point.

4         The problem with the kind of blanket use that I --

5    that I mentioned is that it doesn't inform about much.  It

6    doesn't inform about the things that you are really in a

7    position where you don't have information sufficient to form

8    a belief and the other parts as to which you clearly do.  And

9    so the whole goal again, as I think of it, federal pleading

10   is informing.  It is the whole idea that both sides are

11   better off and the Court is better off when the pleadings

12   really stake out where the parties are apart and where they

13   are together.  And it is not done, you see, unfortunately by

14   the kind of -- the kind of catchall that is used.  That

15   doesn't tell the kind of differentiation that I have made.

16   So it is not -- it is not a great problem.

17        You know, listen, lawyers have been drafting

18   contracts for a lot of years.  This is no different from

19   drafting a contract with attention and skill.  That is all.

20   And that is really the most important message I was trying to

21   deliver in connection with the -- it may have sounded like a

22   parade of horribles, but it was really intended to focus your

23   attention on how some of the things really didn't make sense

24   at all.  So you go back to the drawing board and put together

25   a response, and I think all of us will be better off.

1    MR. BAKER:  All right, your Honor.

2    THE COURT:  Okay?

3    MR. BAKER:  Okay.  But please don't think this

4  wasn't done without thought at the time, because it certainly

5  was.

6    THE COURT:  Oh, yeah.  Well, sometimes

7  over-thinking may be a problem.

8    MR. BAKER:  All right.

9    THE COURT:  Okay.  All right.  I mean let me put it

10  this way -- put it a little different:  Sometimes

11  over-caution can be a problem because you are concerned about

12  giving away the family jewels if you say too much, but that

13  is really not -- that is really not the case when it comes to

14  drafting a pleading.  Okay.

15    MR. BAKER:  Thank you.

16    MS. SWITS:  Your Honor, I had one other issue.

17    THE COURT:  Yes?

18    MS. SWITS:  Caterpillar has served requests for

19  admission on Miller, a lengthy request for admission, that

20  are due next week.  And in light of the fact that they are

21  going to resubmit their answer, I think it may change the way

22  in which we would respond.  Could we stay the response to the

23  request for admission until 30 days after we have received

24  the new answer?

25    THE COURT:  Well, of course --

1       MR. BAKER:  Your Honor, how would it change the

2   response?  I guess my question is would -- how would it

3   change their response?  There is either going to be an

4   admission or there is not.

5       THE COURT:  Yeah.  I really can't answer that one

6   in the blind, you know.  It doesn't sound to me as though --

7   I guess what you may be saying is that -- that sort some part

8   of their response may acknowledge that some of the aspects of

9   the request for admission are really not needed because they

10  would be obviated by that, but I can;t -- I can't tell that

11  because, you know, I haven't seen the piece of paper, so I

12  don't know.  I will tell you, you people are going to be

13  living with each -- with each other for some period of time.

14  I suppose it is not the worst thing in the world if you -- if

15  you defer to some extent the --

16      MR. BAKER:  Judge --

17      THE COURT:  -- the response to request for

18  admission.

19      MR. BAKER:  We have --

20      THE COURT:  But again I haven't seen it, you know.

21  I don't like to say --

22      MR. BAKER:  I understand, your Honor.  I just want

23  you to also know, because it hasn't been mentioned, that we

24  have already given them an extension of time, a rather

25  lengthy one, to respond to our requests for admissions.

1    These are addressed to -- these are addressed to their

2    positions.  They are not addressed to our positions.

3          MS. SWITS:  That --

4          THE COURT:  Well, I am certainly not granting the

5    motion because I haven't seen the papers.  I can't render an

6    informed decision.

7          MS. ROSEN WINE:  And, your Honor, there was no

8    extension on the requests for admissions.  The deadline is

9    this -- next Wednesday based on when the complete requests

10    were served.

11          THE COURT:  I know.  But, you know, you are posing

12    an issue that really is not before me, so I can't rule on it.

13          Thank you.

14          MR. BAKER:  Thank you, Judge.

15          MS. ROSEN WINE:  Thank you, your Honor.

16      (Which were all the proceedings heard.)

17             CERTIFICATE

18     I certify that the foregoing is a correct transcript

19    from the record of proceedings in the above-entitled matter.

20

21    s/Rosemary Scarpelli/        Date:  October 28, 2010

22

23

24

25