**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,**<br>   Plaintiffs,<br> v.<br>**CATERPILLAR INC.,**<br>   Defendant. | **Civil Action No. 10-cv-3770** |
| **CATERPILLAR INC.,**<br>   Counterclaim – Plaintiff,<br> v.<br>**MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,**<br>   Counterclaim – Defendants. | **Judge Milton I. Shadur** |

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES'
JOINT MOTION FOR ENTRY OF A PROTECTIVE ORDER**

   Plaintiffs and Counterclaim-Defendants Miller UK Ltd. and Miller International Ltd. (collectively "Miller") and Defendant and Counterclaim-Plaintiff Caterpillar Inc. ("Caterpillar") hereby submit this Memorandum of Law in support of their Joint Motion for Entry of a Protective Order. After several months of negotiation, the parties have been able to agree that good cause exists for the entry of a two-tiered protective order to protect the confidential treatment of certain materials produced during discovery, and on the bulk of the provisions that should appear in the order. Despite efforts at compromise, the parties have reached an impasse regarding one issue: what individuals will be permitted to access documents designated under the second, more restricted tier of the protective order. By way of this joint motion, the parties respectfully request that the Court resolve the issue upon which the parties disagree so that a protective order can be entered.

**FACTUAL BACKGROUND**

This is a case in which Plaintiffs allege trade secret misappropriation, breach of a confidentiality provision in a supply contract, fraudulent inducement, and unjust enrichment. Caterpillar's breach of contract counterclaim concerns a contract that Caterpillar alleges prohibited the disclosure of trade secret information to Caterpillar. The case involves both quick couplers and buckets. Plaintiffs and Caterpillar are competitors in the sale of those products.

In late September 2010, and following the parties' Rule 26 conference, counsel for Caterpillar submitted a proposed protective order to counsel for Miller. Upon receipt and review of Caterpillar's draft, Miller had objections and therefore in late October 2010 submitted to Caterpillar's counsel Miller's own proposed protective order. Caterpillar objected and requested that the parties revisit the Caterpillar proposal.

In an effort to advance the process, Miller agreed to revisit the Caterpillar proposal and made a number of substantive edits. Caterpillar objected to some of these revisions. Since then, counsel for the parties have had numerous communications regarding changes to the order, including telephone conferences on November 8 at 11 am EST, December 3 at 1 pm EST, January 20 at 4:30 pm EST, and many others between Caterpillar's counsel, Mark Klapow, and Plaintiffs' counsel, Robert Weikert. Miller's proposed order is Exhibit A. Caterpillar's proposed order is Exhibit B. These proposed orders differ in one respect as discussed in Part II *infra*.

**ARGUMENT**

**I.     GOOD CAUSE EXISTS FOR THE ENTRY OF A PROTECTIVE ORDER**

Under 765 ILCS § 1065/6 and Federal Rule of Civil Procedure 26(c)(1)(G), the Court may, for good cause, issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Information that Plaintiffs allege are trade secrets will need to be produced in discovery, such as technical drawings. Plaintiffs also seek sensitive and confidential information regarding Caterpillar's alleged trade secrets, current and future business strategy, Board of Directors

meetings, and the development and technical specifications of Caterpillar's products. The parties agree that the release of their confidential information to the public could materially damage them in their business.

Accordingly, good cause exists for the entry of a protective order in this case. On this, the parties agree.

Additionally, Caterpillar submits that because the parties both sell couplers and buckets, exposure to one party's new product data and business strategy would give the other party an unfair competitive advantage. Exhibit C, Declaration of James Tevebaugh, at ¶ 8. Protecting a party from competitive disadvantage is good cause for entry of a protective order. *Tipsword v. Ogilvy & Mather*, 1995 U.S. Dist. LEXIS 12162, at *1 (N. D. Ill. 1995) (holding protecting a party from competitive disadvantage was good cause); *see also* James W.M. Moore, *Moore's Federal Practice Third Edition*, § 26.104[1] (2010). This Circuit has found that protective orders in similar cases are generally justified as they promote discovery and protect the parties. In re *Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992) ("Confidentiality while information is being gathered not only protects trade secrets but also promotes disclosure . . ."); *Ball Memorial Hospital, Inc. v. Mutual Hospital Ins., Inc.*, 784 F.2d 1325, 1346 (7th Cir. 1986) ("Confidential information is normally made available, if at all, under a protective order . . ..").

