```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

MILLER UK LTD., et al.,         )
                                )
        Plaintiffs and          )
   Counterclaim Defendants,     )
                                )
    v.                          )   No.  10 C 3770
                                )
CATERPILLAR INC.,               )
                                )
        Defendant and           )
   Counterclaim Plaintiff.      )

## MEMORANDUM OPINION AND ORDER

Caterpillar, Inc. ("Caterpillar") makes large machines used in construction. Miller UK Ltd. and Miller International Ltd. (collectively "Miller") supplied Caterpillar with parts for those machines, assertedly utilizing both trade secrets and confidential information that does not meet the statutory definition of a trade secret. According to Miller, it gave Caterpillar access to those trade secrets and that confidential information as part of its supply of parts to Caterpillar. Miller says that Caterpillar surreptitiously used those things to design its own versions of Miller's parts.

Miller responded by bringing this lawsuit against Caterpillar. Its Amended and Supplemental Complaint ("Complaint") is divided into four "counts." But those counts do not conform to the Fed. R. Civ. P. ("Rule") 10(b) concept that permits a separate count for "each claim founded on a separate transaction or occurrence." Instead each count is drawn from the

same congeries of facts but advances a separate legal theory that Miller says entitles it to damages.

As taught fully two decades ago in NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992), legal theories are not claims, and the use of counts to separate out different legal theories--though almost universally employed by Illinois practitioners among others--is a conceptually improper federal pleading technique. Miller's Complaint does contain multiple claims, but that's because there are different disputes at issue: As stated at the outset, Caterpillar assertedly took from Miller different types of information, both within and outside of the trade secret category.

Now Caterpillar has moved for what it calls summary judgment, seeking to prevent Miller from using the legal theories of unjust enrichment and fraudulent inducement for its claims relating to confidential but non-trade-secret information. Miller responds that the Illinois Trade Secrets Act ("Act") preempts those legal theories.[1]

---

[1] Both Miller and Caterpillar, without undertaking a choice-of-law analysis, assume that Illinois law applies. As Ryerson Inc. v. Fed. Ins. Co., 2012 WL 1216282, at *1 (7th Cir. Apr. 12) reconfirmed just two weeks ago:

> This diversity suit [is] governed by Illinois law because filed in a district court located in that state and neither party argued choice of law, Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co., 611 F.3d 339, 345 (7th Cir. 2010).

Not to be outdone in the mislabeling department, Caterpillar has placed its motion in the wrong pigeonhole when it invokes the Rule 56 concept of summary judgment. As Rule 56(a) states, it is a tool for knocking out all or part of a "claim or defense," not legal theories that might support relief for claims or defenses. But the current motion does not target all or part of Miller's confidential information claims: Even if Caterpillar were to win its motion, Miller still has a breach of contract theory that applies to the non-trade-secret confidential information.

What Caterpillar has really done is to tender an issue-narrowing motion under Rule 16, which this Court has the discretion to entertain or not to entertain as appears appropriate (unlike a true Rule 56 motion, which--with limited exceptions--must be addressed once filed). In this instance it seems to be a constructive step in shaping this litigation to decide whether the Act preempts Miller's unjust enrichment and fraudulent inducement theories. Miller and Caterpillar have agreed on the facts and dispute only the law, and a decision now streamlines the case going forward.

Because this is a purely legal dispute, there is no need to recite the familiar summary judgment standards or the facts of the case. All that is relevant are the allegations of Miller's Complaint that relate to fraudulent inducement and unjust

---

This Court likewise honors the parties' implicit agreement.

3

enrichment. First, as to Count Three (captioned "Fraudulent Inducement"):

> 84. On information and belief, CAT also, through various of its employees, affirmatively began soliciting Miller's trade secrets and confidential information regarding the Scoop Bucket with the intent to induce Miller to provide CAT with its trade secrets and confidential information not so that CAT could purchase the Scoop Bucket, but so that CAT could complete the development of its own bucket, from which CAT has derived and continues to derive substantial revenue and other benefits.
