# Exhibit H

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

William E. Arnault
To Call Writer Directly:
(312) 862-3062
william.arnault@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

July 17, 2012

**Via E-mail**

Gregory L. Baker
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington DC 20036-5304

Re:    *Miller v. Caterpillar*

Dear Greg:

I write in response to your two letters dated July 12, 2009. I address the issues raised in those letters below.

General Objection No. 13(B)

As I noted in my July 9, 2012 letter, we discussed "keyword search protocols." You described your approach, which I accepted. I also stated that I would confer with my team and inform you of our approach. Once we have determined the exact number of documents that are captured by your search terms, we will inform you of our approach.

Request No. 3:

In Request No. 3, Plaintiffs requested "[d]ocuments sufficient to show the number of Center-Lock Couplers (a) manufactured by Caterpillar, (b) distributed by Caterpillar dealers, or (c) distributed to customers." Caterpillar's response states that it has already produced documents sufficient to show the number of Center-Lock Couplers sold by the Caterpillar Work Tools business unit, all of which were manufactured by Caterpillar. During our telephone conference, I questioned whether additional Center-Lock Couplers had been distributed by Caterpillar that were not captured by the sales figures produced by Caterpillar. Your letter indicates that all of the Center-Lock couplers distributed by Caterpillar are encompassed within the sales figures produced by Caterpillar (although your letter references Request Nos. 55, 56, and 61, and not Request No. 3). To be clear, are you saying that the sales figures encompass all Center-Lock Couplers that were distributed—for example, those couplers that were distributed as

Hong Kong     London     Los Angeles     Munich     New York     Palo Alto     San Francisco     Shanghai     Washington, D.C.

# KIRKLAND & ELLIS LLP

Gregory L. Baker
July 17, 2012
Page 2

part of a package of attachments and/or hydraulic excavator or were distributed for use on leased equipment?

During our telephone conversation, I noted that Request No. 3 requested documents sufficient to show the number of Center-Lock Couplers "manufactured by Caterpillar." I also noted that Caterpillar did not, as part of its response, agree to produce these documents. You failed to address this category of documents in your letter. Please confirm that Caterpillar will be producing documents sufficient to show the number of Center-Lock Couplers manufactured by Caterpillar.

Request No. 7:

After a lengthy discussion regarding this request, I suggested that "due diligence" and "assessment" are encompassed within the term "analysis." Plaintiffs would therefore be willing to narrow this request to "[a]ny analysis conducted by Caterpillar regarding (a) the hydraulic excavators that Miller sold to Caterpillar, (b) the Miller Scoop Bucket, or (c) Miller's business, technology, intellectual property, production capacity, financial condition, or reputation in the market." Please advise if this revised request is acceptable.

Request No. 15:

We accept your proposed language.

Request No. 16:

As I explained on the phone, Plaintiffs believe that documents relating to Caterpillar's intent to acquire or maintain Miller's Information are relevant to Plaintiffs' claims. Documents relating to the reason and motive for Caterpillar's acquisition of Miller's Information may provide evidence that supports Plaintiffs' misappropriation claim. In other words, these documents would be relevant to whether Caterpillar acquired Miller's Information for legitimate purposes or with the intent to misappropriate it.

Request No. 17:

This request asks for "[a]ll Documents Relating to internal Caterpillar Communications or Communications with third-parties in which Miller's Information was enclosed, attached, or discussed." While Caterpillar has agreed to produce Communications with third parties disclosing models, drawings, or manufacturing process information, it does not agree to produce Documents Relating to internal Caterpillar Communications in which Miller's Information was enclosed, attached, or discussed. As I explained on the phone, Plaintiffs are entitled to

# KIRKLAND & ELLIS LLP

Gregory L. Baker
July 17, 2012
Page 3

documents showing how Caterpillar was using Miller's Information and who at Caterpillar was exposed or had access to this information, which is exactly what this request is intended to capture.

<u>Request No. 33:</u>

Caterpillar's current response is acceptable as written.

<u>Request No. 52:</u>

As I explained during our telephone conference, I am under the impression that one of Caterpillar's Waco, Texas manufacturing facilities was either opened or re-opened for the purpose of manufacturing Caterpillar's Center-Lock coupler and/or recessed pin bucket. In your letter, you state "that the Waco facility was not opened (or re-opened) for the purpose of manufacturing the Cat® Center-Lock™ Pin Grabber Coupler and/or Caterpillar's recessed pin bucket." To avoid any misunderstanding or subsequent dispute, are you stating that the manufacture of Caterpillar's Center-Lock Coupler and/or recessed pin bucket was one of the purposes for opening (or re-opening) one of Caterpillar's Waco manufacturing facilities but was not the only purpose? Or, as your letter seems to suggest, are you representing on behalf of your client that the manufacture of Caterpillar's Center-Lock Coupler and/or recessed pin bucket did not constitute any of the reasons for opening (or re-opening) one of Caterpillar's Waco manufacturing facilities?

In addition to the issues raised above (and in the parties' respective letters), our telephonic meet and confers on June 29 and July 3 revealed that there are a number of issues that will require the Court's guidance. Please respond to the issues raised in this letter by July 24, after which Plaintiffs will ask the Court to resolve the remaining issues in dispute.

Sincerely,

William E. Arnault

WEA