IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,**<br><br>  Plaintiffs,<br> v.<br><br>**CATERPILLAR INC.,**<br><br>  Defendant.<br><br>**CATERPILLAR INC.,**<br><br>  Counterclaim-Plaintiff,<br> v.<br><br>**MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,**<br><br>  Counterclaim-Defendants. | Civil Action No. 10-cv-3770<br><br>Honorable Milton I. Shadur<br><br>Honorable Jeffrey N. Cole |

**MILLER'S OPPOSITION TO
CATERPILLAR'S MOTION TO COMPEL LITIGATION FUNDING
DOCUMENTS RESPONSIVE TO ITS SIXTH SET OF DOCUMENT REQUESTS**

  Prior to Caterpillar's abrupt termination of its relationship with Miller, Caterpillar was by far Miller's largest source of revenue. During that time, Caterpillar obtained all of Miller's trade secret engineering designs and models under assurances of confidence, even though, beginning in 2005, Caterpillar secretly and methodically began using Miller's trade secret information to build its own competing coupler. In 2008, when Caterpillar announced it was terminating its relationship with Miller and launching its own coupler, it knew it would destroy Miller's business. And if that did not do it, Caterpillar's use of false and misleading marketing materials

1

regarding the safety and efficacy of Miller's Bug coupler—the very same coupler that Caterpillar sold under the Caterpillar brand for the better part of eight years—would seal Miller's fate. It was no surprise then that when Miller filed this lawsuit in 2010 that Caterpillar adopted a "scorched earth" litigation approach, racking up Miller's expenses. Caterpillar understood, just as it had in 2008, that the best way to destroy Miller was to make it so that Miller could barely afford to survive.

While Caterpillar has spent the last year refusing to produce critical documents to the case about the sales of attachments and tools sold with couplers, claiming it is too burdensome, Caterpillar has forced Miller to spend tens of thousands of dollars in legal fees arguing over third party funder documents that relate to Miller's efforts to obtain funding and stay alive during this litigation. Although Miller has agreed to produce any funding documents that contained any admissions or statements regarding the merits of the claims or defenses in this lawsuit, it has refused to produce three narrow categories of documents: (1) documents that relate solely to the structure, terms and closing of Miller's funding arrangement; (2) work product exchanged between the parties; and (3) communications protected by the attorney-client/common interest privilege. In Caterpillar's motion to compel, Caterpillar disputes Miller's right to withhold these documents, even though Miller's position is supported under the law.

First, documents that relate solely to the structure, terms, and closing of Miller's funding arrangement simply have no bearing on any of the claims or defenses at issue in this case. Even under the Federal Rules' expansive definition of relevancy, documents that relate solely to the terms of Miller's funding arrangement are not relevant to Caterpillar's misappropriation of trade secrets, Caterpillar's breach of contract, or any of the other claims or defenses at issue here.

Indeed, Caterpillar has yet to offer a reasonable basis of relevancy that would merit production of the narrow set of documents Miller has withheld.

Second, Miller was correct to withhold work product prepared by Miller's counsel or at the direction of counsel because Miller's disclosure of such information to the third party funders did not substantially increase the opportunity for Caterpillar to obtain it. The material Miller withheld revealing the mental impressions, opinions, and conclusions of Miller's lawyers is subject to nearly absolute protection in the Seventh Circuit.

Finally, under the common interest doctrine, Miller was entitled to withhold communications between Miller, the third party funders, and Miller's counsel because the parties share a common interest in the successful outcome of this case.

## I. Documents Relating Solely to the Terms, Structure, and Closing of Miller's Litigation Funding Are Not Relevant to this Case.

When Caterpillar issued its sixth set of requests for documents related to Miller's litigation funding deal, Miller and Caterpillar met and conferred regarding the relevancy of the requested documents. During that discussion, Caterpillar stated that documents which contained admissions or statements about the case were relevant. Rule 37.2 Report, at 5 (Dkt. No. 362). In response, Miller provided any non-privileged funding documents that contained any admissions or statements about the case. These documents included, for example, communications sent to third party funders to shop the case, case summaries that were sent to third party funders, and other funding applications, emails, and letters evidencing Miller's efforts to strike a deal with a funder. From this production, Caterpillar has received every non-privileged document or communication exchanged with a litigation funder that contains any admission or statement regarding the claims or defenses in this case. Miller has only withheld one very narrow set of documents on the basis that it has no relevancy to the claims and defenses in this case and serves

no purpose but to unfairly prejudice Miller: those documents that relate solely to the terms, structure, and closing of Miller's litigation funding deal.

