# Exhibit K

A Model Litigation Finance Contract
http://litigationfinancecontract.com/contract-terms/

# LITIGATION FINANCE AGREEMENT

*Note: The model contract will grow over time. Terms listed below but lacking visible content will have those provisions added as we introduce them in posts. In addition, please see our Disclaimer.*

This Litigation Finance Agreement (Agreement) is dated as of [date], and is by and between [plaintiff's name] (Plaintiff) and [Funder's name] (Funder).

Plaintiff has a valid and substantial claim against [name]. Funder wishes to invest with Plaintiff to facilitate the prosecution of its claim and to profit if the claim is successful. Funder agrees that its financing is non-recourse; the litigation proceed rights it shall purchase represent no value if there are no proceeds of the litigation.

(For more information about the content of the recitals above, please see our essay on champerty and the posts here, here, here…)

Now, therefore, it is agreed as follows:

## 1.0 Definitions

**2.0 Representations and Warranties**

2.1 <u>Representations and Warranties of the Plaintiff</u> (For more information on these provisions, please see our essay on conflicts of interest and the posts here, …)

2.1.1 <u>Authority</u>: Plaintiff is fully authorized to enter into and perform its obligations under this Agreement, and the execution, delivery and performance of this Agreement has been duly and validly authorized.

2.1.2 <u>Common Interest</u>: The Plaintiff has received [Independent/Litigation] Counsel's advice regarding the common interest doctrine in New York.

2.1.3 <u>Full Disclosure</u>: The Plaintiff represents that, as of the date of this Agreement, the Plaintiff has provided Funder all material information relating to the Claim, excluding information protected solely by the attorney-client privilege.

2.1.4 <u>Ownership of Information</u>: Plaintiff represents that it is the lawful owner or licensee of all Confidential Information it has disclosed.

2.1.5. <u>Fully Informed</u>: the Plaintiff represents that it [and its Independent Counsel] [has/have reviewed] the disclosures by Funder in Schedules A, B, and C and Plaintiff does not object to the conflicts or potential conflicts described therein.

1

2.1.6 No Impairment:

2.1.6.1 Other than as already disclosed to the Funder[s], Plaintiff has not taken any action (including executing documents) or failed to take any action, which as a result

(a) would materially and adversely affect the Claim, or

(b) would give any person or entity other than Funder an interest in the Award or the Proceeds.

2.1.6.2 Plaintiff agrees and undertakes that

(a) it will not institute any action, suit, or arbitration separate from the Claim arising from the same facts, circumstances or law giving rise to the Claim;

(b) it will not take any step reasonably likely to have a materially adverse impact on the Claim, any Award or the Funder's share of any Proceeds; and

(c) it will not take any step that would give any person or entity an interest in the Claim or its potential Award or Proceeds except as otherwise permitted by this Agreement.

2.1.7 Solvency: The Plaintiff has no bankruptcy proceedings outstanding or written notice of potential proceedings against it.

[2.1.8 Independent Counsel: Plaintiff represents that Independent Counsel advised it about the terms of this Agreement.]

Alternate:

[2.1.8 Advice on this Agreement: Plaintiff represents that, based on the disclosures in schedules A, B and C and Funders' representations in this Agreement, and based on Plaintiff's discussion of the schedules and representations with Litigation Counsel, Plaintiff is comfortable relying on Litigation Counsel's advice regarding the terms of this Agreement and has so relied.]

2.1.9 Completeness and Accuracy: Plaintiff represents that as of the date of this agreement,

(a) all material information it and its Litigation Counsel provided to the Funder is true and correct, and

(b) all its representations and warranties in this Agreement are true and correct.

2.2 Representations and Warranties of the Funder(s)

2.2.1 <u>Authorization</u>: Funder represents that it is fully authorized to enter into and perform its obligations under this Agreement, and its execution, delivery and performance of this Agreement has been duly and validly authorized.

2.2.2 <u>Funds</u>: Funder represents that it is fully capitalized, and has, and will continue to have, sufficient funds available to fulfill its obligations under this Agreement.

