# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHER DISTRICT OF ILLINOIS
### EASTERN DIVISION

MILLER UK LTD. and MILLER )
INTERNATIONAL LTD., )
                             )
       Plaintiffs, )      **Case No. 10 C 3770**
                             )
       v. )      **Judge Wood**
CATERPILLAR, INC., )
                             )      **Magistrate Judge Cole**
      Defendant. )

## MEMORANDUM OPINION AND ORDER IN RESPONSE TO CATERPILLAR'S MOTION TO REVERSE CERTAIN OF THE SPECIAL MASTER'S RULINGS ON PRIVILEGE

Special Master, Michael Mahoney, has reviewed some 5,000 documents and emails to determine the applicability of the attorney/client privilege or work-product doctrine. Caterpillar has appealed a relatively small number of those determinations. [Dkt. #592]. The basic principles relating to the attorney/client privilege and work-product doctrine have been discussed at some length in prior decisions in this case and need not be repeated except as necessary to resolve Caterpillar's objections. *See e.g.*, *Miller UK Ltd. v. Caterpillar, Inc.*, _F.Supp.2d_, 2014 WL 67340, 11 (N.D.Ill. 2014).

### A.

It cannot be too strongly emphasized that the lawyer-client relationship, itself, "does not create 'a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client.' " *In re Walsh,* 623 F.2d 489, 494 (7th Cir.1980). Thus, communicating with, mentioning, or copying a lawyer on an otherwise non-privileged communication, will not transform the non-privileged communication

or attachment into a privileged one, even if the otherwise non-privileged communication was at the behest of the lawyer. *See Lyondell Chem. Co. v. Occidental Chem. Corp.,* 608 F.3d 284, 300 n. 57 (5th Cir.2010); *In re Avantel, S.A.*, 343 F.3d 311, 321 (5th Cir.2003); *In re Allen,* 106 F.3d 582, 604 (4th Cir.1997); *Radiant Burners v. Am. Gas Ass'n,* 320 F.2d 314, 324 (7th Cir.1963); *Lee v. Chicago Youth Ctrs.*, 2014 WL 2618537, at *4 (N.D.Ill. 2014); *Primetime 24 Joint Venture v. Echostar Comm'cns Corp.,* No. 98Civ.6738, 2000 WL 97680, at *1–3 (S.D.N.Y. 2000).*Cf., McCullough v. Fraternal Order of Police, Chicago Lodge 7,* _F.Supp.2d _, _ 2014 WL 2514623, *3 (N.D.Ill.2014) (collecting cases); *Owens v. Stifel, Nicolaus & Co., Inc.,* 2013 WL 6389035, 10 (M.D.Ga. 2013).[1]

While a client cannot be compelled to answer the question, "what did you say to your attorney," he may not refuse to disclose any relevant non-privileged document or fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney or attached the document to an email or letter to the attorney. *See Lee,* 2014 WL 2618537; *Northern Valley Communications, L.L.C. v. Qwest Communications Corp.,* 2010 WL 3672233, *4 (D.S.D.2010)("simply including an attorney in a communication will not render an otherwise discoverable document protected by the privilege"); *McCullough*, 2014 WL 2514623, *3 ("And simply copying a lawyer on an otherwise non-privileged communication will not transform the non-

