**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,**

**Plaintiffs,**

**v.**

**CATERPILLAR INC.,**

**Defendant.**

**CATERPILLAR INC.,**

**Counterclaim-Plaintiff,**

**v.**

**MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,**

**Counterclaim-Defendants.**

**Civil Action No. 10-cv-3770**

**Honorable Andrea R. Wood**

**FILED UNDER SEAL**

**MEMORANDUM IN SUPPORT OF MOTION OF CATERPILLAR INC. FOR SUMMARY JUDGMENT ON COUNT ONE (BREACH OF CONTRACT) OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I. LEGAL STANDARD ........ 2

II. BACKGROUND ........ 2

III. PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED ........ 10

A. Plaintiffs' Contract Claim as to Buckets Must Be Dismissed Because the Supply Agreement Does Not Cover Buckets, As Plaintiffs Have Admitted ........ 11

B. Plaintiffs' Contract Claim as to Couplers Must Be Dismissed Because Plaintiffs Cannot Prove All of The Required Elements ........ 12

1. Plaintiffs Cannot Prove An Obligation Existed After The Contract Was Terminated In 2010 ........ 12

2. Plaintiffs Cannot Show Caterpillar Breached Article 17 of the Supply Agreement (Element 3) ........ 12

3. Plaintiffs Have No Evidence of Resultant Harm (Element 4) ........ 15

IV. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....2

*BI3, Inc. v. Hamor*,
2011 WL 1231156 (N.D. Ill. Mar. 30, 2011)....13, 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....2

*Magellan Int'l Corp. v. Salzgitter Handel GmbH*,
76 F. Supp. 2d 919 (N.D. Ill. 1999) (Shadur, J.)....13

*Music Dealers, LLC v. Sierra Bravo Corp.*,
2012 U.S. Dist. LEXIS 132427 (N.D. Ill. Sept. 10, 2012) (Coleman, J.)....15

*Reger Dev., LLC v. Nat'l City Bank*,
592 F.3d 759 (7th Cir. 2010)....11

*W.W. Vincent & Co. v. First Colony Life Ins. Co.*,
814 N.E.2d 960 (Ill. App. Ct. 2004)....11

*XpertUniverse Inc. v. Cisco Sys., Inc.*,
No. 2014-1281, at 20 (Fed. Cir. Jan. 21, 2015)....14

**Rules**

Fed. R. Civ. P. 56....2

Local Rule 56.1....2

**Other Authorities**

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39(f) (1995)....13

Plaintiffs Miller UK Ltd. ("Miller UK") and Miller International Ltd. (collectively "Plaintiffs") assert four claims in this lawsuit – Breach of Contract, Trade Secret Misappropriation, Fraudulent Inducement, and Unjust Enrichment – involving two types of products: (1) pin grabber couplers for hydraulic excavators, including a coupler Caterpillar purchased from Plaintiffs under a 1999 contract ("Supply Agreement"), and (2) recessed pin buckets, which Caterpillar never purchased from Plaintiffs for commercial resale. This memorandum pertains to the Breach of Contract claim (Count One).[1]

This lawsuit arises from a broken supplier relationship. After nearly ten years of dealing with problematic and unresolved product quality, delivery, pricing, and other issues attributable to Miller UK, Caterpillar informed Miller UK in 2008 that it intended to begin selling a Caterpillar developed and manufactured line of pin grabber couplers. Plaintiffs retaliated by filing a complaint falsely claiming Caterpillar's couplers were copies of Plaintiffs' products and were created in a manner that violated the Supply Agreement and trade secret laws. Not only are the couplers not copies, but any surface similarities are disclosed in public or commercially available information, and, in some cases, information that is known to or belongs to Caterpillar as part of its collaboration with Miller UK to develop the couplers supplied to Caterpillar. As a further indicator of their ill will and bad faith, Plaintiffs alleged Caterpillar copied Plaintiffs' "Scoop" bucket, which Miller UK unsuccessfully pushed Caterpillar to buy or license over several years, even though the recessed pin feature was already well-known in the marketplace (and not particularly successful).

Rather than accept the fact that their biggest customer ultimately came to the conclusion that Plaintiffs were too difficult to deal with and their performance as a coupler supplier was

[1] On May 18, 2015, Caterpillar filed a companion motion for summary judgment on Plaintiffs' trade secret claims (Count Two). With only two exceptions (discussed *infra*), Plaintiffs refer interchangeably to information as being allegedly subject to contractual protection and also constituting alleged trade secrets.

unacceptable (and their bucket was unremarkable), Plaintiffs seek to blame Caterpillar for their failures. As shown herein, there is no genuine issue of material fact with regard to Plaintiffs' breach of contract claim, and Caterpillar is entitled to judgment as a matter of law.