## II. THE PARTIES DIFFER ON WHO CAN ACCESS DOCUMENTS DESIGNATED UNDER THE MORE RESTRICTED TIER OF THE PROTECTIVE ORDER

The parties agree on a two-tiered protective order. Under the less restrictive tier of the draft order, either party may designate any information it believes is confidential. That information can then be reviewed by counsel or party employees as necessary in good faith. Under the more restrictive tier of the draft order, either party may designate only highly sensitive materials that (1) contain strategic information for any period of time after 2010, (2) constitute Board of Directors minutes, or (3) reflect product research or development efforts for products

3

not yet launched or launched for less than one year before the date of this order. The parties disagree about who should have access to information marked in the more restrictive tier.

Under Miller's proposed protective order, in addition to counsel, up to three (3) designated party employees per side who "are required in good faith to provide assistance in the conduct of the litigation," would have access to documents and other information produced under the "second" or more restricted tier of the order, subject to their execution of an undertaking requiring them to both maintain the confidentiality of the documents and information and comply with all other terms of the protective order. *See* Exhibit A ¶ 24. Caterpillar's proposed protective order utilizes an "attorneys' eyes only" approach for the second tier of the protective order pursuant to which Counsel and retained experts would have access to information, but business personnel would not have such access. *See* Exhibit B ¶ 24. For this purpose, Caterpillar has advised Plaintiffs that it is prepared to treat Miller's UK outside corporate counsel, Philip Jordan, as an "attorney employed directly by" Miller for purposes of the order, thereby allowing him to see such materials. *See* Exhibit B ¶ 4.

**Miller's Position**: Miller is a successful, but small (at least relative to Caterpillar) family run business. Miller does not have in-house counsel, and its UK counsel handles Miller's corporate needs but does not have technical knowledge of Miller's products and trade secrets. Thus, it is imperative that Miller's outside counsel at Nixon Peabody be permitted to disclose and discuss with no more than three (3) Miller employee representatives *all* of the documents and other information produced in this case. Otherwise, it will be extremely difficult and costly for Miller to evaluate the evidence, strategize with its outside counsel and effectively litigate this case. The parties shared highly sensitive and confidential information between them for many years prior to this litigation. Under these circumstances, there is simply no basis for Caterpillar's position here, nor will it suffer any prejudice, given the safeguards already in place.

During the parties' longstanding relationship of more than a dozen years, Miller shared a myriad of its most confidential and proprietary information with Caterpillar. Miller alleges that Caterpillar has used and is now using this information in competition with Miller. Yet

4

Caterpillar seeks to cloak its activities from the persons best able to recognize the misappropriation. The outside lawyers and independent experts who are not intimately familiar with the details of the information that has been shared with Caterpillar over the years will be less able to recognize the manner in which Caterpillar has misused the proprietary technical and business information that was provided to it by Miller. In particular, evidence of "[information that] reflects product research and development efforts for products not yet launched or launched for less than one year," is the very information which Miller contends includes the trade secrets at the center of this case. The products at issue are highly technical couplers and buckets, thus some of the key documents to be produced by Caterpillar will include CAD drawings and other complex engineering-related documents. Miller employees will be in the best position to review and analyze those documents and to identify the existence of Miller trade secrets and other proprietary information that Caterpillar has mis-used in the design and manufacture of Caterpillar products.

As Caterpillar itself recognizes, given their positions at Miller, Keith and Gary Miller are the two Miller employees who would be in the best position to assist Miller's outside counsel in reviewing the evidence and determining the extent of Caterpillar's misappropriation and use of Miller trade secrets and other proprietary information. Indeed, Keith and Gary Miller were Caterpillar's primary contacts throughout the parties' relationship. Keeping these two employees in the dark as to what is likely to be some of the most critical information produced in the case would impose a severe hardship on Miller, and one that easily outweighs any purely speculative and hypothetical "competitive harm" asserted by Caterpillar (particularly in light of the safeguards already built into the proposed order). *See Defazio v. Hollister, Inc.*, No. Civ-5-04-1358, 2007 U.S. Dist. LEXIS 98147, *2 (E.D. Cal. Sept. 5, 2007) (plaintiff "should not be put in a position where [it is] essentially kept in the dark about the important facts of the case"); *Merit Indus., Inc. v. Feuer*, 201 F.R.D. 382 (E.D. Pa. 2001) (allowing opposing party's confidential information to be shared with corporate representatives assisting in the preparation or supervision of the lawsuit).