>
> 85. In reliance on either CAT's materially false affirmative statements, Miller made substantial investments in expanding its facilities to meet CAT's future requirements and also provided it valuable trade secrets and confidential information relating to the Scoop Bucket.

And as to Count Four (captioned "Unjust Enrichment"):

> 89. CAT has been unjustly enriched at the expense of Miller by its use of the proprietary and confidential information supplied to it by Miller related to Miller's Scoop Bucket.
>
> 90. CAT also has been unjustly enriched at the expense of Miller by its use of the proprietary and confidential information, supplied to it by Miller, outside the terms of the Supply Agreement in developing, manufacturing, and selling the Caterpillar Center-Lock Pin-Grabber Quick Coupler.
>
> 91. Accordingly, Miller is entitled to damages in the amount by which CAT has been unjustly enriched at the expense of Miller.[2]

---

[2] Before this opinion turns to the substantive discussion of preemption vel non, this Court rejects Caterpillar's final "Supplemental Submission," which seeks to cloud the issue by advancing an unpersuasive argument based on Miller's denial of certain requests to admit--really a red herring under the circumstances.

4

**Preemption Analysis**

Caterpillar says that the Act preempts Miller's fraudulent inducement and unjust enrichment theories. Here are the Act's relevant provisions (765 ILCS 1065/8(a) and (b)[3]):

> (a) Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.
>
> (b) This Act does not affect:
>
> > (1) contractual remedies, whether or not based upon misappropriation of a trade secret, provided however, that a contractual or other duty to maintain secrecy or limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of durational or geographical limitation on the duty;
> >
> > (2) other civil remedies that are not based upon misappropriation of a trade secret;
> >
> > (3) criminal remedies, whether or not based upon misappropriation of a trade secret; or
> >
> > (4) the definition of a trade secret contained in any other Act of this State.

Miller sensibly concedes that the Act displaces recoveries on grounds of unjust enrichment and fraudulent inducement when those legal theories are applied to trade secrets. Although the Illinois Supreme Court has not addressed that subject, Pope v. Alberto-Culver Co. 296 Ill.App.3d 512, 519, 694 N.E.2d 615, 619 (1st Dist. 1998) (of which more later) holds that "unjust

---

[3] Further citations to the Act will take the form "Act §--," omitting the prefatory "765 ILCS 1065."

enrichment is preempted by the Illinois Trade Secrets Act....Unjust enrichment is essentially a claim for restitution," which the Act specifically displaces. Miller's fraudulent inducement theory is also essentially a demand for restitution (<u>Ill. State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.</u>, 355 Ill. App. 3d 156, 165, 821 N.E.2d 706, 713 (1st Dist. 2004)), so its application to trade secrets is also expressly preempted by the Act.

But not all confidential information is a trade secret, and Miller says that the Act does not preempt unjust enrichment and fraudulent inducement contentions when those theories are applied to non-trade-secret information--that is, information outside of the scope defined in Act §2(d):

> "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> > (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> > (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

So two kinds of valuable information cannot be trade secrets: (1) public information, even if valuable in economic terms, and (2) information as to which a party fails to make reasonable efforts to keep it secret or confidential.

6

Miller wants to apply unjust enrichment and fraudulent inducement theories to such non-trade-secret information. It presents its position as a syllogism:

    1. Act §8(a) displaces "conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret."

    2. Miller's information (at least the information covered by the unjust enrichment and fraudulent inducement theories), though confidential in nature, does not constitute a "trade secret" as the Act defines it.

    3. Q.E.D.

In opposition, Caterpillar contends that the Act also displaces claims for misappropriation of all confidential information, not just misappropriation of trade secrets.

With the Illinois Supreme Court not having considered the scope of the Act's preemption clause, each party points to decisions from this District Court that it says support its interpretation of the Act (that group includes an opinion by this Court, Stove Builder Int'l, Inc. v. GHP Group, Inc., No. 11 C 1098, 2011 WL 2183160 (N.D. Ill. June 3) that reaches Miller's Q.E.D. conclusion). But our Court of Appeals has consistently reconfirmed that such District Court opinions carry no legal weight--as Hecny Transp., Inc. v. Chu, 430 F.3d 402, 404

(7th Cir. 2005) has put it succinctly:

> Decisions of federal district courts on issues of state law have neither authoritative nor precedential force.