Despite Caterpillar's dogged insistence that these documents are somehow relevant to this case, the fact remains that documents relating solely to the terms, structure, and closing of Miller's litigation funding deal have absolutely no relevance to any of Miller's claims, Caterpillar's defenses, or Caterpillar's counterclaims. How the parties agreed to structure the litigation funding deal has no bearing on whether Caterpillar misappropriated the trade secrets at issue here, the value of the misappropriation, whether a breach of contract occurred, or any of the other claims, counterclaims, and defenses in this lawsuit. Indeed, documents relating solely to the terms, structure, and closing of Miller's litigation funding do not make any fact at issue in this case more or less probable than it would be without the evidence. *See* Fed. R. Ev. 401(a).

Tellingly, Caterpillar's motion fails to discuss any of the bases of relevancy it previously offered regarding the documents relating solely to the structure, terms, and closing of Miller's funding arrangement, instead referring the Court to the parties' Rule 37.2 Report. Caterpillar then claims that Miller has improperly focused on whether any of these bases would "*succeed on the merits*," rather than recognizing that Caterpillar must only show that the material "bears on" an issue that may be in the case. Mem. in Supp. at 7 (citing *TIG Ins. Co. v. Giffin*, 2001 WL 969037, at *1 (N.D. Ill. Aug. 24, 2001)). But Caterpillar may not simply refer to any claim under the sun—viable or not—and then argue that the documents it seeks could "bear on" that issue, without any regard to the merits of the claim. Such an interpretation would eviscerate the Rules of Evidence and would pull into a case documents that have no plausible bearing on the *actual* claims at issue.

Indeed, as further discussed in the parties' Rule 37.2 Report,[1] each of Caterpillar's alleged bases of relevancy is meritless. First, under the plain terms of the statute governing champerty and maintenance actions, Miller's funder has not committed the crime of maintenance by funding a lawsuit that was already filed and pending. *See* 720 ILCS 5/32-12 ("If a person <u>officiously</u> intermeddles in an action that in no way belongs to or concerns that person, by maintaining or assisting either party, with money or otherwise, to prosecute or defend the action, <u>with a view to promote litigation</u>, he or she is guilty of maintenance and upon conviction shall be fined and punished as in cases of common barratry.") (emphasis added). Second, there are no real party in interest issues here because it is Miller's trade secrets that were misappropriated, it is Miller who was damaged, and it is Miller who has filed this lawsuit. Caterpillar's obligations are to Miller alone, and it is up to Miller to meet the terms of its contract with it funder. Third, just like in an attorney-client relationship, the precise terms of Miller's funding arrangement are irrelevant to whether Miller has a common interest with its funder; Miller must only show that a funding relationship exists. Fourth, Miller's claim for injunctive relief is not influenced at all by the terms of its funding arrangement. And finally, documents relating solely to the structure, terms, and closing of Miller's funding arrangement have no bearing on the identity of potential witnesses, parties who know discoverable matters, and the location and nature of additional relevant documents. Caterpillar is not entitled to irrelevant documents simply because some subset of them may reveal the identities of other witnesses or the location of other documents. Miller has an obligation to furnish this type of discovery independent of its funding arrangement, which it has done and will continue to do.

---

[1] *See* Rule 37.2 Report at 18-25 (Dkt. No. 362).

Rather than discuss the relevancy of the documents Miller withheld, Caterpillar instead argues that Miller's production of documents containing statements relating to the case must necessarily mean that documents relating to the structure, terms, and closing of the funding arrangement are also relevant. This argument is absurd. Documents containing admissions or statements about the case may be relevant and thus were produced. It does not follow, however, that all funding documents are automatically relevant. Documents relating solely to the terms, structure, or closing of the case have no bearing on any of the claims of defenses in the case. Miller's compliance with its discovery obligations relating to one set of documents should not serve as a concession about the relevance of a different category of documents.

Of course, in arguing that the documents should be produced, Caterpillar conveniently ignores the prejudice to Miller if these documents are disclosed. The main reason Caterpillar likely wants these documents is not to gather information about the claims and defenses in the case—indeed, these documents do not contain any such information—but to use the terms of Miller's outside funding deal to gain a tactical advantage about Miller's ability to continue litigating this case in any future settlement negotiations. Such information would give Caterpillar a leg up on any settlement discussions without any corresponding benefit to the case, since the documents provide no relevant information about the claims or defenses asserted by either party. Certainly Miller is not entitled to seek discovery from Caterpillar about internal discussions it has had on what it is willing to expend on this litigation. Although such documents would certainly relate to the case, they have no bearing on any of the claims and defenses in the case.