2.2.3 <u>Fully Informed</u>: Funder has thoroughly reviewed all the information about the Claim provided to it.

2.2.4 <u>No Conflicts of Interest:</u>

2.2.4.1 Funder has not, as of the date of this Agreement:

(a) paid a referral fee to Litigation Counsel in connection with the Claim, the Plaintiff or this Agreement;

(b) entered any transaction with Litigation Counsel that has or would make Litigation Counsel a part owner of Funder;

(c) contracted with any other party or potential party to the Claim other than has been disclosed on Schedule A;

(d) engaged in negotiations with any other party or potential party to the Claim other than has been disclosed on Schedule B; or

(e) entered any relationship with Plaintiff's Litigation Counsel [or Independent Counsel] that potentially conflicts with Plaintiff's interests regarding the Claim other than has been disclosed on Schedule C. For the avoidance of doubt, Schedule C at a minimum details Funder's history of engaging such counsel or paying such counsel referral fees, including approximate dates, total fees paid, and the nature of the engagement; and, whether such counsel has an ongoing financial connection to the Funder other than those created by this Agreement or the retainer agreement.

2.2.4.2 Funder will not, prior to the Conclusion of the Claim, pay a referral fee to Litigation Counsel in connection with the Claim, Plaintiff, or this Agreement; transfer or agree to transfer any ownership in Funder to Litigation Counsel; or engage in any activity that would have been disclosed on Schedules A, B or C if it had occurred as of the date of this Agreement. This provision shall survive the termination of this Agreement if the Agreement is terminated prior to the Conclusion of the Claim.

2.2.4.3 Funder does not have a duty, contractual obligation or other requirement to monetize its interest in the Claim within any particular time frame or which would require the Funder to cease funding the Claim. For the avoidance of doubt, the preceding

sentence does not include a fiduciary duty that would require Funder to cease funding the Claim because of Funder's assessment of the merits of the Claim.

[Alternate:

2.2.4.3 According to its partnership agreement, the Funder must liquidate the investments and return capital to investors [X] years from the effective date of this Agreement.]

2.2.5 <u>No Waiver of Privilege</u>:

2.2.5.1 As of the date of this Agreement, Funder and its Representatives have not disclosed any Common Interest Material to anyone without the prior written consent of the Plaintiff; and

2.2.5.2 Notwithstanding section 4.2, Funder and its Representatives shall not disclose any Common Interest Material to anyone without prior written consent of Plaintiff. For the avoidance of doubt, this prohibition prevents disclosure without prior written consent to Funder's investors and/or any party to whom the Funder wishes to transfer part or all of its interest in the Claim. If consent is given, Funder shall enter into an agreement with such secondary recipients to preserve the confidentiality of the Common Interest Material on terms no less restrictive than those set forth in this Agreement for Confidential Information. This provision shall survive the termination of this Agreement and remain in effect until the Conclusion of the Claim.

2.2.6 <u>Ownership of information</u>: Funder represents that it is the lawful owner or licensee of all Confidential Information it has disclosed.

2.2.7 <u>Secondary Market Financing</u>:

2.2.7.1 Funder represents that as of the date of this Agreement it has not sold or entered negotiations to sell part or all of its interest in the Claim or the Proceeds to anyone.

2.2.7.2 Funder will not securitize its interest in the Claim or the Proceeds.

2.2.8 <u>Completeness and Accuracy</u>: Funder represents that its representations and warranties are true and correct as of the date of this Agreement.

### 3.0 Additional Covenants

3.1 <u>Covenants of the Plaintiff</u> For more information about these terms, please see our <u>essay on conflicts of interest</u>, on <u>champterty</u>, and the posts <u>here</u>, <u>here</u>,…)

3.1.1 <u>Representations Remain True</u>: the Plaintiff covenants that all of its representations and warranties shall continue to be true throughout the term of this agreement.

4

3.1.2 <u>Duty to Cooperate</u>: Plaintiff covenants to cooperate in the prosecution of the Claim. Specifically, Plaintiff [will/will cause its officers, executives and employees to] promptly and fully assist Litigation Counsel as reasonably necessary to conduct and conclude the Claim. For the avoidance of doubt, such assistance includes all actions any plaintiff may reasonably expect undertaking, such as submitting to examination; verifying statements under oath; and appearing at any proceedings. The examples in the preceding sentence are illustrative and do not limit plaintiff's duty to cooperate in any way.