---

[1] These principles have been repeatedly adhered to by courts throughout the nation. *See, e.g., Lyondell Chem. Co. v. Occidental Chem. Corp.,* 608 F.3d 284, 300 n. 57 (5th Cir.2010); *In re Allen,* 106 F.3d 582, 604 (4th Cir.1997) (citing *Radiant Burners v. Am. Gas Ass'n,* 320 F.2d 314, 324 (7th Cir.1963)); *Reid v. Transocean Offshore Deepwater Drilling, Inc.* L 2740376, 1 -2 (E.D.La.,2014) *Primetime 24 Joint Venture v. Echostar Comm'cns Corp.,* 2000 WL 97680, at *1–3 (S.D.N.Y. Jan 28, 2000); *Johnston v. Dillard Dep't Stores, Inc.,* 152 F.R.D. 89, 93 (E.D.La.1993); *Stopka v. American Family Mutual Ins. Co.,* 816 F.Supp.2d 516, 528 (N.D.Ill.2011); *Tect Aerospace Wellington, Inc. v. ThyssenKrupp Materials NA, Inc.,* 2009 WL 1313230, *2 (D.Kan.2009); *In re Human Tissue Products Liability Litigation,* 255 F.R.D. 151, 164 (D.N.J.2008); *Steele v. Lincoln Financial Group,* 2007 WL 1052495, at *2 (N.D.Ill.2007); *Fru–Con Const. Corp. v. Sacramento Mun. Utility Dist.,* 2006 WL 2255538, at *2 (E.D.Cal.2006); *U.S. ex rel. Fields v. Sherman Health Systems,* 2004 WL 905934, at *2 (N.D.Ill.2004).

privileged document into a privileged one.")(collecting cases).[2]

The Second Circuit's opinion in *United States v. Walker,* 243 Fed.Appx. 621 (2d Cir.2007)

is instructive:

> The same is true as to the remainder of the 170 documents, which were composed chiefly of various form printouts summarizing PCA's contracts. Even assuming the documents (or the handful of corrections and clarifications handwritten thereon) were work product or were privileged, they contain solely factual information about PCA's business, and shed no light on Walker's confidential communications with counsel or defense strategy. Moreover, we agree with the district court that these documents were neither work product nor attorney-client communications. The attorney-client privilege protects from disclosure the contents of confidential attorney-client communications, but does not prevent disclosure from the client's records the underlying factual information included in attorney-client communications. *See Upjohn Co. v. United States*.... For this reason, putting otherwise non-privileged business records (like the contract summaries here) in the hands of an attorney-or printing out such records for an attorney to review-does not render the documents privileged or work product. *See Ratliff v. Davis Polk & Wardwell,* 354 F.3d 165, 170–71 (2d Cir.2003) ("Documents obtain no special protection because they are housed in a law firm; '[a]ny other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney.')....

243 Fed.Appx. at 624. As the Fifth Circuit more succinctly put it, if a document is discoverable in

the client's hands, it does not become less discoverable when passed to an attorney's hands. *United*

*States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997).

These basic and overarching principles are repeatedly ignored by Caterpillar. Indeed, we are

constrained to say that a good number of its objections to the special master's report are mystifying.

Even communications from counsel do not become automatically immune from discovery

---

[2] Indeed, the privilege has never been construed to allow a client to funnel papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure. *Radiant Burners, Inc. v. American Gas Ass'n ,* 320 F.2d 314, 324 (7th Cir.1963). If the result were otherwise, unscrupulous clients and lawyers could have all relevant documents sent to their counsel initially or as attachments to emails and then refuse to honor a single Rule 34 request. *Id.* The privilege is not so easily perverted.

as work product on the theory that the selection and compilation of documents would show counsel's theories. It is only when there is "a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents" that the communication becomes protected work product. *In re Grand Jury Subpoenas,* 318 F.3d at 386. Editorial changes or contributions by a lawyer do not necessarily qualify under the attorney/client privilege. *Musa–Muaremi v. Florists' Transworld Delivery, Inc.,* 270 F.R.D. 312, 314–16 (N.D.Ill.2010).

Documents prepared for business purposes, rather than seeking legal advice, are not protected by the privilege. *Miller UK Ltd. v. Caterpillar, Inc.,* —— F.Supp.2d ——, ——, 2014 WL 67340, *11 (N.D.Ill.2014). Of course, legal advice relating to business matters is protected. *Sullivan v. Alcatel–Lucent USA, Inc.,* 2013 WL 2637936, *2 (N.D.Ill.2013). *See also Sandra T.E. v. South Berwyn School Dist. ,* 600 F.3d 612, 620 (7th Cir.2010). And finally, documents or information intended to be or given to a third party (such as Mr. Miller) are not privileged. *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983); *United States v. Schussel,* 291 Fed.Appx. 336, 347 (1st Cir.2008). *See also United States v. Crane*, 840 F.2d 18 (6th Cir.1988); *Miller UK Ltd.*, 2014 WL 67340, 11.