## I. LEGAL STANDARD

Summary judgment must be entered against a party who fails to establish an element essential to its claim on which the party bears the burden of proof. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The non-movant must set out facts showing that there remains a genuine issue of material fact. *Id.* at 324. A dispute is genuine only if a reasonable jury, drawing justifiable inferences in favor of the non-movant, could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

## II. BACKGROUND



[2] A Local Rule 56.1 Statement of Undisputed Facts with citation to supporting materials is filed herewith. Citations to paragraph numbers in the Statement will be referenced herein as "SOUF-C __". For the convenience of the Court, the expert report of Frank Fronczak contains a timeline of significant events and a summary of acronyms/terms. (*See* SOUF-C, Exhibit 83.)

[3]





**Procedural History.** Plaintiffs filed a Complaint on June 17, 2010, vaguely alleging broad categories of confidential information and trade secrets. (Dkt. No. 1). After Caterpillar filed supplemental counterclaims (Dkt. No. 22), Plaintiffs filed an amended complaint on March

16, 2011 (Dkt. No. 56) with an added supplemental claim.[5] Caterpillar responded on May 10, 2011 (Dkt. No. 73). Plaintiffs filed their Second Amended Complaint ("SAC") on July 31, 2014 (Dkt. No. 564; *see* SOUF-C 34), again vaguely alleging broad categories of confidential information and trade secrets, and Caterpillar responded on August 14, 2014 (Dkt. No. 569).



On July 9, 2012, Magistrate Judge Cole ordered Plaintiffs to identify the information with more particularity:

> Counsel for the plaintiffs represented that the plaintiffs' theory of the case is that the engineering drawings, stress test and other materials that have been supplied to defendant and which it is claimed represent the plaintiffs' trade secrets were copied and utilized by the defendant in manufacturing its coupler which is the subject of this

[5] The Supplemental Complaint included a count for False and Deceptive Advertising under the Lanham Act. That count was dismissed on April 26, 2011. (Dkt. No. 72.)

> litigation. Miller will file by 7/23/2012, a further supplement to the first set of interrogatories that will encompass questions 1 through 5 (as a group) and that shall state with reasonable particularity the representations made in court that is Miller's theory of the case that the trade secrets that have been thus far identified by the defendant, including engineering drawings and stress tests, were utilized by Caterpillar in manufacturing its coupler and that variations were added. Miller shall identify those variations. (SOUF-C 40.)

The subsequent Order that Plaintiffs produce a 30(b)(6) witness on their trade secrets stated as follows:

> The denial of the plaintiff's motion for greater specificity in the responses to interrogatories regarding the identity of the trade secret is based on the plaintiffs' unqualified avowal that everything provided to the defendant during the course of the plaintiff's relationship with Caterpillar constitutes a trade secret…The plaintiffs' claim that everything that was provided to Caterpillar constitutes a trade secret and that Caterpillar simply copied the Miller [product] puts the defendant on sufficient notice of the plaintiffs' theory of the case. Of course, the plaintiff will be required to prove this through evidence and expert testimony. (SOUF-C 41.)

After Plaintiffs stated that all information provided by Miller to Caterpillar comprises the trade secrets at issue, Magistrate Judge Cole ordered Plaintiffs to explain what is encompassed by "information": "Miller must designate with reasonable specificity precisely what "information" it has in mind. Presumably, the word 'information' was proposed because it signifies something other than documents. Caterpillar is entitled to know what Miller has in mind." (SOUF-C 42.)

The subsequent Court-ordered deposition featured an unprepared (or evasive) witness who provided no information:





(SOUF-C 43.) Because Plaintiffs' responses were still inadequate two years later, on November 6, 2014, the Court granted Caterpillar's motion to compel responses to its Third Set of Interrogatories, which had asked for more specific information regarding Caterpillar's alleged use of the claimed trade secrets (SOUF-C 44-45):

> It will not do for Miller, at this late date, having represented that discovery has shown its claims to be true, to now object on grounds of undue burden to providing this information to Caterpillar. And, given the lateness of the discovery process, Miller should provide this information within the next 14 days. After all, Miller says it has now "confirmed" that Caterpillar is the culprit it has always contended it was. It is troubling that, at least according to Caterpillar, there has not been any supplementation of Miller's prior answers to interrogatories designed to discover what Miller contends are its trade secrets alleged in this case.