The Court should thwart Caterpillar's attempt to use this protective order dispute to obtain an unfair advantage in the litigation. *See Am. Floral Serv's, Inc. v. Florists Transworld Delivery Ass'n*, 107 F.R.D. 258, 260 (N.D. Ill. 1985) ("Discovery under the Rules [of Civil Procedure] changed the entire concept of litigation from a cards-close-to-the-vest approach to an open-deck policy. It seeks to facilitate open and evenhanded development of the facts underlying a dispute, so that justice may be delivered on the merits and not shaped by surprise or like tactical stratagems.").

Further, barring any Miller employees from reviewing key information produced in this case will directly impact Nixon Peabody's ability to satisfy its obligations to this Court and opposing counsel, including its obligations under Federal Rule of Civil Procedure 11. Courts have recognized the difficulties presented by exactly the kind of limitation sought to be imposed by Caterpillar here. Rule 11, of course, provides that by presenting a pleading to the court, an attorney certifies that to the best of the attorney's knowledge information and belief, "formed after an inquiry reasonable under the circumstances" the factual contentions have evidentiary support. FRCP 11(B)(3). Because of the complexity of the underlying documents, and due to Miller's lack of in-house counsel, outside counsel's ongoing strategy decisions and inquiry into the facts of this case are necessarily going to require discussions with the client. In order for those discussions to be meaningful, as contemplated by the Rule, the client representatives must have a complete command of the facts and evidence presented in the case. *See Business Guides, Inc. v. Chromatic Comm's Enterprises, Inc.*, 498 U.S. 533, 549 (1991) ("Quite often it is the client, not the attorney, who is better positioned to investigate the facts supporting a paper or pleading"); *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 U.S. Dist. LEXIS 53630, *15 (N.D. Ill. June 1, 2010) ("there is a legitimate need [for the client]'s outside counsel to be able to consult with client representatives other than lawyers. . . . ' A litigant who is not in possession of all relevant facts, furthermore, is in a poor position to assess its obligation to evaluate its ongoing obligation to maintain only arguably meritorious actions at every stage of the case.'") (citing

*Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-cv-548, 2009 U.S. Dist. LEXIS 9264, *23 (W.D. Mich. Feb. 9, 2009)).

The three party representatives permitted access under the second tier of the order must (1) be "required in good faith to assist counsel in the conduct of [the] litigation," and (2) execute the Undertaking that is attached to the order. Thus, there are sufficient safeguards in place to protect against any widespread disclosure of sensitive information. Under these and the circumstances discussed above, and given the severe prejudice Miller will suffer if it is not permitted to discuss all of the evidence produced in this case with its outside counsel, the Court should permit this limited and controlled disclosure of information produced under both tiers of any protective order it enters.

**Caterpillar's Position**: Under Caterpillar's approach, each litigant's most sensitive information should be treated as "attorneys' eyes only," and should be accessible to Counsel and retained experts, not to litigant business personnel. Plaintiffs' approach is not acceptable to Caterpillar because it will expose three of Plaintiffs' business personnel to Caterpillar's most sensitive trade secrets and confidential information, most of which is based on future actions, not past actions.[1] Indeed, Plaintiffs indicated that Gary and Keith Miller, who own and control the Miller entities, would be its designees to view documents under the second tier. Gary Miller has served as the Chief Engineer at Miller UK, and continues to do so. Keith Miller has served as the Chief Executive at Miller UK, responsible for all of its operations, and continues to do so.

Authority in this Circuit requires balancing the hardships to the parties when limiting discovery, and, if possible, reconciling those interests through a protective order. *Marrese v. AAOS*, 726 F.2d 1150, 1159 (7th Cir. 1984) (holding court must weigh hardships to each party), *rev'd on other grounds*, 470 U.S. 373 (1985). Caterpillar's attorneys' eyes only approach is commonly adopted as way to balance competing interests regarding highly sensitive information.