Instead this Court's task is to determine how the Illinois Supreme Court would decide this case if the issue were put to it. And when there is no controlling decision from that Court, it is generally true that "decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently" (reiterated in Thomas v. H&R Block Eastern Enters., Inc., 630 F.3d 659, 663 (7th Cir. 2011)).

In that regard one Illinois appellate decision does implicitly support Caterpillar's contention--but importantly, it has done so without engaging in any analysis at all (or even any discussion) of the proper construction of the Act. Pope, 296 Ill. App. at 519, 694 N.E.2d at 619 applied the Act to displace common law causes of action for both (1) trade secret misappropriation and (2) misappropriation of confidential but non-trade-secret information.

But as indicated in the preceding paragraph, the statement in Pope is both unreasoning and unreasoned. After spending virtually its entire opinion on the question whether the matter at issue was a "trade secret" and concluding that it was not, the court devoted just one paragraph to the question that is now before this Court. It simply announced its conclusion that an

8

unjust enrichment claim as to the non-trade secret "must also fail, as unjust enrichment is preempted by the Illinois Trade Secrets Act"--and it followed that unsupported pronouncement by quoting Act §1065(8), the language of which says not a word about the Act displacing civil remedies based upon the asserted misappropriation of <u>non</u>-trade-secrets. Even worse, the court's statutory quotation was selective, omitting entirely the language that, when read literally (and fairly), calls for a conclusion diametrically opposed to that reached by the court (Act §1065/8(b)(2))(emphasis added):

> (b) This Act does <u>not</u> affect:
>
> \*      \*      \*
>
> (2) other civil remedies that are <u>not</u> based upon misappropriation of a trade secret.

To be blunt, in this Court's view it would be an affront to the Illinois Supreme Court to suggest that if it were confronted with the question now at hand, it would find <u>Pope</u> of any value in reaching its own reasoned conclusion. Moreover, "One swallow does not make a spring."[4] And that is particularly true when that swallow lacks the figurative wings of reason, nor did it launch into the metaphorical song of reasoned analysis essential to a thoughtful and persuasive statutory interpretation.

---

[4] That felicitous turn of phrase from Aristotle's <u>Nichomachean Ethics</u> has been echoed or copied by numerous authors since then--even by Cervantes in <u>Don Quixote</u> ("One swallow never makes a summer").

Without real guidance from Illinois courts, then, this Court turns to other sources to predict how the Illinois Supreme Court would interpret the Act. To that end, of course, the primary reference should be to the unambiguous language of the Act itself, and in this instance added input can come from decisions in other states, for the Act is based on the Uniform Trade Secrets Act of 1985.[5]

Fortunately, the task of this Court is much simplified by the fact that it has already been undertaken by our own Court of Appeals in <u>Hecny</u>'s reading of the Act in the non-trade-secret context. Here is the relevant language in the <u>Hecny</u> decision, 430 F.3d at 404-05 (emphasis added and citations omitted):

> Illinois courts have had very little to say about the effect of §8(a), perhaps because it is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret
>
>     \*   \*   \*
>
> Because the Illinois Trade Secrets Act is based on the Uniform Trade Secrets Act of 1985, we can check our intuition about its preemptive force by asking how other states have understood its scope. The dominant view is that claims are foreclose <u>only</u> when they rest on the conduct that is said to misappropriate <u>trade</u> <u>secrets</u>. The Uniform Law Commissioners' comment to the model act

---

[5] Illinois did not adopt the Uniform Act verbatim, so that the Act is not an exact match with the trade secrets acts of other states.

>supports this approach, stating: "The [provision] does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal." We would be shocked if the Supreme Court of Illinois were to disagree; nothing in its jurisprudence suggests it would. This is not a close question.

In short, misappropriation of trade secrets is thus all that the Act preempts. Claims based on common law theories such as unjust enrichment or fraudulent inducement as to non-trade-secrets remain untouched. And that is unambiguously confirmed by the express language of Act §8(b)(2), which states that the Act <u>does</u> <u>not</u> <u>affect</u> "other civil remedies that are not based upon misappropriation of trade secrets."