Because Caterpillar has not offered any plausible basis for the relevancy of documents relating solely to the structure, terms, and closing of Miller's funding arrangement, and

considering the prejudice involved if these documents were produced, the Court should deny Caterpillar's motion to compel the production of these documents.

## II. Documents Revealing the Mental Impressions, Opinions, and Conclusions of Miller's Lawyers Are Protected by the Work Product Doctrine.

Pursuant to the work product doctrine, Miller has withheld from the production any documents that reveal the mental impressions, opinions, and conclusions of Miller's lawyers. These documents include, for example: counsel's assessments of Miller's likelihood of success; counsel's assessment of Miller's evidence; counsel's application of the Illinois Trade Secrets Act to the facts of the case; counsel's legal analysis of Caterpillar's counterclaims; damages analysis prepared in anticipation of litigation and in conjunction with counsel; and counsel's analysis regarding the collectability of attorneys' fees. In the Seventh Circuit, this type of opinion work product is subject to either absolute or nearly absolute protection. *See Caremark, Inc. v. Affiliated Computer Servs Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000).[2] Miller's disclosure of these materials to potential funders did not constitute a waiver because it did not substantially increase the opportunity for Caterpillar to obtain the information. *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 183 (N.D. Ill. 2006).

Application of the work product doctrine to documents exchanged with litigation funders is a developing area of the law. In *Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2011 WL 1714304 (E.D. Tex. May 4, 2011), the court held that documents and slide presentations created for and shown to potential investors that contained information and work product prepared with the assistance of counsel were protected under the work product doctrine. *Id.* at *3. The court noted that the documents revealed Inpro's litigation strategy and provided information—such as

---

[2] The work product doctrine is a procedural matter in the federal courts, thus federal law controls in this diversity action. *Caremark*, 195 F.R.D. at 612.

balance sheets including licensing and litigation revenues—that showed the implementation of that strategy. *Id.* Moreover, "all of the documents were prepared with the intention of coordinating potential investors to aid in future possible litigation." *Id.* Because the exchange of information was done pursuant to nondisclosure agreements, the disclosure did not substantially increase the likelihood that an adversary would come into possession of the materials. *Id.*

Like *Mondis*, Miller exchanged information with potential funders regarding its litigation strategy. These documents were intended to coordinate potential investors to invest in Miller's litigation. Because Miller's disclosures were made pursuant to an agreement or understanding of confidentiality, the exchange of information would not substantially increase the likelihood that an adversary would come into possession of the material. Under such circumstances, *Mondis* instructs that the information is protected under the work product doctrine.

Caterpillar ignores the holding and reasoning in *Mondis* and instead relies on a number of cases that generally describe the work product doctrine to argue that Miller is not entitled to assert work product protection here. *First*, Caterpillar argues that Miller is not entitled to work product protection because "work product only covers material that is 'of a legal nature and primarily concerned with legal assistance.'" Mem. in Supp. at 12 (citing *Caremark*, 195 F.R.D. at 614-15 (internal quotations omitted)). But Caterpillar's argument misses the mark. Just because Miller shared certain work product with the funders does not somehow change the fact that that it was originally created to aid this litigation. Moreover, Caterpillar ignores that Miller's counsel created the work product *because of* the litigation between the parties and that the documents would never exist but for the litigation. Under these and similar circumstances, the law instructs that the documents are protected by the work product doctrine. *Mondis*, 2011 WL 1714304 at *3; *see also Lawrence E. Jaffe*, 237 F.R.D. at 181 (work product doctrine

8

protects letters that were prepared "*because of*" litigation even though they were part of the company's compliance with SEC regulations) (emphasis added); *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998) ("Where a document was created *because of* anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3).") (emphasis added).

*Second*, Caterpillar makes the unsupported assumption that because one of Miller's funders approached Caterpillar to discuss settlement opportunities, Miller's exchange of work product with the funders increased the likelihood it would end up in Caterpillar's hands. Tellingly, Caterpillar does not cite to any information that was actually shared. Just because a funder approached Caterpillar to discuss settlement opportunities does not mean that it would have breached its confidentiality agreement with Miller and disclosed work product information.