3.1.3 <u>Duty to Inform</u>: Plaintiff agrees and undertakes to keep Funder fully informed about the progress of the Claim. Specifically,

(a) <u>Non-Privileged Information</u>: The Plaintiff hereby irrevocably instructs Litigation Counsel, and if further instructions are needed, undertakes to instruct Litigation Counsel, to provide Funder or Funder's Representatives with all material non-privileged information as soon as practicable, regardless of the information's source, confidentiality or form, unless Funder already possesses or controls such information.

(b) <u>Attorney Work-Product</u>: Acknowledging that this Agreement contains provisions requiring the parties to protect the confidentiality of any Confidential Information disclosed to it and that such information includes attorney work product, the Plaintiff hereby irrevocably instructs its Litigation Counsel, and if further instructions are needed, undertakes to instruct its Litigation Counsel to provide Funder's Representatives with all material attorney work product relating to the Claim as soon as practicable.

(c) <u>Attorney-Client Privileged Information</u>: Relying on the parties' agreement that they share a common legal interest and that communicating attorney-client privileged information to the Funder in the furtherance of that interest does not waive the privilege, the Plaintiff undertakes to share such information on a topic by topic basis, *provided that* neither Plaintiff nor Litigation Counsel shall disclose attorney-client protected information to Funder or its representatives unless (i) Plaintiff has discussed with [Litigation Counsel/Independent Counsel] the information to be shared, the reason for the sharing, and the probable consequences if the sharing is ultimately held to waive the privilege; and (ii) the Plaintiff has given written consent to such information sharing.

3.1.4 <u>No Change in Litigation Counsel Without Funder Notice</u>: Plaintiff agrees and undertakes that it will not engage a new attorney or law firm to conduct the Claim, either as replacement or supplemental Litigation Counsel, without giving Funder [X] days' prior notice and without giving good faith consideration to Funder's response, if any. For the avoidance of doubt "engage" in the immediately preceding sentence means "execute a retainer agreement or other contract to employ such attorney or law firm".

3.1.5 <u>Funder Participation in Settlement Decisionmaking</u>:

(a) Plaintiff will immediately notify Funder upon receiving a settlement offer, providing the Funder with the complete details of the offer in such notice. Plaintiff will not respond to the settlement offer until after giving good faith consideration to the Funder's analysis of the offer, *provided that* the Funder communicates its analysis within [x] days of receiving notice of the offer.

(b) Plaintiff will not make a settlement offer without first notifying the Funder of the proposed offer, including its complete details, and giving good faith consideration to Funder's analysis, *provided that* the Funder communicates its analysis within [x] days of receiving the proposed offer.

[3.1.6 Independent Counsel: Plaintiff will obtain Independent Counsel before agreeing to any material amendment to this Agreement and before engaging a new attorney or law firm to conduct the claim.]

3.2 Covenants of the Funder (For more information related to these provisions, please see our essay on conflicts of interest and the posts here, here, …)

3.2.1 Representations Remain True: [Each] Funder covenants that all of its representations and warranties shall continue to be true throughout the term of this agreement.

3.2.2 Fiduciary Duty: The Funder agrees and undertakes to be a fiduciary to the Plaintiff in regards to the Funder's actions, analysis and advice regarding the Claim and the conduct of the Claim for so long as the Funder has a financial interest in the Conclusion of the Claim.

Alternate:

[3.2.2 Good Faith Dealings: The Funder agrees it will act reasonably and in good faith toward the Plaintiff in every action Funder takes in relation to the Claim and Funders' performance under this Agreement. For the avoidance of doubt, and without limiting the foregoing, pressuring Plaintiff to negotiate or accept a settlement that Plaintiff believes is not in its best interest shall violate this covenant. Notwithstanding the previous sentence, Funder's mere exercise of its right to terminate without cause, including Funder's refusal to invest Committed Capital at a Milestone, shall not constitute breach of this covenant.]