Because the privilege, like all testimonial privileges and all exclusionary rules, makes the search for truth more difficult by preventing disclosure of what is often exceedingly probative information, it is narrowly construed and is limited to those instances where it is necessary to achieve its purposes. *See Pierce County, Wash. v. Guillen,* 537 U.S. 129, 144–145 (2003); *Fisher v. United States,* 425 U.S. 391, 403 (1976)("Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the

search for the truth."); *Leonard–Allen,* 739 F.3d at 952;  *McCullough v. Fraternal Order of Police, Chicago Lodge 7,*  2014 WL 2514623, 3 (N.D.Ill.2014)(collecting cases).  This core principle is utterly ignored by all too many of Caterpillar's objections.

The burden is on the party invoking the privilege to establish that it applies to each particular document.  *Shaffer v. American Medical Ass'n*,  662 F.3d 439, 446 (7th Cir. 2011). Even though conclusory assertions do not suffice to carry this burden, *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir.2003),  such assertions appear to have made up the bulk of Caterpillar's showing to the Special Master.  Also, the fact that documents are labeled "Confidential" or "Protected by Attorney-Client Privilege" – as nearly all the emails in this cache are – is all but meaningless, contrary to Caterpillar's thinking. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) and cases cited at 1-2, *supra*.

**B**.

To facilitate the court' review of the pertinent documents, Caterpillar has aggregated related and repetitive documents together. This has substantially assisted the court, and the aggregated numbering sequence used by Caterpillar will be used here. When a district court reviews the findings and conclusions of a special master, the general rule is that the district court steps into the shoes of an appellate court and employs the same standards that an appellate court uses to review a lower court opinion; in other words, it reviews a special master's legal conclusions de novo and accepts findings of fact unless they are clearly erroneous.  *Cook v. Niedert*, 142 F.3d 1004, 1009-10 (7th Cir. 1998).

**Log Nos. 25, 1094, 1095**: The only portion of these exhibits which is privileged is that part of the sentence that states "the legal opinion" and ends with the word "pin." The balance of the documents

are not privileged and the objections are overruled.

**Log. Nos. 26, 30, 31, 32, 33, 43, 44, 98, 142, 411, 419, 420, 421, 436, 437, 840, 841, 858, 861, 862, 863, 864, 865, 866**: The objection to these documents is overruled. In addition, one of the notes reflects that the information checked by Tim Kinskey in legal was to be provided to Mr. Miller at the end of an anticipated meeting. The bulk of these documents appear to address production and inventory control issues, rather than any legal matters.

**Log Nos. 29, 35, 147, 149, 150, 418, 425, 857, 869, 875, 879, 880**

As is clear from the Special Master's report and Caterpillar's subsequent arguments on appeal, the problem with this group of documents – like several others – is that Caterpillar was too cryptic in its presentation to the Special Master and failed to meet its burden of establishing the applicability of the privilege to each document. The documents in this group involve a letter Caterpillar sent to Miller, informing Miller that Caterpillar would be coming out with its own coupler but wanted to maintain its relationship with Miller. As the Special Master noted, there is no indication of who drafted the letter, and it does not reflect legal advice. The notes in the documents reflect no more than editorial changes – changes like "product line" to "products" or "contract" to "agreement." Such changes are not protected. *United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F.Supp. 156 (E.D.N.Y. 1994); *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 316 (N.D.Ill. 2010).

**Log Nos. 37, 40, 97, 140, 141, 414, 416, 761, 845, 853, 855**

As with the previous group of documents, Caterpillar failed to meet its burden before the Special Master. And again, the changes Caterpillar seeks protection for are cosmetic – a change of "our own" to "our" or the removal of a "Thank you." No matter how latitudinarian one's view of the

attorney/client privilege might be, it is not broad enough to embrace the documents in this category.

**Log No. 45**

This document reflects nothing more than a cancellation of a meeting and the fact that Caterpillar wondered what Miller's reaction would be to Caterpillar's introduction of its own coupler. The observation made in the entry above applies here.