As a result of this extensive motion practice, Plaintiffs have identified *some* of their alleged confidential information and trade secrets, at least to some degree, while other information remains undisclosed.

Although the sheer volume of information types referenced by Plaintiffs necessitates addressing them collectively, they may be organized into three groups for purposes of assessment (*see* SOUF-C 46-75 for full description and citation). *First,* Plaintiffs identified twenty-three (23) items of confidential information with some modicum of specificity (identified as Item Nos. 1-23 in the chart below, and annotated in more detail in SOUF-C 46-71, and discussed in more detail in Section III.B.2, *infra*). However, these items are not confidential information for the five basic reasons stated below:

- Many Items are revealed in ***patents*** that existed before Caterpillar began development of its Center-Lock Coupler in 2005 (*see* SOUF-C 49-60, 63, 65, 67-69, discussing Item Nos. 1-12, 15, 17, 19-21);
- Many Items are readily ascertainable from products existing ***on the market*** before Caterpillar began development of its Center-Lock Coupler (*see* SOUF-C 49-53, 55-61, 63-65, 67-69, discussing Item Nos. 1-5, 7-13, 15-17, 19-21);
- Many Items were ***widely known*** in the trade and/or ***publicized*** by Plaintiffs before Caterpillar began development of its Center-Lock Coupler (*see* SOUF-C 49, 56-57, 60-70, discussing Item Nos. 1, 8-9, 12-22);



*Second*, as seen in the chart below, Plaintiffs never identified five items (Item Nos. 24-28) with enough specificity to allow Caterpillar to rebut them. (SOUF-C 73.) And, *third*, as also seen in the chart below, Plaintiffs are no longer pursuing four items (Item Nos. 29-32). (SOUF-C 74.) All alleged items, Nos. 1-32, are summarized in the following chart (SOUF-C 75):

---

6



For Item Nos. 1-18 and 20-23, Plaintiffs have no evidence of use or misappropriation by Caterpillar. (*See* SOUF-C 49-66, 68-71.) Specifically, Plaintiffs have no evidence that Caterpillar used in its Center-Lock Coupler the individual design features or other information related to the PGP Coupler identified in Item Nos. 1-18, 22-23, or that Caterpillar used in its recessed pin

7

bucket the individual design features or other information related to Item Nos. 20-21. (*Id.*) Plaintiffs' insistence that Caterpillar's Center-Lock Coupler "looks similar" to the Miller-supplied PGP Coupler (*i.e.*, it has a generally similar profile) does not provide proof of "use." (SOUF-C 72.)





Under Illinois law, which governs Plaintiffs' contract claim,[8] the elements for breach of contract are: (1) the existence of a valid and enforceable contract; (2) substantial performance by plaintiff; (3) breach by defendant; and (4) resultant damages. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (*quoting W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). As shown below, there is no genuine issue of material fact as to: elements (1) through (4) with respect to ***buckets*** because the Supply Agreement does not cover buckets; and elements (3) and (4) with respect to ***couplers*** because the contract was terminated in 2010, and any alleged breach arising before 2010 is not supported by proof of breach or resultant harm.[9]



### B. Plaintiffs' Contract Claim as to *Couplers* Must Be Dismissed Because Plaintiffs Cannot Prove All of The Required Elements

With respect to the Center-Lock Coupler, Plaintiffs cannot show: ***(1)*** that a contractual obligation existed to be breached after the Supply Agreement terminated in 2010; ***(2)*** that Caterpillar breached Article 17 of the Supply Agreement prior to 2010; and ***(3)*** that there is resultant harm from the alleged breach.

[redacted]

#### 2. Plaintiffs Cannot Show Caterpillar Breached Article 17 of the Supply Agreement (Element 3)

Plaintiffs cannot show a breach of Article 17 of the Supply Agreement for three reasons. *First*, the information alleged by Plaintiffs to be confidential Information does not qualify as Proprietary Information under Article 17 of the Supply Agreement because the items are publically available in patents (Item Nos. 1-12, 15, 17, 19-21), are readily ascertainable from products on the market (Item Nos. 1-5, 7-13, 15-17, 19-21), are widely known and/or publicized in the industry (Item Nos. 1, 8-9, 12-22), were given to Caterpillar by third parties (Item Nos. 1-

---

10 [redacted]

5, 8, 15, 18-19), and/or were provided to Caterpillar prior to April 1999 (Item Nos. 1-5, 8-10, 15, 18-19). (SOUF-C 49-70.)