---

[1] The more restricted tier is limited to: "strategic information for any period of time after 2010, Board of Directors minutes, or [information that] reflects product research and development efforts for products not yet launched or launched for less than one year [from the date of the order]." *See* Exhibit B, ¶ 7.

7

*See Autotech Techs. L.P. v. Automationdirect.com, Inc*, 237 F.R.D. 405, 407 (N.D. Ill. 2006) (noting that attorneys' eyes only protective orders have become "*de rigeur*"); *Fieldturf Intern., Inc., Fieldturf, Inc. v. Triexe Management Group, Inc.*, 2004 WL 866494 (N.D. Ill.) (holding that an attorneys' eyes only restriction on the scope of dissemination "strikes a proper balance between plaintiffs' right to discover relevant information and the defendants' confidentiality interests"). The Seventh Circuit endorsed this compromise in *Ball Memorial Hospital, Inc. v. Mutual Hospital Ins., Inc.*, in which it upheld a protective order which restricted access to hospital price bids and other confidential information to trial counsel only.[2] 784 F.2d at 1345-46.

Because Plaintiffs and Caterpillar compete, if Plaintiffs' business people are exposed to Caterpillar's highly sensitive competitive information, Caterpillar will suffer serious harm. *See* Affidavit, at ¶X; *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc.*, 2007 U.S. Dist. LEXIS 91517 (N. D. Ill.) (adopting attorneys' eyes only tier to protect the "type of information [which] could be used to defendants' disadvantage if in the hands of competitors"). The seriousness of the risk posed by such exposure is convincingly demonstrated here by the fact that exposure to allegedly sensitive information already has prompted a lawsuit – namely this one. Furthermore, it is "manifestly impossible" that Plaintiffs' owners and principals could make future "competitive decisions independent of that information." *See Autotech*, 237 F.RD. at 410.

As discussed above, to accommodate Plaintiffs' concern about in-house counsel, Caterpillar agreed to allow Phillip Jordan, Plaintiffs' longtime UK outside counsel, who functions essentially as in-house counsel, to view attorneys' eyes only information.[3] Despite this concession, Plaintiffs assert that they cannot prepare their case unless their business people can see Caterpillar's highly sensitive information. But Plaintiffs have not met their burden to show

---

[2] The protective order upheld in *Ball Memorial* was far more restrictive than what Caterpillar proposes because it also required trial counsel to agree not to represent a similar party for 18 months as a precondition of viewing the protected information. *Ball Memorial*, 784 F.2d at 1345.

[3] To the extent that Plaintiffs are now claiming that their outside UK patent counsel should be included, subject to disclosure and check, Caterpillar is willing to add him or her as well.

that access to the information by their business people is required, and outweighs the harm it will cause to Caterpillar. *See Std. Process, Inc. v. Total Health Disc., Inc.*, 559 F. Supp. 2d 932, 944 (E.D. Wis. 2008) (holding that when a party seeks access to attorneys' eyes only information, "the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause . . ..").

Faced with similar arguments, courts in this Circuit have found in favor of an attorneys' eyes only restriction. For example, in *Amsted Indus. Inc. v. Nat'l Castings*, *Inc.*, relying on opinions by now Circuit Judge Bauer, the Court held that disclosure to outside counsel and experts was sufficient because: "[a]lthough plaintiff might benefit from the additional assistance of its own employees, that benefit is outweighed by the danger of competitive harm to defendant." 1988 U.S. Dist. LEXIS 9413, at *3-4 (N.D. Ill.); *see Davis v. General Motors Corp.*, 64 F.R.D. 420, 422 (N.D. Ill. 1974) (Bauer, J.) (entering attorneys' eyes only protective order to protect confidential information from competitor); *Triangle Ink and Color Co. v. Sherwin-Williams Co.,* 61 F.R.D. 634, 636 (N.D. Ill. 1974) (Bauer, J.) (denying access to plaintiff's technical personnel, entering attorneys' eyes only protective order); *see also Solaia Tech. LLC v. Jefferson Smurfit Corp.*, 2002 U.S. Dist. LEXIS 15666, at *8-9 (N.D. Ill) (denying access to business people, requiring attorneys' eyes only).