Since <u>Hecny</u> several state supreme courts have addressed the Act's preemption or non-preemption of claims dealing with non-trade-secret information, and a majority of them have differed with <u>Hecny</u>'s literal-language approach,[6] so that its reference to the "dominant view" may no longer apply. Only the Wisconsin Supreme Court has expressed the same view as <u>Hecny</u> in <u>Burbank Grease Servs., LLC v. Sokolowski</u>, 717 N.W.2d. 781, 790-91 (Wis.

---

[6] Those cases emanate from Georgia (<u>Robbins v. Supermarket Equip. Sales, LLC</u>, 722 S.E.2d 55, 58 (Ga. 2012)), Hawaii (<u>BlueEarth Biofuels, LLC. v. Hawaiian Elec. Co.</u>, 235 P.3d 310, 325 (Haw. 2010)), New Hampshire (<u>Mortgage Specialists, Inc. v. Davey</u>, 904 A.2d 652, 663-64 (N.H. 2006)) and Utah (<u>CDC Restoration & Constr. LC v. Tradesmen Contractors, LLC</u>, --- P.3d ---, 2012 WL 876745 at *12 (Utah App. 2012)).

11

2006). But those other cases are patently flawed. Indeed, Mortgage Specialists, Inc., 904 A.2d at 775 explicitly ignores the Act's plain language and announces a contrary position because the court believes it would better effect the statutory purpose.

By sharp contrast, Illinois courts do not ignore the plain language of statutes in favor of what they perceive to be the legislative purpose. Thus Chicago v. Comcast Cable Holdings, L.L.C., 231 Ill.2d 399, 412, 900 N.E.2d 256, 263 (2008) reconfirms that "the plain language of the statute" is "our best indicator of legislative intent." Illinois' Supreme Court is unlikely to rely on decisions of other states that use such reasoning.

As Wisconsin's Burbank Grease, 717 N.W.2d at 790 stresses (and as is equally true here in Illinois), the legislature there "did not choose the language" that would preempt claims relating to non-trade secret information, and a court is "not free to add it." It would have been a simple matter for the drafters of the uniform law, or for the Illinois General Assembly, to write that the Act displaces common-law claims for the misappropriation of all confidential information. But neither the Act's drafters nor the General Assembly did that--they rather chose to displace only "laws of this State providing civil remedies for misappropriation of a trade secret." Decisions of the stripe that Caterpillar

12

prefers have chosen instead to engage in rank judicial legislation, essentially urging:

> Never mind what the legislature actually said. We know what it meant to say in order to carry out what we know it intended. So that is what we will read into the very different language that the legislature actually enacted.

Cases such as Comcast Cable Holdings reflect the policy of Illinois courts to adhere to the language actually found in a statute, rather than applying some presumed purpose not found in its plain language. In sum, this Court will follow the lead of our Court of Appeals in Hecny and the identical conclusion reached in Burbank Grease, applying the Act's preemption provision only to statutorily defined trade secrets.

It must be remembered that, as with all efforts by the Commissions on Uniform Laws, the goal here was to persuade state legislatures to standardize an area of law in place of their varying jurisprudential approaches--an important goal in a national economy that does not come to a halt at state borders. In this instance the Act has sought to promote a single statutory definition of a "trade secret." It then provides (1) a set of rights for the holder of such an asset and (2) a set of remedies when these rights are violated.

Section 8, by displacing other laws that apply to the statutorily defined trade secret asset, makes those rights and remedies exclusive, preventing trade secret holders from taking

13

an end run around the Act by claiming a whole set of other rights of the types set out in Act §8(a). But the universe of the Act's exclusivity is limited by its plain language to the property that it has defined as "trade secrets."

## Conclusion

Caterpillar's motion is denied. Miller may pursue its unjust enrichment and fraudulent inducement legal theories to the extent that theories are not sought to be applied to trade secrets as defined by the Act. Miller's Complaint Counts Three and Four survive intact in that respect.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 26, 2012