*Finally*, Caterpillar argues that Miller is not protected by its nondisclosure agreement with Juris prior to October 27, 2011. But this argument is of no moment, because Miller has not withheld any documents exchanged with Juris prior to October 27, 2011 on the basis of work product protection. Caterpillar also argues that Miller's oral agreements with CLFL, Harbour Litigation, and Mr. John Burley are not viable. Oral agreements, however, are binding under Illinois law. *Bruzas v. Richardson*, 408 Ill. App. 3d 98, 105 (1st Dist. 2011). Unlike *Ecologix, Inc. v. Fansteel, Inc.*, 676 F. Supp. 1374 (N.D. Ill. 1988), relied on by Caterpillar to dispute the viability of Miller's oral agreements, there has been no evidence here that the parties acted inconsistently with the terms of their oral agreement. *See id.* at 1379-80; Mem. in Supp. at 13-14. Most importantly, the disclosure of work product to any of these parties did not substantially increase the likelihood that Caterpillar would obtain it, and so Miller's work product protection remains intact.

Because Miller had an understanding or agreement of confidentiality with any funder with whom it exchanged information, its disclosure of work product to these parties did not substantially increase the likelihood of Caterpillar obtaining the information. Under these circumstances, Miller is entitled to assert work product protection. The Court should therefore deny Caterpillar's motion to compel the production of these documents.

### III. Communications Between Miller, Counsel, and the Funders are Protected by the Common Interest Doctrine.

Finally, Miller withheld production of communications between Miller, counsel, and potential funders related to the merits of its case pursuant to the common interest doctrine. Under the common interest doctrine, communications between parties who share a common interest in litigation strategy are protected. *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 215-6 (N.D. Ill. 2001).

Miller shares a common interest with the litigation funders it consulted regarding investing in the case. Under similar facts, the court in *Devon IT, Inc. v. IBM Corp.*, 2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) ruled that the plaintiff shared a common interest with a third party consultant hired to evaluate its case and determine the feasibility of financing the litigation. *Id.* at *1 n.1. The court noted that the plaintiff and consultant had a "common interest in the successful outcome of the litigation which otherwise [plaintiff] may not have been able to pursue without the financial assistance" provided through the consultant. *Id.*

The court in *Devon IT* found the plaintiff had a common interest with its third party funding consultant in spite of the host of case law that provides that "the scope of the common interest doctrine is limited to a common legal interest to which the parties formed a common strategy." Mem. in Supp. at 10 (citing *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007)). Recognizing that the plaintiff and consultant had a common interest in the successful

10

outcome of the case—which the plaintiff would not have been able to pursue but for the financial assistance of the consultant—the court found that the parties' communications were protected.

Similarly, the Court here should find that Miller's communications with its funder and potential funders are protected. Like the plaintiff and its consultant in *Devon IT*, Miller and the funders have a common interest in the successful outcome of the litigation which Miller could not pursue without the funders' financial assistance. The Court should adopt the reasoning in *Devon IT* and hold that Miller's communications are similarly protected.

### IV. The Crime Fraud Exception to the Attorney-Client Privilege Does Not Apply Because Miller Did Not Commit A Crime.

Finally, as a desperate last ditch effort to abrogate Miller's privilege, Caterpillar argues that Miller's funding documents were created in furtherance of the crime of maintenance, prohibited by 720 ILCS 5/32-12, and therefore, the crime-fraud exception vitiates any attorney-client privilege and work product protection. Mem. in Supp. at 14. Caterpillar concedes that it must make a *prima facie* showing of either crime or fraud in order for the exception to apply. *Id.* (citing *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 535 (N.D. Ill. 2003)). As explained in the case cited by Caterpillar, "[a]lthough the *prima facie* evidence need not be enough to support a verdict in favor of the party making the claim, it is insufficient to merely advance allegations of fraud" or a crime without more. *Vardon*, 213 F.R.D. at 535 (internal citation omitted).

Caterpillar fails to present even *prima facie* evidence that Miller committed the crime of maintenance here. Under 720 ILCS 5/32-12, "if a person <u>officiously</u> intermeddles in an action that in no way belongs to or concerns that person, by maintaining or assisting either party, with money or otherwise, to prosecute or defend the action, <u>with a view to promote litigation</u>, he or she is guilty of maintenance and upon conviction shall be fined and punished as in cases of

11

common barratry." (emphasis added).  Champerty and maintenance actions are relatively archaic (indeed much of the case law on the subject is from the 1800s and early 1900s).  As one court put it, "[w]hile the common-law crime of champerty has not been abolished by statute in this State, the tendency of decisions is to depart from the severity of the old law . . ." *Berlin v. Nathan*, 64 Ill. App. 3d. 940, 956 (4th Dist. 1978).[3]  Furthermore, "[c]onsidering the status of society and conditions now prevailing in this country, to transfer a right of action or to maintain the suit of another without having any direct or contingent interest in it will by no means necessarily produce mischief or oppression.  Indeed, it may be that such assistance or maintenance will have a tendency to secure rights and promote the ends of justice." *Id.* at 957 (quoting 14 AM. JUR. 2d *Champerty and Maintenance,* § 1, p.842).