**4.0 Common Interest and Confidentiality** (For more information on these provisions please see our essay on the discoverability of litigation finance contracts and these posts here,here …)

4.1 Common Interest: Plaintiff and Funder agree they share a discovery privilege-protecting common legal interest and, to the degree necessary to further their common legal interest, agree to share Common Interest Material in accordance with the provisions

of sections 2.2.5.2 and 3.1.3. Plaintiff and Funder agree the material would not be shared if the common legal interest did not exist.

4.2 Non-Disclosure Generally: During the term of this Agreement and for [X] years following its termination, the recipient of Confidential Information shall not disclose, use, or make available, directly or indirectly, any Confidential Information to anyone, except as needed to perform its obligations under this Agreement or as the disclosing party otherwise authorizes in writing. When disclosing, using, or making Confidential Information available in connection with the performance of its obligations under this Agreement or as permitted by the disclosing party, recipient shall enter into an agreement with such secondary recipients to preserve the confidentiality of the Confidential Information on terms no less restrictive than as set forth in this Agreement. The recipient agrees that neither the execution of this Agreement nor the provision of Confidential Information thereto enables the Recipient to use the Confidential Information for any purpose or in any way other than as specified in this Agreement.

4.3 Potentially Enforceable Disclosure Requests: If a party receives a potentially enforceable request for the production of Confidential Information, including without limitation a subpoena or other official process, that party will promptly notify the other party in writing, unless such notice is prohibited by law. If allowed, such notice shall be given before complying with the request and shall include a copy of the request.

If the request is of the recipient of Confidential Information, and notice to the disclosing party is prohibited by law, the recipient must make a good faith effort to contest the disclosure, if appropriate. The recipient shall also make a good faith effort to obtain an agreement protecting the confidentiality of the Confidential Information prior to disclosing it.

If a party elects to contest the request, no party shall make any disclosure until a final, non-appealable or non-stayed order has been entered compelling such disclosure. The contesting party shall pay its own expenses and control its contest, provided that, if the recipient contests a request when forbidden by law to give the disclosing party notice of the disclosure request, the disclosing party shall reimburse the recipient's reasonable expenses promptly after being notified of them.

**5.0 Funding Terms** (for discussion of these provisions, please see this commentary and the blog posts here, here, here, here, here, here, here, here, here, here, here … For a post on how litigation funding firms might raise capital, please see here.)

5.1 Committed Capital: Subject to the terms and conditions of this Agreement, the Funder[s] commit[s] [$ ] to finance the conduct of the Claim through to the Completion of the Claim as specified on Schedule [ ]

7

5.2 <u>Purchase of Litigation Proceed Rights</u>: Subject to the limitations of Section 6 and Subsections 5.4, 5.5, 5.6 and 5.7, at each <u>Closing</u> [the/each] Funder shall purchase <u>Litigation Proceed Rights</u> by depositing its <u>Investment</u> in the <u>Litigation Account</u>, such Investment being the Funder's committed capital amount specified on Schedule [ ] less any <u>Accelerated Investments</u> previously made from that committed capital. [The/Each] Funder may invest more than such amount only with the prior written agreement of the Plaintiff.

5.3 <u>Sale of Litigation Proceed Rights</u>: Subject to the terms and conditions of this Agreement, at each Closing the Plaintiff shall sell to [the/each] Funder the number of Litigation Proceed Rights [the/each Funder] is due based on the applicable purchase price and the total amount of capital [the/each Funder] deposits in the Litigation Account at such Closing. At each Closing the Funder[s] shall receive <u>Litigation Proceed Right Certificates</u> evincing its purchases.

5.3.1 <u>The Initial Closing</u>: At the <u>Initial Closing</u> the Plaintiff will sell <u>[10]</u> Litigation Proceed Rights. The <u>Litigation Proceed Right Purchase Price</u> for the Initial Closing is <u>[$ ]</u> /Litigation Proceed Right.