**Log Nos. 59, 1516**

The documents in this category consist of a PowerPoint presentation with pictures of couplers and copies of a patent next to certain of the pictures. The pictures, of course, are not protected any more than is the copy of the patent that appears on certain of the pages of pictures of the couplers, even if the emails were. *Lee v. Chicago Youth Ctrs*., 2014 WL 2618537, at *4 (N.D.Ill. 2014). But they are not; they are emails between engineers. They do not reflect the giving or receiving of confidential legal advice. They reflect opinions of one engineer offered to another.

**Log Nos. 72, 171, 270, 341, 447, 497, 789, 791, 1004**

As with other categories of documents, Caterpillar's issue with the Special Master's ruling stems from its own conclusory presentation before the Special Master. Moreover, the documents in this group appear to be nothing more than copies of a cover email that does not reflect the substance of any confidential communication. The mere fact that a person is or has sought legal advice is not privileged. *United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997); *S.S. v. Leatt Corp.*, 2014 WL 356938, 6 (N.D.Ohio 2014); *United States ex rel. Barko v. Halliburton Company,* 2014 WL 6657103, 3 (D.D.C.2014); 8 Wigmore on Evidence § 2309 (McNaughton Rev.1961) (although a communication of "the place of custody of a document may be a part of a communication ... and may also be a confidential one ... ordinarily it will be neither").

**Log Nos. 75**

Number 75 is an email from Caterpillar's general manager to Caterpillar's CEO with copies to counsel. The memorandum does not reflect legal advice but rather an assessment of why Caterpillar's coupler is different. (i.e., "Caterpillar does not use the same internal configurations."). Also, the recommendation that "we would ask that you not offer a reply" to Keith Miller's latest correspondence is not from the lawyers, but from Mr. Tevebaugh. The email, itself, says that the response is from the "engineering team" and from legal. But the memo makes no distinction. It is obvious that the bulk of the memo consists of evaluations from engineering at Caterpillar and does not give legal advice from lawyers.

**Log Nos. 73, 172, 271, 342, 448, 498, 675, 676, 790, 792, 1005, 1528**

This category is another example of Caterpillar simply failing to provide enough information to the Special Master. Indeed, Caterpillar does not even describe Log No. 73 accurately – it is described as an email chain, while it's actually a single letter. The letter is Caterpillar's retort to Miller's accusations. The documents are not protected.

**Log Nos. 76, 338, 443, 671, 672, 673, 780, 1000**

The documents in this group are copies of an email that reflects no legal advice or confidential communications. They say nothing more than Caterpillar is at odds with Miller and was putting it in the hands of its legal department. The documents are not protected.

**Log Nos. 78, 1060**

These documents deal with business rather than legal concerns. In them, the production manager says that customers will be given the choice of Caterpillar's K or J lines. The documents are obviously not protected.

**Log No. 87**

Arguably, this is an email to in-house counsel, among others, asking for their thoughts on a proposed statement. However, the email did not simply go to a lawyer but to a number of others at Caterpillar also seeking their input. Thus, the email is not privileged. A response from the lawyer might be protected but that's not what is involved here.

**Log No. 93**

This is another instance of Caterpillar failing to meet its burden of establishing the applicability of the privilege before the Special Master. That is, the showing made before the special master was superficial and uninformative. Now there is a new expanded explanation. The problem, of course, is that Caterpillar cannot now augment or elaborate on an under-inclusive showing before the special master, any more than a party can make an argument on appeal that was not made before the district court or can advance an argument before a district judge not advanced before a magistrate judge to whom a matter was originally referred. *The Glidden Co. v. Kinsella,* 386 Fed.Appx. 535, 544, 2010 WL 2803944, 8 (6th Cir. 2010)(collecting cases).

**Log Nos. 103, 161, 883, 954**

These documents evince the same problem with Caterpillar's showing before the Special Master as previous group. This is a letter from Caterpillar to Miller about handling warranty claims is not privileged.