[redacted] Thus, the Supply Agreement does not apply to, and Plaintiffs cannot attempt to reclaim confidentiality protection for, information that was known generally in the industry or disclosed to Caterpillar through non-confidential sources. *See, e.g.*, RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39(f) (1995) ("information that is disclosed in a patent or contained in published materials reasonably accessible to competitors does not qualify for protection"); *BI3, Inc. v. Hamor*, 2011 WL 1231156, at *13-14 (N.D. Ill. Mar. 30, 2011) (Kim, M.J.) (party to an agreement with a confidentiality provision cannot claim breach based upon disclosure of information of a company who is not party to, or the subject of, the agreement). Plaintiffs cannot legitimately contend that observable information about the features of a product that they released into the marketplace and made commercially available for many years ("available to the public or later becomes available to the public") is confidential, and therefore, protectable as "Proprietary Information" under Article 17. *Cf. Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999) (Shadur, J.) (if information "were to be apparent or readily derivable from the product said to embody the secret (the steel itself), it would not be a 'secret' at all"). [redacted]



[redacted]

[redacted] Without proof of use, there is no evidence of breach. *See, e.g.*, *XpertUniverse Inc. v. Cisco Sys., Inc.*, No. 2014-1281, at 20 (Fed. Cir. Jan. 21, 2015) (summary judgment proper when plaintiff fails to sufficiently identify how the information was used in breach of the parties' agreement).

[redacted]

---

[redacted].

not protected by Article 17 of the contract, because the physical PGP product has long been on the market. (*Id.*)

*Third,* it is axiomatic that Plaintiffs cannot prove breach when they cannot even identify the specific information giving rise to the breach, as is the case for Item Nos. 24-28. *See BI3*, 2011 WL 1231156, at *13-14 (granting summary judgment when counter-plaintiffs' identification of information was too vague to demonstrate that the confidentiality provision of the contract applied to it). Similarly, because Plaintiffs have withdrawn Nos. 29-32, they cannot continue to pursue a breach of contract claim based on them.

Thus, Plaintiffs' contract claim regarding couplers fails regarding Item Nos. 1-32 because there is no genuine issue as to whether Caterpillar breached the Supply Agreement.

3. **Plaintiffs Have No Evidence of Resultant Injury (Element 4)**

A showing of "resultant injury" is an element of a breach of contract claim under Illinois law, *Music Dealers, LLC v. Sierra Bravo Corp.*, 2012 U.S. Dist. LEXIS 132427, at *9 (N.D. Ill. Sept. 10, 2012) (Coleman, J.); yet, Plaintiffs have never set forth damages for their contract claim. [redacted]

Because there is no genuine issue of material fact regarding essential elements on which Plaintiffs bear the burden of evidence at trial (elements 1-4, as to Buckets, and elements 3 and 4, as to Couplers), Count One for breach of contract should be dismissed.

## IV. CONCLUSION

For all of the foregoing reasons, Caterpillar respectfully requests the Court to grant its motion for summary judgment on Count One of Plaintiffs' Second Amended Complaint.

Date: May 18, 2015

Respectfully submitted,

*/s/* Gregory L. Baker

Gregory L. Baker (NDIL 288357)
Terry L. Sullivan (admitted *pro hac vice*)
Carey S. Busen (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036-5304
(202) 861-1500 phone
(202) 861-1783 facsimile
gbaker@bakerlaw.com
tsullivan@bakerlaw.com
cbusen@bakerlaw.com

*Attorneys for Defendant and Counterclaim-Plaintiff Caterpillar Inc.*

John M. Touhy (NDIL 3128400)
Edward H. Williams (NDIL 6217053)
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, IL 60606-1901
(312) 416-6200 phone
(312) 416-6201 facsimile
jtouhy@ bakerlaw.com
ehwilliams@bakerlaw.com

**CERTIFICATE OF SERVICE**

I, Tim Petre, hereby certify that on May 18, 2015, a true and correct, unredacted copy of the foregoing ***Memorandum in Support of Motion of Caterpillar Inc. for Summary Judgment on Count One (Breach of Contract) of Plaintiffs' Second Amended Complaint*** was filed under seal with the Clerk of the Court and served via electronic mail upon the following counsel of record:

Reed S. Oslan
roslan@kirkland.com
Justin A. Barker
jbarker@kirkland.com
Inbal Hasbani
ihasbani@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000
Fax: 312-862-2200

/s/ Timothy P. Petre
Timothy P. Petre