Particularly given the narrow category of documents that Caterpillar wishes to designate as attorneys' eyes only, Plaintiffs have failed to meet their burden to show that access by their business people is essential, or that it outweighs Caterpillar's competitive interests. Plaintiffs' Rule 11 concerns can be addressed when and if they arise. As Judge Bauer noted on more than one occasion, if counsel later have to consult with Plaintiffs on a specific attorneys' eyes only document, they can petition the Court for access at that time. *Triangle Ink,* 61 F.R.D. at 636; *Davis*, 64 F.R.D. at 422.

None of the cases cited by Plaintiffs require a different result. In support of their Rule 11 argument Plaintiffs cite *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.* and *Am. Floral Servs. Inc. v. Florists Transworld Delivery Ass'n*, which do not involve

9

protective orders. *See supra* p. 6. Plaintiffs also cite *Motorola, Inc. v. Lemko Corp*. and *Merit Indus. v. Feuer*, which actually support Caterpillar's position. *Id.* at 5-6. In *Motorola* and *Merit* the courts had previously entered a protective order with an attorneys' eyes only tier and, following document production, counsel sought permission to show specific attorneys' eyes only documents to certain party employees, which is exactly the procedure advocated by Caterpillar. *Motorola*, 2010 U.S. Dist. LEXIS 53630, at *9-11; *Merit*, 201 F.R.D. at 384. Plaintiffs' other non-Seventh Circuit authority is distinguishable. *See DeFazio v. Hollister, Inc.*, 2007 U.S. Dist. LEXIS 98147, at *8 (E.D. Cal.) (allowing party representatives access to financial data in part because it was historical and thus not valuable to competitors).

Hence, Caterpillar's attorneys' eyes only restriction should be adopted.

## CONCLUSION

Good cause exists for the entry of a protective order in this case. The parties move this Court to resolve the issue discussed above so that the parties can obtain a suitable protective order for use in this case.

Dated: January 25, 2011                                    Respectfully submitted,

                                        **Miller UK Ltd. and Miller International Ltd.**

                                By:  /s/ Jodi Rosen Wine_____

                                    R. Mark Halligan
                                    Deanna R. Swits
                                    Jodi Rosen Wine
                                    Jason S. Kray
                                    NIXON PEABODY LLP
                                    300 South Riverside Plaza, 16th Floor
                                    Chicago, IL 60606

                                    Robert A. Weikert
                                    John A. Chatowski
                                    NIXON PEABODY LLP
                                    One Embarcadero Center, 18th Floor

San Francisco, CA 94111

**Caterpillar Inc.**

By:   /s/ Mark A. Klapow

Robert G. Abrams
Gregory L. Baker
Mark A. Klapow
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402

Michael P. Padden
HOWREY LLP
321 N. Clark Street, Suite 3400
Chicago, IL 60654
(312) 595-1149 phone
(312) 595-2250 facsimile

## CERTIFICATE OF SERVICE

The undersigned certifies that the MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR ENTRY OF A PROTECTIVE ORDER was filed electronically in compliance with the General Order on Electronic Case Filing, Section III(B)(1). As such, these documents were served on all counsel who are deemed to have consented to electronic service. Fed. R. Civ. P. 5(b)(2)(D) and Local Rule 5.9.

> Robert G. Abrams
> AbramsR@howrey.com
> Gregory L. Baker
> BakerG@howrey.com
> Mark A. Klapow
> KlapowM@howrey.com
> HOWREY LLP
> 1299 Pennsylvania Avenue, N.W.
> Washington, D.C. 20004-2402
> (202) 783-0800 phone
> (202) 383-6610 facsimile
>
> Michael P. Padden
> PaddenM@howrey.com
> HOWREY LLP
> 321 N. Clark Street, Suite 3400
> Chicago, IL 60654
> (312) 595-1149 phone
> (312) 595-2250 facsimile
>
> *Attorneys for Defendant/Counter-Plaintiff Caterpillar Inc.*

> /s/ Jodi Rosen Wine
> *An Attorney for Plaintiffs/Counter-Defendants Miller UK Ltd. and Miller International Ltd.*