By the plain terms of the statute, Caterpillar cannot present even *prima facie* evidence that supports a claim that Miller has committed the crime of maintenance.  Miller initiated this lawsuit well before a funder became involved.  Caterpillar cannot present **any** evidence at all, let alone *prima facie* evidence, that suggests the funder here has "officiously intermeddled" in the case "with a view to promote litigation."  *See* 720 ILCS 5/32-12; *see also* ABA Comm'n on Ethics 20/20, Informational Report to House of Delegates re Alt. Lit. Fin. (Feb. 2012) at 10-12 (litigation funding is not generally prohibited as champertous in most jurisdictions so long as the funder is not promoting "frivolous" litigation, engaging in "malice champerty," *i.e.* supporting meritorious litigation motivated by an improper motive, or "intermeddling" with the conduct of the litigation).  Accordingly, Caterpillar may not rely on the crime fraud exception to abrogate Miller's attorney-client privilege.

---

[3] *See also Giambattista v. Nat'l Bank of Commerce of Seattle*, 586 P.2d 1180, 1186 (Wash. Ct. App. 1978) ("In no state are [champerty and maintenance] doctrines and the laws relating to them preserved with their original rigor."); *Del Webb Cmtys, Inc. v. Partington*, 652 F.3d 1145, 1156 (9th Cir. 2011) ("The consistent trend across the country is toward limiting, not expanding, champerty's reach.").

**Conclusion**

Miller's withholding of three categories of documents in response to Caterpillar's sixth set of requests for documents is supported by the law. First, documents relating solely to the structure, terms, and closing of Miller's funding arrangement simply have no bearing on any claims or defenses in this case. Second, Miller's disclosure of work product information to the third party funders did not waive its privilege because it did not substantially increase the likelihood Caterpillar would obtain it. And finally, Miller's communications with its third party funders and counsel are protected by the common interest/attorney-client privilege. For all of the reasons explained here, the Court should deny Caterpillar's motion to compel.

Date: July 10, 2013                                    Respectfully submitted,

*/s/* Reed S. Oslan
Reed S. Oslan
roslan@kirkland.com
Justin A. Barker
jbarker@kirkland.com
William E. Arnault
warnault@kirkland.com
Inbal Hasbani
ihasbani@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000
Fax: 312-862-2200

*Attorneys for Plaintiffs and Counterclaim-Defendants Miller UK Ltd. and Miller International Ltd.*

**CERTIFICATE OF SERVICE**

This is to certify that, on July 10, 2013, I caused a true and correct copy of MILLER'S OPPOSITION TO CATERPILLAR'S MOTION TO COMPEL LITIGATION FUNDING DOCUMENTS RESPONSIVE TO ITS SIXTH SET OF DOCUMENT REQUESTS to be filed with the Clerk of the Court and served by operation of the electronic filing system of the United States District Court for the Northern District of Illinois upon the following counsel who have consented to receive notice of filings in the above-captioned matter pursuant to Fed. R. Civ. P. 5(b)(2)(D), the General Order on Electronic Case Filing, and Local Rule 5.9:

>Robert G. Abrams
>Gregory L. Baker
>BAKER & HOSTETLER LLP
>1050 Connecticut Ave., N.W., Suite 1100
>Washington, D.C. 20036-5304
>(202) 861-1500 phone
>rabrams@bakerlaw.com
>gbaker@bakerlaw.com
>
>John M. Touhy
>Edward H. Williams
>BAKER & HOSTETLER LLP
>191 North Wacker Drive, Suite 3100
>Chicago, IL 60606-1901
>(312) 416-6200 phone
>jtouhy@bakerlaw.com
>ehwilliams@bakerlaw.com

*Attorneys for Defendant and Counterclaim-Plaintiff Caterpillar Inc.*

>/s/ Reed S. Oslan
>*An attorney for Plaintiffs Miller UK Ltd. and Miller International Ltd.*