5.3.2 <u>The Discovery Closing</u>: At the <u>Discovery Closing</u> the Plaintiff will sell <u>[20]</u> Litigation Proceed Rights. The Litigation Proceed Right Purchase Price for the Discovery Closing is [$ ] /Litigation Proceed Right. Subject to the limitation imposed by Section 5.7, if the Plaintiff chooses, in its sole discretion, it may sell more than [20] Litigation Proceed Rights at the Discovery Closing.

[5.4 <u>Funding Shortfall</u>: If a Funding Shortfall occurs, Litigation Counsel shall so certify to [the/each] Funder and the Plaintiff. Within [30] days of receiving such certification, the parties shall negotiate in good faith to finance the Claim until the next Milestone; such negotiations may involve the sale of additional Litigation Proceed Rights or any other financing mechanism not prohibited by law.]

*Alternate:*

[5.4 <u>Accelerated Investment</u>: If an <u>Acceleration Event</u> occurs, Litigation Counsel shall so certify to [the/each] Funder. Within [30] days of receiving such certification, [the/each] Funder shall purchase [a pro-rata share of] [5] Litigation Proceed Rights at the Litigation Proceed Right Purchase Price used at the Closing immediately prior by depositing the Funder's total purchase price into the Litigation Account. This Accelerated Investment shall not represent a new capital commitment; instead it is the acceleration of a portion of the capital intended for investment at the next Closing. The number of Litigation Proceed Rights sold at an <u>Acceleration Closing</u> shall reduce the number of Litigation Proceed Rights offered for sale at the [Discovery Closing/<u>at the next Milestone Event Closing</u>] by a like amount.]

8

[5.5 Supplemental Investment: If a Supplemental Investment Event occurs, Litigation Counsel shall so certify to [the/each] Funder. Within [30] days of receiving such certification, [the/each] Funder shall purchase [a pro-rata share of] [5] Litigation Proceed Rights at [the Litigation Proceed Right Purchase Price used at the Closing immediately prior/at a price [10%] less than the price used at the Closing immediately prior] by depositing the Funder's Supplemental Investment into the Litigation Account.]

*Note, depending on the alternative chosen, the remaining subsections may need to be renumbered.*

5.6 Re-pricing Litigation Proceed Rights:

5.6.1 Invoking Right to Reprice: Within [7] days of receiving certification from Litigation Counsel that a Re-pricing Milestone has occurred, [the/a majority] of Funder(s) may trigger a Re-pricing Event by serving notice on the other part(y/ies).

5.6.2 The Purpose of Re-pricing: Subject to the limitation in Subsection 5.7, the parties agree that the purpose of re-pricing pursuant to this Section 5.6 is to preserve the Expected Value of the Funder['s/s'] Litigation Proceed Rights and not to renegotiate it.

5.6.3 Mechanism of Re-pricing: Subject to the limitation imposed by Section 5.7, Plaintiff shall immediately transfer additional Litigation Proceed Rights to the Funder[s] until the total number of Litigation Proceed Rights owned by the Funder[s] has the Expected Value, and Plaintiff shall document this transfer by promptly delivering additional Litigation Proceed Right Certificates, provided that, if the Re-pricing Milestone is a proposed settlement, such transfers shall occur simultaneously with the consummation of the settlement. If the settlement is not consummated and the Claim continues, the number of Litigation Proceed Rights owned by the Funder(s) does not change.

5.7 Minimum Plaintiff Proceeds: Under no circumstances shall the Plaintiff sell more than [50] Litigation Proceed Rights, nor shall the issuance of additional Litigation Proceed Rights pursuant to Section 5.6.3(a) result in the Plaintiff receiving less than [50%] of the Proceeds.

5.8 No Commitment for Additional Financing: The Plaintiff acknowledges and agrees that [no Funder has/the Funder has not] made any representation, undertaking, commitment or agreement to provide or assist the Plaintiff in obtaining any financing, investment or other assistance, other than the investments as set forth herein and subject to the conditions set forth herein. In addition, the Plaintiff acknowledges and agrees that (i) no statements, whether written or oral, made by [any/the] Funder or its representatives on or after the date of this Agreement shall create an obligation, commitment or agreement to provide or assist the Plaintiff in obtaining any financing or investment, (ii) the Plaintiff shall not rely on any such statement by [any/the] Funder or its

representatives and (iii) an obligation, commitment or agreement to provide or assist the Plaintiff in obtaining any financing or investment may only be created by a written agreement, signed by such Funder and the Plaintiff, setting forth the terms and conditions of such financing or investment and stating that the parties intend for such writing to be a binding obligation or agreement.