**Log Nos. 111, 112, 113, 923, 993**

The contested emails are arguably protected as they involve Caterpillar's in-house counsel.

**Log No. 144**

As the Special Master states, this appears to be a letter Caterpillar sent to Miller. There is

nothing to indicate it is a draft or not a final version. Incredibly, Caterpillar argues that it is "immaterial" that the letter was sent to Miller but, obviously, that means the letter was not confidential. *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).

**Log Nov. 199**

This document is another cover email, and there is nothing confidential about it. It does nothing more than announce, "[h]ere is a communication that would update dealers on the case status . . ." While it is being sent to in-house counsel, again, the mere fact that advice might be being sought is not privileged. *Robinson*, 121 F.3d at 971; *Leatt Corp*., 2014 WL 356938, 6; cases cited a 8, *supra*.

**Log Nos. 200, 314**

While Caterpillar claims that this document containing nine separate bullet points regarding the Miller/Caterpillar controversy. One the face of the document it is impossible to tell who authored it although Caterpillar now claims it was authored by Caterpillar's lawyers. It basically does nothing more than outline Miller's lawsuit and contains a request for any information that Miller may provide to the individuals to whom this outline of the lawsuit was sent. At the end, it does contain legal advice. The last bullet point may be redacted. The rest is not protected.

**Log Nos. 201, 222, 1305**

These documents are a cover email and attached email about a customer visit and an ensuing bad review regarding Caterpillar's couplers. Caterpillar wants to redact, not the substantive communication, but the cover email. Again, this is the same problem as with Log 199. See also cases *supra* at 8.

**Log Nos. 211, 221**

The documents were not included in the materials sent to us.

**Log Nos. 213, 1313, 1349, 219, 1350, 1352, 235, 240, 236, 237, 245, 246, 247, 1297, 1298, 1299, 1302, 1303, 1300, 1301, 254, 255, 256, 257, 258, 259, 1296, 1351, 1353, 1358, 1396, 1397, 1398, 1405, 1406, 1399, 1400, 1401, 1402, 1403, 1407, 1408, 1409, 219, 1283, 1284, 1416, 263, 264, 1348, 231, 232, 1321, 248, 249, 251, 1355, 1356, 1357, 250, 1318, 1404, 273, 1361, 1362, 1360, 1394, 290, 1316, 1320, 484, 1304, 1413**

This cache of documents concerns an email conversation regarding whether Miller wrote to Caterpillar's dealers that their coupler was better than Caterpillar's. While in-house counsel were cc'd, Caterpillar seems to routinely do that with every communication. It is apparent from its showing before the Special Master and arguments on appeal that Caterpillar is operating under the misapprehension that documents become privileged magically when touched by an attorney. As the cases cited at 1-3, *supra*, show this gambit is unavailing. Some documents are nothing more than a description of the Miller mailing *that went to multiple dealers*. Others are as mundane as a roster of dealers that got the mailing from Miller. As well, documents stating that individuals were going to "check with legal" are not privileged for the same reason that has already been mentioned.

**Log Nos. 1291, 1393**

This is an email from one Caterpillar non-legal person to another (i.e. Oswald to Fahey). It is not privileged notwithstanding the designation on the email "privileged and confidential, attorney-client communication, attorney work product."

**Log Nos. 340, 664, 788**

This group are copies of emails wherein a division general manager says he "would not suggest" that the Caterpillar CEO have any contact with Miller. Caterpillar claimed before the

Special Master that this "reflect[s] legal advice." On appeal, it claims that it "requests legal advice." Neither position has any support, and Caterpillar's change in midstream undermines the good faith of its position. Again, the mere fact that one seeks legal advice is not privileged.

## Log Nos. 372, 440

These emails between Caterpillar employees are not protected.