5.9 New Funder Participation: Plaintiff can invite other potential funders to participate in any Closing at its sole discretion, provided that existing Funders are allowed to continue participating according to the capital commitment they had already made. Funders can invite additional potential funders to participate in Closings, but the Plaintiff, in its sole discretion, must approve both the new funder's participation and the size of its investment before the potential funder can participate. For the avoidance of doubt, no Litigation Proceed Rights shall be sold to any person unless such person joins this Agreement.

**6.0 Funder Right to Terminate Investment Without Cause**

6.1 Termination at Milestones: Within [7] days after receiving certification from Litigation Counsel that a Milestone Event has occurred, [the/each] Funder may give notice to the Plaintiff of its intention to terminate investing under this Agreement. If [the/a] Funder gives such notice it shall not participate in any Closing related to the Milestone Event unless its notice fails to become effective. For such notice to become effective, within [90] days of giving notice the Funder must deliver an executed amendment to this Agreement in the form of Exhibit [ ] (A). Such amendment provides that (i) the Funder shall retain the Litigation Proceed Rights it previously purchased except that such rights will no longer be subject to re-pricing pursuant to Subsection 5.6; (ii) certain other provisions of this Agreement remain in effect. If the executed amendment is not timely sent to the Plaintiff, the Funder's investment termination notice is void as if never given and the Funder must immediately make the Investment that was due at the Closing related to the Milestone Event.

6.2 Termination at Any Time: At any time, [the/each] Funder may give notice to the Plaintiff of its intention to terminate its investment in the Claim. To make its notice effective, within [90] days the Funder must return a fully executed Amendment in the form of Exhibit [ ](B) and return all of its Litigation Proceed Right Certificates. The Amendment shall reflect that the Funder (i) no longer owns any Litigation Proceed Rights; (ii) certain other provisions of this Agreement remain in force.

6.3 Termination at Any Time With Replacement Funding: At any time [the/each] Funder has the right to propose exiting the Agreement by assigning its rights and obligations to a Qualified Replacement Funder. Such assignment requires (i) Plaintiff consent, which shall not be unreasonably withheld, and (ii) the Qualified Replacement Funder's joinder to this Agreement. The ownership of the exiting Funder's Litigation Proceed Rights will

be retained by the exiting Funder or transferred to the Qualified Replacement Funder pursuant to their agreement.

**7.0 Termination For Cause**

7.1 Plaintiff Breach

7.1.1 <u>Material Provisions</u>: The provisions of this contract relating to complete and accurate disclosure of material information about the claim; to cooperation in conducting the claim; and of non-impairment of the claim, the potential award and any proceeds thereof, are the very essence of this agreement and any breach by Plaintiff of those provisions is presumptively material. For the avoidance of doubt, the material provisions are: 2.1.3 and 3.1.3 (relating to disclosures), 2.1.6 (no impairment), and 3.1.2 (cooperation). The presumption of materiality can be rebutted by Plaintiff by showing that such breach did not reduce the potential value of the funder's Litigation Proceed Rights by more than [10%] compared to the Expected Value of those Litigation Proceed Rights.

7.1.1.1 Notwithstanding 7.1.1, failure to disclose material information about the claim that supports the claim, strengthens the claim, or otherwise cannot reasonably be believed to have influenced funder to avoid investing or re-investing in the claim had it been disclosed when required is not a material breach of the disclosure provisions.

7.1.2 <u>Material Breach of Other Provisions</u>: The breach by Plaintiff of any other provision is material if it, by itself, reduces the potential value of the funder's Litigation Proceed Rights by more than [33%], compared to the Expected Value of those Litigation Proceed Rights.