## Log Nos. 406, 408, 409, 833, 836, 837

These documents are copies of a note from Caterpillar's market development and communications supervisor to Mr. Oswald, an engineering manager, forwarding information. It simply makes reference to the fact that "the note below" was sent to the legal team. It simply recounts how Caterpillar successfully trademarked the name "Fusion" and what a terrific benefit this was to Caterpillar. It goes on to say what Caterpillar's "engineers have been concentrating on here in Wamego" – namely couplers. It goes on to discuss all sorts of things about couplers. Sending the note to the legal department doesn't transform an unprivileged document into a privileged one. There is no legal advice requested or reflected. The document is essentially a self-congratulatory update on Caterpillar's engineering efforts and the perceived value to Caterpillar's business resulting from the trademark "Fusion." The hope is also expressed that Caterpillar can trademark the term "Axiom" for its new coupler.

## Log No. 434

This was one of the very rare inconsistent rulings by the Special Master, precipitated by the massive document dump made on him by the parties, combined with multiple copies of the same documents in various files. This document was ruled privileged in other guises, so the objection is

sustained.

**Log Nos. 452, 999, 1033**

This group of documents relays a conversation a Caterpillar sales manager had at an airport with a gentleman who had started his own company. The chain suggests that Caterpillar thinks he was a spy for Miller, because he asked technical questions. As with most of these appealed documents, Caterpillar mistakenly believes it is privileged because at one point, someone wants to know what in-house counsel thinks of it and the report of the conversation is forwarded to in-house counsel.

**Log No. 458, 469, 470, 1034, 1054, 1057**

This is a request to gather certain information involving part numbers, literature, films, invoices, serial numbers, and whether certain information was shipped with a particular coupler. Also requested are media numbers for a service manual, specifications for the coupler, documents on safe use of the coupler, documents on retrofit of couplers, and other documents relating to a particular coupler. This information does not fall within the attorney/client privilege or work-product privilege. It is simply a request for documents required to respond to discovery requests in a particular case.

**Log No. 478**

This is nothing more than another cover email stating that a communication from Miller is attached. As with other such documents, this is not privileged.

**Log Nos. 506, 1420, 1509, 1517, 1518, 1519**

The Special Master has limited Caterpillar's redaction in these documents, and Caterpillar

asserts that all redactions must be protected.  But an observation that litigation, if lost, might result in injunctions, damages, and legal fees are not confidential information.  They are expressions of the obvious and inevitable.

**Log Nos. 525, 531**

These documents reflect a rare instance of inconsistent rulings by the Special Master.  The redacted communications are protected.

**Log No. 528**

This is a lengthy email which, for the most part, simply quotes letters from Miller to Caterpillar, and from Caterpillar to Miller, which  obviously are not privileged simply because they are later forwarded to counsel.  However, the exchange between counsel and client on pages 5 and 6 may be redacted, as may the notes on pages 8 and 9.

**Log No. 544**

Caterpillar submits that these are notes reflecting the mental impressions of in-house counsel but they failed to show that before the Special Master and cannot now add to their showing on appeal. To allow it to do otherwise would impermissibly make this process not an appeal but an initial review.  The content of the document does not necessarily show it was authored by an attorney as the concerns reflected are as much commercial as they may be legal.

**Log No. 575**

This document is another example of Caterpillar simply failing to make more than a conclusory assertion of privilege before the Special Master. That is not enough to carry the burden.

**Log No. 630**

I agree with the Special Master that there is no legal advice here; the comments are not from

an attorney but from a production manager.

**Log No. 642**

This document is another example of Caterpillar simply failing to make more than a conclusory assertion – "Notes reflecting legal advice from CLSD re contract interpretation" to describe a 35-page document – of privilege before the Special Master. It provides a good example of the manner in which Caterpillar evidently proceeded before the Special Master. Only on the third page from the end – as Caterpillar asserts *for the first time on appeal* – is there any indication of input from attorneys, where a handwritten note states "the above was from a discussion with [in-house counsel] . . . ." But that note clearly pertains to items 1, 5, 14, and 18 on that page as they are "above" the note. If the entire 35-page document had come from counsel, the notation would have said the "preceding was from a discussion with in-house counsel." In short, the document is not privileged or alternatively the argument is waived by the manner in which Caterpillar proceeded before the Special Master.