7.1.3 <u>Notice of Material Breach by Plaintiff</u>: If Funder believes Plaintiff has materially breached this contract it shall promptly serve notice on Plaintiff. If the breach can be cured Plaintiff then has [30] days to do so. Breaches of the following provisions cannot be cured: the failure to disclose material information covered by 7.1.1.1 at the time of contract execution not and the failure to disclose existing claim impairment at contract execution.

7.1.4 <u>Consequences of Material Breach by Plaintiff</u>: If the Plaintiff commits an incurable material breach under 7.1.1 or 7.1.2 or fails to timely cure material breach as defined therein, Funder is entitled to an immediate refund of all of its Investment remaining in the Litigation Account and is entitled to keep its Litigation Proceed Rights. Funder shall have no further obligations under this Agreement other than the provisions that explicitly survive the termination of this Agreement. This provision shall not limit Funder's other remedies at law or equity.

7.1.4.1 If the existence of a material breach is disputed by the Plaintiff the Disputed Refund provisions of the Escrow Agreement governing the Litigation Account shall apply.

*Alternate:*

[7.1.4 Consequences of Material Breach by Plaintiff: If the Plaintiff commits an incurable material breach under 7.1.1 or 7.1.2 or fails to timely cure material breach as defined therein, Funder may seek damages from said breach at law or equity.]

7.2 Material Breach by Funder

7.2.1 Material Provisions: Funder recognizes that its representations regarding its ability to honor its capital commitments and its commitments to protect Plaintiff's privileged [and Proprietary] Information are of the essence of this agreement. For the avoidance of doubt, these are the material provisions 2.2.2 (funds), 2.2.5 and 4.1 (privilege) [and 4.3 Proprietary Information]. A material breach of 2.2.2 occurs if the Funder is unable to invest Committed Capital when required. A material breach of 2.2.5 or 4.1 occurs if the disclosure could result in waiver of the privilege if any other party to the litigation learned of the disclosure, regardless of how the other party to the litigation learned of the disclosure. [A material breach of 4.3 Proprietary Information occurs if the breach results, by any method, in the Proprietary Information being received by any person or entity that could use it to its commercial advantage or to commercially disadvantage the Plaintiff.]

7.2.2 Material Breach of Other Provisions: The breach by Funder of any other provision is material if it, by itself, reduces the potential value of the Award or Proceeds by more than [10%] as measured against the Initial Claim Value.

7.2.3 Notice of Material Breach by Funder: If Plaintiff believes Funder has materially breached this contract it shall promptly serve notice on Funder. If the breach can be cured Funder then has [30] days to do so.

7.2.4 Consequences of Material Breach by Funder: If Funder commits an incurable material breach under 7.2.1 or 7.2.2 or fails to timely cure a material breach as defined therein, Funder's Litigation Proceed Rights are cancelled and Funder must promptly return its Litigation Proceed Right Certificates. This provision shall not limit any other remedies Plaintiff may have in law or equity.

7.2.4.1 If Funder disputes the existence of a material breach the Disputed Rights provisions of the Escrow Agreement governing the Proceeds Account shall apply.

*Alternate:*

[7.2.4 <u>Consequences of Material Breach by Funder</u>: If Funder commits an incurable breach under 7.2.1 or 7.2.2 or fails to timely cure a material breach as defined therein, Plaintiff may seek damages at law or equity.]

## 8.0 Security Interest

8.1 <u>The Proceeds Account</u>: Plaintiff hereby irrevocably instructs, and, if further instructions are needed, will instruct, Litigation Counsel to receive any Proceeds Plaintiff becomes entitled to on behalf of the Plaintiff, and to immediately deposit all such Proceeds in the Proceeds Account. The Proceeds Account is governed by the Control Agreement among the Plaintiff, Funder, and [the financial institution the deposit account is located] dated as of [same date or earlier as this Agreement.] As provided in the Control Agreement, Plaintiff may not access the funds in the Proceeds Account until after Funder is paid the value of its Litigation Proceed Rights, whether from the Proceeds Account or from any other source owned or controlled by Plaintiff. As specified in the Control Agreement, the Control Agreement shall terminate upon the Funder's receipt of the value of its Litigation Proceed Rights.