**Log Nos. 643, 644, 649, 650, 651, 652**

Here again, Caterpillar's showing before the Special Master was inadequate and far too cryptic for the Special Master to decipher the context of the document. It is too late now to beef up or clarify the presentation. While review may be *de novo*, it is still a review based on what the Special Master did in light of the record before him.

**Log No. 661**

This is yet another cover email forwarding a letter from Miller and is clearly not privileged.

**Log No. 666**

The email from Mr. Tevebaugh is not protected. The email from Roberson to Tevebaugh is

not protected either. Standing alone, it does no more than say "I am comfortable with the part with respect to IP issues. And it goes on to state that he would like to give two other people a short time to make comments.

**Log No. 690**

I agree with the Special Master's finding and limited redaction.

**Log No. 715**

The document, itself, is essentially a set of numbers apparently pertaining to a UK patent. This document is not protected.

**Log Nos. 716, 717**

This again is another instance of a far too cursory showing by Caterpillar before the Special Master. The ruling stands.

**Log No. 724**

This involves the same problem as the preceding document. There is no indication of who performed the analysis. It might as easily have been from a commercial perspective as a legal one.

**Log Nos. 847, 852**

The document indicates nothing more than someone is working with "legal" or is forwarding something from in-house counsel. The mere *fact* that advice is sought is not privileged so long as the advice requested is not disclosed.

**Log Nos. 895, 897**

As with the above document, I agree with Special Master's ruling on the second redaction which simply says "[i]t probably will need to be run by Legal as well . . . ."

**Log No. 956**

The highlighted portion of the email appears to provide legal advice and is protected.

**Log No. 1043**

I agree with the Special Master.

**Log No. 1097**

I agree with the Special Master.

**Log Nos. 1104, 1105, 1218, 1219, 1220, 1221, 1142**

The redacted portion merely reports that in-house counsel is going to have outside counsel analyze Miller's patents and that it would take about 3 weeks. As the Special Master ruled, this is clearly not privileged.

**Log Nos. 1120, 1217**

This document merely informs that the project will be proceeding in the wake of patent review. It plainly is not privileged.

**Log Nos. 1155, 1272**

The highlighted section of the email is not privileged. It does not involve the request for or the giving of confidential legal advice but simply states the fact regarding the gather of documentation of original collaborative work with Miller on the Pin Grabber Plus and field test evaluation. This email is from a Caterpillar project manager to a Caterpillar planning and process engineering manager

**Log Nos. 1158, 1159, 1233, 1234, 1161, 1228, 1230, 1232**

These documents reflect an agenda for a meeting from in-house counsel with topics such as meeting with engineers about possible patent applications and patent clearance concerns. As with

too many of the document groups in this appeal, this is nothing more than an indication that legal counsel will be sought or given. As the Special Master found with regard to the April 5 email in Log No. 1159, attorney advice is revealed only there; the same email is part of Log No. 1233. Those portions of those two documents may be redacted.

## Log Nos. 1162, 163, 626

This group is not privileged as it consists of yet another cover email and notes about a pricing strategy.

## Log No. 1243

The highlighted portions are not protected by the privilege. They merely convey a settlement demand from a plaintiff and the conclusion that the demand is much too high.

## Log Nos. 1315, 1319

Caterpillar contends that this is one more rare instance of inconsistent rulings from the Special Master, because he found the attachment to this cover email privileged. But it is another in a long line of not-very-rare-at-all instances in which Caterpillar is operating under the misapprehension that the mere fact of seeking legal advice is privileged.

## Log No. 1491

This is yet another cover email indicating something is being forwarded and is clearly not privileged.

## Log No. 1504

This is another of the rare instances of an inconsistent ruling by the Special Master because he ruled an identical document was privileged and the author was identified in the privilege log. Caterpillar's objection is sustained.

**Log No. 1541**

The author of a document entitled Caterpillar Work Tools IP Matters Status Chart is identified as in-house counsel. This document is protected.

**Log Nos. 1547**

This document is nothing more than an update on the progress of patent applications – *i.e.*, whether they have been filed or are still being reviewed. It does not seek or request legal advice. It is simply a catalogue of dates that are, in whole or in part, publicly available.