8.2 <u>Security Interest in the Proceeds Account</u>: To secure its obligation to the Funder represented by the Litigation Proceed Rights owned by Funder, Plaintiff hereby grants Funder a security interest in the Proceeds Account and any and all property therein, whether such property is in the account now or is after-acquired. Such security interest shall terminate at the earlier of Plaintiff paying the Funder the full value of the Funder's Litigation Proceed Rights or the Conclusion of the Claim, if, at the Conclusion of the Claim, Plaintiff is not entitled to receive any Proceeds from any Defendant.

[8.3 <u>Security Interest in the Claim and its Proceeds</u>: The parties agree that the Claim is a "commercial tort" as defined in Article 9 of the New York U.C.C. at Section 9-102(a)(13). To secure its obligation to Funder represented by the Litigation Proceed Rights owned by Funder, Plaintiff hereby grants Funder a security interest in the Claim and any Proceeds received by Plaintiff from any defendant in the Claim. This security interest shall terminate at the earlier of Plaintiff paying the Funder the full value of the Funder's Litigation Proceed Rights or the Conclusion of the Claim, if, at the Conclusion of the Claim, Plaintiff is not entitled to receive any Proceeds from any Defendant.]

*This provision is only relevant if the claim is a commercial tort which many funded claims are not.*

8.4 <u>No Other Security Interests</u>: The Plaintiff shall not grant a security interest in the Proceeds Account [or the Claim] to anyone other than Funder without the Funder's prior written consent.

## 9.0 Miscellaneous

9.1 <u>Governing Law</u>: This agreement shall be <u>governed by New York law</u>. (For more information on the need to pick a particular state's law and what New York's means for this contract, please see <u>our assumptions</u> and our essays on <u>champerty</u>, <u>discoverability</u>, …)

9.2 <u>Forum Selection</u>: 9.2 Forum Selection: Each of the parties hereto hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the courts of the State of New York and of the United States of America located in the City of New York for any actions, suits or proceedings arising out of or relating to this Agreement and the transactions contemplated hereby, and agrees not to commence any action, suit or proceeding relating thereto except in such courts. Each of the parties hereto irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of or relating to this Agreement and the transactions contemplated hereby in the courts of the State of New York and of the United States of America located in the City of New York and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum.

9.3 <u>Entire Agreement</u>: This Agreement (including the Exhibits and Schedules hereto) constitutes the full and entire understanding and agreement between the parties with respect to the subject matter hereof.

9.4 <u>Amendments and Waivers</u>: Any term of this Agreement may be amended, terminated or waived only with the written consent of the Plaintiff and the Funder.

[Alternate for multiple funders:

9.4 <u>Amendments and Waivers</u>: Except as set forth in Sections 6 and 7 of this Agreement, any term of this Agreement may be amended, terminated or waived only with the written consent of the Plaintiff and (i) the holders of at least [specify percentage] of the Litigation Proceed Rights then outstanding or (ii) for an amendment, termination or waiver effected prior to the Initial Closing, Funders obligated to purchase [specify percentage] of the Litigation Proceed Rights to be issued at the Initial Closing. Any amendment or waiver effected in accordance with this Subsection 9.4 shall be binding upon all parties to this Agreement.]

9.5 <u>Severability:</u> The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

9.6 <u>Notices:</u> All notices given pursuant to this Agreement shall be in writing and shall be deemed effective upon the earlier of actual receipt or: (i) personal delivery to the party to be notified, (ii) when sent, if sent by electronic mail or facsimile during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, (iii) [ ] days after having been sent by registered or certified

14

mail, return receipt requested, or (d) one (1) business day after deposit with a nationally recognized overnight courier for next business day delivery with written verification of receipt.

Communications shall be sent to the appropriate addresses as set forth on Exhibit [ ], or to such e-mail address, facsimile number or address as subsequently modified by written notice given in accordance with this Subsection 9.6.

9.7 Counterparts: This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

9.8 Titles and Subtitles: The titles and subtitles used in this Agreement are used for convenience only. They are not to be considered in construing or interpreting this Agreement.