**Log No. 1548**

This is a similar update with the addition that outside counsel should be told that patent writing needs to be finished by the end of the month.

**Log No. 1550**

This group of documents concerns what product information should be shared with Caterpillar's dealers. It is sent to a patent attorney, but no advice is revealed or discussed, only that he was working on it and would let them know.

**Log Nos. 1609, 1613, 1633**

As in other instances, Caterpillar's terse showing before the Special Master failed to provide sufficient context for these documents to carry Caterpillar's burden of proving the documents were privileged. It is an exchange between engineers regarding Caterpillar's coupler and patent filing concerns. That it happens to be cc'd to in-house counsel is meaningless because nothing in the documents suggest that they are designed to seek legal advice or that they reflect it.

**Log Nos. 1637,**

Log No. 1637 is yet another cover email indicating that an attachment is being forwarded

from an engineer to an engineering technical coordinator. Log Nos. 1638 and 1639 are a diagram and a parts list. There is no indication of any attorney involvement, advice, or provision of information to gain advice.

**Log No. 1640, 1642**

In the main, this email exchange covers football game attendance plans, but does include a brief description of a facet of Caterpillar's coupler from an engineer who asks if in-house counsel has any questions. But the only question he has is when it will be produced. As such, the communication does not appear to have been made to obtain advice and it certainly did not elicit any.

**Log No. 1672**

This is simply a cover email indicating an answer to amended complaint in the personal injury case. It is not privileged.

**Log No. 1674**

This appears to be the answer filed in the personal injury case. The Special Master ruled that it appeared to be a public document and, so, could not be considered privileged. Caterpillar now contends that it was merely a draft but before the Special Master it failed to explain this, providing instead the cursory description that it was a "[d]ocument providing information to in house counsel in connection with rendering legal advice . . . ." A party with the burden of establishing the applicability of privilege in particularized fashion relies on such conclusory and uninformative assertions at their peril, and we will not overrule the Special Master on the basis of information Caterpillar chose not to share with him.

**Log No. 1687**

Email from production manager to in house counsel giving the production manager's advice

that Caterpillar not "push back" when suppliers claim their contract is not valid, but push the idea of working together being beneficial to both sides.  This seems to be commercial advice to in house counsel rather than a request for legal advice from in house counsel.

**Log No. 1721**

This document is privileged.

**Log Nos. 1732, 1796, 1799**

Caterpillar argues that the Special Master's finding as to these documents must be overturned because they "prominently say[] 'Attorney-Client Privileged Material' . . . ."  But as we have seen, simply affixing the formulaic designation to any document is itself  insufficient to give rise to a privilege. Otherwise, a request to have dinner with a client would, by definition, be privileged.

**Log No. 1764**

This is yet another cover email indicating something will be forwarded to in house counsel. Yet again, this is clearly not privileged.

**Log No. 1794**

This document is merely a request for documents to be produced in discovery. It is not protected.

**Log No. 1798**

This is a meeting agenda which the Special Master determined was drafted by counsel concerning  personal injury cases.  The Special Master allowed limited redactions but some additional ones will be allowed.  Caterpillar may redact 3.A.c-g; 3.B.c-g; 3.C.b-c, e-f.

**Log No. 1800**

This is an attorney's search and list of all personal injury incidents with coupler.  It is not protected.

**Log No. 1801**

This document is composed of handwritten notes from a meeting among in house counsel, a safety consultant, and safety/compliance manager.  The notes were written by counsel and contain his mental impressions from the meeting regarding product liability issues.  The document is protected.

**Log No. 1802**

This document is an email exchange regarding the "Pin Grabber safety service letter."  Counsel suggests the rate is 10% and the product support manager replies that 1331 sets of material have been requested for the 13,000 couplers in circulation.  Although Caterpillar contends this is protected by the attorney-client privilege, it is not clear how the exchange reveal information given for the purpose of obtaining legal advice or the provision of legal advice.

**ENTERED**: _____
UNITED STATES MAGISTRATE JUDGE

**DATE**: 2/11/15