# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MILLER UK LTD. and MILLER INTERNATIONAL LTD., ) ) ) | |
| Plaintiffs, ) ) | No. 10-cv-03770 |
| v. ) ) | Judge Andrea R. Wood |
| CATERPILLAR, INC., ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiffs Miller UK Ltd. and Miller International Ltd. (together, "Miller") have sued

Defendant Caterpillar, Inc. ("Caterpillar") for breach of contract and misappropriation of trade

secrets based on the alleged improper use of certain proprietary information that Miller provided

Caterpillar pursuant to an agreement to supply mechanical couplers for earthmoving equipment.

Caterpillar has denied those claims and asserted several counterclaims of its own under state and

federal law. In anticipation of the jury trial, the parties filed a total of 31 motions *in limine*. The

Court issued a minute order ruling on the motions on October 23, 2015. This Memorandum

Opinion provides further explanation regarding the Court's October 23, 2015 rulings.

## BACKGROUND

On March 31, 1999, Miller and Caterpillar entered into a written agreement pursuant to

which Miller would supply couplers to Caterpillar ("Supply Agreement"). In 2008, while the

Supply Agreement was still in effect, Caterpillar developed and introduced to the market the

Center-Pin Lock Grabber Coupler ("Center-Lock Coupler"), a rival to Miller's Pin Grabber Plus

("PGP") Coupler. Miller claims that Caterpillar designed the Center-Lock Coupler using Miller's

trade secrets, which Caterpillar misappropriated and misused in contravention of the Supply

Agreement. In January 2011, after Caterpillar's introduction of the Center-Pin Lock Grabber Coupler and the filing of this lawsuit, Miller distributed a package of materials to other companies in the industry, including Caterpillar dealers, in which Miller made what Caterpillar characterizes as false, misleading, and disparaging statements about Caterpillar's products.

In its Second Amended Complaint, Miller asserts claims against Caterpillar for breach of contract under Illinois common law and misappropriation of trade secrets in violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.* Caterpillar, in turn, asserts five counterclaims based on Miller's conduct in distributing the January 2011 package: claims for commercial disparagement and defamation under Illinois common law; a claim for commercial disparagement under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2; a claim for consumer fraud under the Illinois Consumer Fraud Act, 815 ILCS 505/2; and a claim for false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125.[1]

In September 2015, the parties filed motions *in limine* regarding evidence and argument to be presented at trial.[2] This Court has the inherent authority to manage trials by excluding evidence prior to its attempted introduction. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Such authority enables a trial court to "ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). But as a general matter, a court should exercise that authority only if the evidence at issue "is clearly inadmissible for any purpose." *Noble v. Sheahan*, 116 F. Supp. 3d 966, 969

---

[1] Miller previously asserted claims against Caterpillar for fraudulent inducement and unjust enrichment under Illinois common law and for false and deceptive advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). Caterpillar also had counterclaims for breach of contract and copyright infringement. None of these claims survived past the summary judgment stage.

[2] Miller filed its motions in one "omnibus" motion document. (*See* Dkt. No. 807.) Caterpillar filed each of its motions separately.

(N.D. Ill. 2000). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial, so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Similarly, a trial court cannot evaluate some proffered evidence accurately or sufficiently during pretrial proceedings. When the Court is unable to determine whether evidence is clearly inadmissible, "it is necessary to defer ruling until during trial, when the trial judge can better estimate its impact on the jury." *Jonasson,* 115 F.3d at 440.[3]

## DISCUSSION

## I.     Caterpillar's Motions To Preclude Unduly Prejudicial Evidence

### A.     *Caterpillar's Motion To Preclude Evidence Or Argument Regarding Aspirational Values (Dkt. No. 781)*

Prior to and unrelated to the instant dispute, Caterpillar promulgated an internal code of conduct for its employees. Caterpillar called this code its "Aspirational Values." It now seeks to preclude evidence or argument regarding those Aspirational Values from being presented at trial. Miller contends that violations of the Aspirational Values by Caterpillar employees are relevant to demonstrate willfulness, a necessary element of Miller's claims for exemplary damages against Caterpillar.[4]

But while it is generally true that evidence of willfulness is relevant to issues in this case, the proffered evidence regarding Aspirational Values has minimal probative value for that purpose and raises a substantial risk of undue prejudice. Caterpillar employees may have acted

---

[3] For ease of reference, this opinion groups the parties' motions according to common subject matter rather than tracking the order in which the parties filed them.

[4] For example, the ITSA "authorizes exemplary damages of up to twice the amount of compensatory damages if there was a 'willful and malicious misappropriation.'" *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 730 (7th Cir. 2003) (citing 765 ILCS 1076/4(b)). Illinois courts have held that "the question of whether a defendant's conduct was sufficiently willful or wanton to justify the imposition of punitive damages is for the jury to decide." *Medow v. Flavin*, 782 N.E.2d 733, 746 (Ill. App. Ct. 2002).

willfully regardless of whether or not they complied with the Aspirational Values—as there is no indication that Caterpillar's internal code of conduct tracked or incorporated the requirements of Illinois law that Caterpillar is alleged to have violated. Thus, allowing evidence regarding an internal code of conduct may confuse the jury about the legal standard against which it must evaluate Caterpillar's behavior. The Eighth Circuit reached a similar conclusion in *Chism v. CNH America LLC*, 638 F.3d 637 (8th Cir. 2011). The plaintiff in *Chism*, against whom a jury had rendered a verdict in his workplace-tort lawsuit, appealed on the ground, among others, that the district court erred in excluding witness testimony regarding an engineering code of ethics. *Id.* at 643. The Eighth Circuit agreed with the district court that "testimony regarding the Code was irrelevant because there was no legal force or effect to those rules." *Id.*

In addition, the introduction of such evidence and argument in this case would redirect valuable court time and juror attention away from the elements of the claims and counterclaims actually alleged by the parties and toward testimony about tangential facts, such as how widely Caterpillar disseminated its Aspirational Values and whether the Aspirational Values would cover conduct like that in which Caterpillar employees allegedly engaged. In short, the probative value of the evidence is outweighed by its potential for undue prejudice. Accordingly, the evidence is properly excluded and Caterpillar's motion is granted.

**B.** **Caterpillar's Motion Regarding Miller's Now Abandoned Recessed-Pin Bucket Claims (Dkt. No. 784)**

Although Miller initially claimed in this lawsuit that Caterpillar breached the Supply Agreement by using Miller's recessed-pin technology, it has abandoned that claim. Accordingly, Caterpillar asks this Court to preclude Miller from presenting evidence of this previously-alleged but no longer asserted misuse. In response, Miller claims that its purpose in introducing such evidence would be to show that "Caterpillar took detailed measurements of Miller's prototypes

and then covered its tracks so that Miller would never know that Caterpillar had misused Miller's proprietary information." (Dkt. No. 817 at 1.) This conduct, Miller says, was "part of Caterpillar's ongoing effort to extract as much valuable information from Miller as possible under the pretext of collaboration while secretly planning to compete." (*Id.*) Miller hopes that by showing that effort it will be able to demonstrate Caterpillar's willfulness, which would entitle Miller to exemplary damages.

However Miller may spin its claimed purpose, it is clear that Miller actually intends to introduce evidence of the alleged misuse of its recessed-pin technology to demonstrate Caterpillar's propensity to misappropriate trade secrets. The Federal Rules of Evidence forbid the use of other-act evidence for the purpose of demonstrating propensity. Fed. R. Evid. 404(b). While the Court may admit other-act evidence for the purpose of proving, for example, motive or intent, the proponent of the evidence must first specify the legitimate purpose for it. *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014). To demonstrate the relevance of other-act evidence to an admissible purpose, the proponent must "establish [it] through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion" at issue in the case. *Id.* at 860. Miller has not done so here.

Even assuming that Miller could show that Caterpillar's misuse of the recessed-pin technology is probative of Caterpillar's willfulness, any probative value would be substantially outweighed by the risk of undue prejudice and confusion resulting from the presentation of complicated, technical evidence regarding an abandoned claim. The evidence would be highly prejudicial because it would encourage an impermissible inference, even if it logically did not require that inference. In the Court's view, no jury instruction could limit sufficiently the

prejudicial effect of that impermissible inference. For these reasons, the Court grants

Caterpillar's motion to exclude evidence or argument about Miller's recessed-pin bucket claims.

>    **C.**    ***Caterpillar's Motion To Exclude Evidence Regarding Caterpillar's Supposed Failure To Tell Plaintiffs About The Center-Lock Coupler Prior To June 2008 (Dkt. No. 782)***

Miller alleges that, while the Supply Agreement was still in effect, its representatives

questioned Caterpillar employees repeatedly about Caterpillar's plans for couplers, asking

whether Caterpillar would continue to purchase Miller's coupler or design its own. Miller claims

that Caterpillar's employees answered those questions dishonestly. Caterpillar moves to exclude

evidence of the questions and purportedly dishonest answers as inadmissible other-act evidence.

But Caterpillar's categorization of this evidence is too narrow and ignores the relevance of

Caterpillar's efforts to cover up its misappropriation.

A reasonable jury could find that Caterpillar's misleading statements to Miller regarding

its production of the Center-Lock Coupler shows that Caterpillar's misappropriation of trade

secrets to develop that product was intentional and therefore potentially willful. So the

statements that Caterpillar seeks to exclude are not evidence of other acts; rather, they are

evidence of Caterpillar's willfulness in committing the very acts that are at issue in this case. The

evidence may not be offered for the forbidden purpose of demonstrating Caterpillar's propensity

to act in a certain manner. But it may be offered to support Miller's claim for exemplary

damages. Unlike evidence regarding the abandoned recessed-pin bucket claims, evidence that

Caterpillar lied about its plans to develop its own coupler relates directly to the conduct

remaining at issue in this case. The probative value of that evidence outweighs the potential for

undue prejudice. Thus, the Court denies Caterpillar's motion to preclude evidence regarding

Caterpillar's supposed failure to tell Miller about the Center-Lock Coupler.

**D.** ***Caterpillar's Motion To Preclude Miller From Calling Caterpillar In-House Counsel Keith Roberson As A Witness At Trial (Dkt. No. 779)***

On October 16, 2009, Keith Miller, the chairman of Miller UK, wrote a letter to Jim Tevebaugh, General Manager of Caterpillar's Global Work Tools & Services Division. In that letter, Keith Miller alleged that Caterpillar had violated Miller's intellectual property rights in designing the recessed-pin bucket and the Center-Lock Coupler, and further that Caterpillar's Center-Lock Coupler was unsafe and violated European safety regulations. In response, Keith Roberson and Sean Urvan, two attorneys in Caterpillar's Legal Services Division, wrote a letter on November 11, 2009 disputing the conclusions in Keith Miller's letter. (*See* Letter from Roberson and Urvan to K. Miller, Ex. C., Pls.' Resp. to Def.'s Mot. To Preclude Pls. from Calling Def. In-House Counsel Keith Roberson as a Witness at Tr., Dkt. No. 821-3.)

During discovery, Miller sought to depose Roberson about his basis for disputing Keith Miller's accusations. Caterpillar objected, arguing that any work or investigation by Roberson regarding the matter was privileged. On April 1, 2014, Magistrate Judge Cole heard argument on the dispute and sustained Caterpillar's objection, but also invited Miller to depose Caterpillar as an organization pursuant to Federal Rule of Civil Procedure 30(b)(6) to obtain the information. (Decl. of Gregory L. Baker, Ex. B., Defs.' Mot. To Preclude Pls. from Calling Def. In-House Counsel Keith Roberson as a Witness at Tr., Dkt. No. 779-2 ¶¶ 3-8 at 1-2.) Miller elected not to do so. *Id.*

Caterpillar now seeks to preclude Miller from calling Roberson as a witness at trial. Caterpillar argues that Miller will question Roberson only about privileged, attorney-client communications pertaining to the factual investigation that led to his letter, and thus Roberson will be required to answer every question with a privilege assertion. Such repeated privilege assertions, contends Caterpillar, would have no probative value but would create a substantial

risk of undue prejudice because "jurors will be inclined to believe that the refusal to answer questions . . . indicat[es] something untoward." (*Id.*) For this reason, Caterpillar asks the Court to preclude Miller from calling Roberson pursuant to Federal Rule of Evidence 403.

Indeed, it appears likely that the attorney-client privilege protects much of the information about which Miller would like to question Roberson. But that does not mean that Miller should be prevented from calling Roberson to testify altogether. There are clearly some matters about which Miller might ask that would not implicate privileged information. Although Miller sought to depose Roberson only about privileged information (and therefore was denied discovery of that information), this Court can envision testimony from Roberson that would be relevant and not privileged, and Miller will be permitted to call Roberson to testify regarding such non-privileged information. The Court will not, however, allow Miller intentionally to invade the privilege or to force Roberson to invoke the privilege in order to create a spectacle at trial. Thus, the Court denies Caterpillar's motion to preclude Miller from calling Roberson as a witness but advises the parties that efforts to pursue lines of questioning that will evoke nothing but privilege assertions will be quickly cut short.

## II. Miller's Motions On The Nature Of The Trade Secrets

### A. *Miller's Motion To Preclude Caterpillar's Mischaracterization Of Miller's Trade Secrets (Dkt. No. 807 § II)*

Miller also seeks to preclude Caterpillar from "mischaracterize[ing] Miller's trade secrets as the individual components of its PGP coupler," *i.e.*, the coupler's "discrete components," rather than as "Miller's engineering models, engineering drawings, and testing information." (Dkt. No. 807 at 3.)

The purpose of pretrial evidentiary motions should be to seek the Court's guidance on the admissibility of evidence that is likely to be offered at trial for a specific purpose and with

foundation already known to the parties. The Court's rulings in such circumstances conserves judicial resources and streamlines the trial process—a particularly admirable goal for a complex case like this one. Motions *in limine* are not a means for a party to seek the Court's endorsement of its own view of the evidence over its opponent's view.

In this case, the parties disagree about whether Miller's purported trade secrets should be considered as "the individual components" of the PGP Coupler, as Caterpillar claims, or as the "engineering models, engineering drawings, and testing information for its PGP Coupler, which . . . evince a unique combination of information, design, and components that affords it a competitive advantage," as Miller proposes. (Dkt. No. 807 at 3.) Neither party argues that the other's description of the trade secrets is wrong as a matter of law. Rather, Miller complains only that Caterpillar will "mischaracterize" Miller's position. But whether Caterpillar will in fact solicit trial testimony that "mischaracterizes" Miller's trade secrets remains to be seen. Similarly, it remains to be seen whether Caterpillar will solicit testimony on the nature of Miller's trade secrets that is inadmissible under Rule 403. This is not a matter upon which the Court can rule prior to hearing the anticipated mischaracterization. Accordingly, the Court reserves ruling on this issue until trial, when Caterpillar's claims can be evaluated in the context of the testimony and other evidence presented.

**B.**    ***Miller's Motion To Exclude Argument That The Fact That Miller Did Not Patent The PGP Frame Means That The Frame Designs Do Not Embody Any Protectable Trade Secrets (Dkt. No. 807 § VIII)***

Miller also asks the Court to preclude "evidence or argument suggesting that because Miller did not patent the [PGP Coupler] frame, the frame is not a protectable trade secret." (Dkt. No. 807 at 14.) Miller's proposition is legally unquestionable, as Caterpillar acknowledges. (*See* Dkt. No. 831 at 17.) So the Court grants Miller's motion. This ruling should not be understood to

prevent Caterpillar from introducing the fact that Miller did or did not patent certain intellectual property for the purpose of showing whether Miller actually took steps to keep its coupler design secret. Caterpillar will be permitted to argue "that to the extent Miller's alleged trade secrets are disclosed in patents, '[p]ublication in a patent destroys the trade secret.'" (*Id.* (quoting *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 706 (7th Cir. 2006).)

### C. *Miller's Motion Regarding Valuations Of Its Intellectual Property (Dkt. No. 807 § XIV)*

Miller has filed a motion to exclude evidence or argument regarding valuations of its intellectual property. In particular, Miller seeks to prevent the introduction of valuations of Miller's intellectual property rendered by Valuation Consulting Limited in 2003, 2005, and 2006, as well as one prepared by BNP Paribas in 2011. Miller suggests two reasons for preclusion: (1) the valuations do not include Miller's trade secrets and therefore are irrelevant, and (2) the valuations are "based on . . . estimates of future discounted cash flow," whereas Miller claims only "damages for lost profits[,] unjust enrichment . . . . [and] 'the direct and natural consequence[s] of [Miller's] acting on the faith of [Caterpillar's] representations.'" (Dkt. No. 807 at 25 (quoting *Triumph Packaging Grp. v. Ward*, 877 F. Supp. 2d 629, 649 (N.D. Ill. 2012).)

But contrary to Miller's assertions, the valuations are neither inapposite nor irrelevant. From valuations that "purport to value [Miller's] intellectual property, but never mention trade secrets," a jury might infer "that there were none, or that they had no economic value." (Dkt. No. 831 at 25.) The Court agrees with Caterpillar that because a valuation does not indicate that it deliberately excluded trade secrets,

> the jury is entitled to weigh the conflicting views of Caterpillar and Miller and determine for itself whether: 1) Miller did not have any trade secrets because it made no effort to value the alleged trade

secrets while planning to monetize its intellectual property; 2) the
trade secret is included in the bundle but forms only a portion of
the value of the overall bundle; or 3) Miller asked BNP Paribas to
exclude trade secrets from its valuation efforts.

(*Id.* at 25-26 n.14.) Meanwhile, Miller can introduce evidence suggesting that its trade secrets *did*

have economic value. "Those defending a claim look to defense-minded experts for their

salvation. Those who press for recognition of a claim look to other experts. The problem of the

law is to give advantage to neither, but to let trial by ordeal of cross-examination distill the

truth." *Richardson v. Perales*, 402 U.S. 389, 414 (1971) (Douglas, J., dissenting). This motion is

denied.

### III.    Miller's Motions Regarding Evidence Of Miller's Business Relationships

#### A.    *Miller's Motions To Preclude Mention, Evidence, And Certain Argument Regarding JB Sales (Dkt. No. 807 § V), Okada (Dkt. No. 807 § IX), RCID (Dkt. No. 807 § VII), And Certain Collaboration With Caterpillar (Dkt. No. 807 § VI)*

In four of its motions, Miller seeks to preclude Caterpillar from introducing evidence and

argument regarding Miller's relationships with different business partners, including JB Sales,

Okada, RCID, and Caterpillar itself. Caterpillar intends to introduce evidence of Miller's

relationships with these other firms for the purpose of demonstrating that Miller failed to protect

the confidentiality of the trade secrets at issue. Such evidence would tend to undermine both of

Miller's surviving claims, each of which depends on the confidentiality of its trade secrets. Thus,

the Court denies Miller's motion to preclude evidence regarding Miller's relationships with JB

Sales, Okada, RCID, and, as discussed in this motion, Caterpillar to the following extent: The

Court will allow Caterpillar to introduce evidence, if any, that Miller shared or provided without

protection the trade secrets at issue to JB Sales, Okada, RCID, or Caterpillar. As should go

without saying, this ruling does not mean that the Court will not limit the admissibility of such

evidence if offered for a different, impermissible purpose. For instance, evidence introduced to

show that a third-party breached the confidentiality clause of a contract not at issue in this case would be irrelevant and pose the risk of this case devolving into a mini-trial of a firm not party to and unrepresented in these proceedings.

**B.**   ***Miller's Motion To Preclude Evidence That Sharing Information Prior To The Execution Of The 1999 Supply Agreement Impacted The Confidentiality Of Miller's Trade Secrets (Dkt. No. 807 § X)***

Although Caterpillar filed a counterclaim for breach of contract regarding a September 1998 agreement between it and Miller, this Court granted summary judgment in Miller's favor on that claim. Thus, no claim for breach of the 1998 agreement remains in this case. Caterpillar nonetheless acknowledges that it intends to present evidence that Miller provided certain proprietary information to it pursuant to the 1998 agreement—an action Caterpillar contends negated the confidentiality of such information necessary for protection as trade secrets.

This Court agrees that evidence showing Miller shared its purported trade secrets with Caterpillar during a time period when the protections of the Supply Agreement were not yet in place is relevant to a determination of whether those trade secrets were, in fact, secret. Accordingly, Caterpillar will be permitted to introduce evidence of pre-Supply Agreement disclosures of Miller intellectual property for that purpose. Caterpillar will not, however, be allowed to use the evidence for the purpose of arguing that Miller breached the 1998 agreement (or any other prior contract or arrangement between the parties) or suggesting to the jury that the rights and obligations of the parties under any such contract or arrangement are at issue in this case. The Court will craft an appropriate jury instruction setting out the limits of the jury's consideration of the various contracts and agreements, as may be necessary to avoid any confusion on this issue. With this limitation, Miller's motion to preclude evidence that sharing intellectual property prior to 1999 impacted its confidentiality is denied.

**C.** ***Miller's Motion To Preclude Evidence Or Argument Of The September 18, 1998 Proprietary Agreement Between the Parties (Dkt. No. 807 § XI)***

Consistent with the above ruling, the Court further finds that evidence regarding the existence of the 1998 agreement—so long as it is not used to suggest that the 1998 agreement survived the execution of the Supply Agreement or that the jury should be considering any claims related to the rights and obligations of the parties under that earlier agreement—is probative to explain why Miller was providing Caterpillar with information during the pre-Supply Agreement time period and thus would likely serve to reduce, not increase, jury confusion. For that reason, the Court denies Miller's motion to preclude all evidence or argument regarding the1998 agreement. Instead, Caterpillar will be allowed to introduce evidence regarding the 1998 agreement for the limited purpose of showing that Miller and Caterpillar had a relationship prior to the Supply Agreement, to explain why Miller might have provided proprietary information to Caterpillar during that time period, and, if Miller did so, to argue that the information was provided to Caterpillar without confidentiality protections.

**IV.** **Evidence Regarding Miller's Performance Under The Supply Agreement**

**A.** ***Miller's Motion To Preclude Evidence Of Miller's Performance Under The 1999 Supply Agreement (Dkt. No. 807 § III)***

Miller asks the Court to preclude Caterpillar from presenting evidence at trial that "Miller did not substantially perform under the 1999 Supply Agreement, and that Miller, therefore, may not advance a claim based on Caterpillar's [purported] theft of their trade secrets." (Dkt. No. 807 at 4.) As explained in the Court's Memorandum Opinion and Order addressing the parties' cross-motions for summary judgment (Dkt. No. 871), the Supply Agreement is valid, binding, and enforceable against Caterpillar even if Miller failed to perform its duties under it. Caterpillar has not shown, and cannot show, that Miller's failure to perform would excuse Caterpillar's own

breach of contract or misappropriation of trade secrets. If Miller breached its contract with Caterpillar, the law provides Caterpillar remedies other than non-enforcement of Miller's rights. In addition, Caterpillar has no counterclaims for breach of the Supply Agreement. Evidence that Miller breached the Supply Agreement by failing to perform adequately therefore has little probative value and considerable potential for undue prejudice. Thus, the Court grants Miller's motion to preclude evidence of Miller's performance under the Supply Agreement. Consistent with this Court's trial rulings, however, this conclusion does not prohibit Caterpillar from introducing evidence that it informed Miller about issues with the parties' business relationship for the purpose of rebutting Miller's claims that it was blindsided by Caterpillar's decision to pursue other coupler options.

**B.      Caterpillar's Motion To Exclude Extrinsic Evidence To Modify Or Amend The Supply Agreement (Dkt. No. 786)**

Preclusion of evidence of Miller's performance under the Supply Agreement should alleviate any need for Miller to present evidence, extrinsic or otherwise, on the validity of that contract. So the Court grants Caterpillar's motion to exclude extrinsic evidence to modify or amend the Supply Agreement.

**C.      Miller's Motion For Judicial Notice That The 1999 Supply Agreement Between The Parties Was A Valid And Enforceable Contract (Dkt. No. 807 § XII)**

Miller has filed a motion *in limine* asking the Court to take judicial notice of the fact that the Supply Agreement was a valid and enforceable contract.

Federal Rule of Evidence 201 allows the Court to take judicial notice of a fact that is not subject to reasonable dispute because "(1) [it] is generally known within the trial court's territorial jurisdiction; or (2) [it] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Rule 201 contemplates

judicial notice of facts indicated as trustworthy by sources such as "a public record or a well-established learned treatise like Gray's Anatomy." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1084 (7th Cir. 1997) (citing cases taking judicial notice of census data and refusing to take judicial notice of facts published in a newspaper or in certain government reports). Unlike census data, the enforceability or validity of a contract is not the sort of "fact" for which judicial notice is appropriate. Nevertheless, while the Court declines to take judicial notice of the enforceability of the contract, the Court will consider an appropriate jury instruction at the conclusion of the evidence to ensure the jury is not confused about whether it should be questioning the validity of the contract itself. Miller's motion for judicial notice is denied.

## V.     Miller's Other Motions Regarding Caterpillar's Defense

### A.     *Miller's Motion To Limit Full Direct Examinations During Cross-Examination Of Caterpillar Witnesses Called Adversely (Dkt. No. 807 § XIX)*

Miller intends to call to testify in its case-in-chief certain witnesses who Caterpillar also plans to examine as part of its case. The parties previously agreed to call such witnesses only once, when possible, and to permit Caterpillar to conduct its direct examinations of those witnesses during Miller's case-in-chief. Yet Miller asks the Court to limit the length of the direct examinations that Caterpillar conducts during Miller's case. However, doing so would undermine the agreement that witnesses—particularly those traveling from out of town—will only have to testify once. In addition, the Court already has limited the amount of time each side will have to present its total case. The Court sees little benefit to managing the parties' time usage further. Miller's motion to limit the direct examinations by Caterpillar of witnesses called during Miller's case is therefore denied.

**B.      Miller's Motion To Preclude Testimony That Caterpillar Proceeded With Any Action Pursuant To Advice Of Counsel (Dkt. No. 807 § XX)**

Caterpillar has unequivocally represented to the Court that it does not intend to assert an advice-of-counsel defense in this case. (*See* Letter from Gregory L. Baker to Judge Wood, Dkt. No. 770.) Nonetheless, Miller has moved to preclude evidence or testimony suggesting that Caterpillar acted pursuant to the advice of counsel. Consistent with Caterpillar's representation that it does not intend to assert an advice-of-counsel defense and the Court's prior rulings denying discovery of Caterpillar's attorney-client communications and attorney work product, Miller's motion is granted.

Caterpillar suggests that Miller may be "asking the Court to preclude any evidence or testimony regarding *any* communication with counsel," a request that Caterpillar opposes as overbroad. (Dkt. No. 831 at 33). To be clear, by granting Miller's motion the Court does not intend to prohibit incidental mention of counsel's involvement in the matters at issue, so long as that involvement is not highlighted in such a way as to suggest advice or reliance. For example, Caterpillar will not be required to redact every lawyer's name that happens to appear on a document introduced into evidence for another purpose. The Court will not, however, permit witnesses to testify that they consulted with lawyers or otherwise suggest indirectly that Caterpillar received advice with respect to the trade secrets or contracts at issue in this case.

**C.      Miller's Motion To Preclude Argument That Miller Must Segregate Its Damages Between Miller UK And Miller International (Dkt. No. 807 § XXIV)**

Miller also has asked the Court to preclude Caterpillar from arguing that the jury must segregate any damages it ultimately awards between Miller UK and Miller International. In response, Caterpillar argues that Miller's request is premature, as it pertains to verdict forms, which are not due yet. The Court reserved ruling on Miller's motion to preclude any argument

regarding segregation of damages until trial. Subsequently, on November 12, 2015, the Court

issued an oral ruling to the effect that there is no need for Miller UK and Miller International to

provide an evidentiary basis for the jury to apportion damages between the two entities. *See*

*Linhart v. Bridgeview Creek Dev., Inc.*, 909 N.E.2d 865, 872 (Ill. App. Ct. 2009); *Gold v. Ziff*

*Commc'ns*, 748 N.E.2d 198, 207-08 (Ill. App. Ct. 2001). Nor does the Court intend to permit

Caterpillar to argue to the jury that such segregation is required. The Court did not, however,

foreclose the possibility that it would consider a motion for judgment as a matter of law against a

plaintiff who had not adduced sufficient evidence that it has standing to pursue its claim in this

action.

**D.      *Miller's Motion To Preclude Evidence Or Argument That Miller International Or Miller UK Lacks Standing To Sue On Miller's Claims for Breach of Contract and Trade Secrets Misappropriation (Dkt. No. 807 § XXIII)***

Miller moves to exclude evidence that either Miller UK or Miller International lacks

standing. Standing is a legal issue for the Court to decide. *United States v. All Funds on Deposit*

*with R.J. O'Brien & Assocs.*, 783 F.3d 607, 615 (7th Cir. 2015) ("Whether constitutional,

statutory, or prudential in form, standing is a question of law"); *Winkler v. Gates*, 481 F.3d 977,

982 (7th Cir. 2007). Thus, to the extent the motion seeks to preclude argument before the jury

challenging the plaintiffs' standing, it is granted. The jury will not be asked to make a

determination of whether either of the Miller entities has standing to pursue its claims.

However, constitutional standing, in particular, is a jurisdictional requirement that the

plaintiff has the burden of establishing. "Because standing is 'not [a] mere pleading

requirement[] but rather an indispensable part of the plaintiff's case, [it] must be supported in the

same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the

manner and degree of evidence required at the successive stages of the litigation.'" *Apex Digital,*

*Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). A challenge to standing would seem to be a matter best raised at the summary judgment stage. Nevertheless, as a jurisdictional requirement, Caterpillar has not waived every challenge to standing it may have by not raising the issue then. Thus, while Caterpillar will not be permitted to raise its standing argument before the jury, the Court does not foreclose the possibility that Caterpillar may properly be able to bring the issue before the Court on a motion for judgment as a matter of law or through another procedural means. Thus, Miller should consider whether it has adduced sufficient evidence to satisfy its burden if the occasion arises.

> **E.    *Miller's Motion To Preclude Evidence Of Inapplicable Defenses Before The Jury (Dkt. No. 807 § XIII)***

Miller moves to preclude certain defenses that Caterpillar has offered.

First, Caterpillar's defense of unclean hands is an equitable, not legal, defense, Miller argues. Accordingly, the argument goes, Caterpillar may not introduce to the jury evidence that only would support that defense.

Miller's claims for breach of contract and misappropriation of trade secrets are indeed legal, and not equitable, actions to the extent Miller seeks damages. (Although Miller also seeks equitable relief in the form of an injunction.) Under Illinois law, "the affirmative defense of unclean hands [does] not apply to [a] contract count [of a complaint if the plaintiff] is seeking a legal remedy: money damages." *Northbound Grp. Inc. v. Norvax, Inc.*, 5 F. Supp. 3d 956, 970 (N.D. Ill. 2013) (granting summary judgment to plaintiff seeking damages on counterclaim asserting unclean hands) (citing *Zahl v. Krupa*, 850 N.E.2d 304, 309-10 (Ill. App. Ct. 2006) (grant of summary judgment to defendants asserting only defense of unclean hands to plaintiff's legal claim was error because unclean hands doctrine bars only equitable remedies and does not

affect legal rights)). The Court observes without deciding that Caterpillar's affirmative defense of unclean hands may not have withstood a motion for summary judgment. For present purposes, the Court finds that Caterpillar may not introduce to the jury evidence offered only to demonstrate Miller's unclean hands. But the evidentiary question may be an essentially academic one: not only is the introduction of such evidence merely hypothetical at this point, but the Court already has ruled elsewhere that evidence of Miller's alleged failure to perform is not admissible.

For the reasons discussed above with respect to the Court's opinion on the stand-alone motion for the same relief, this Court grants Miller's request to preclude any argument to the jury regarding purported lack of standing to bring its claims. Miller also moves to exclude evidence of any Statute of Frauds or preemption defense. As a result of the Court's prior rulings, no oral contract subject to the Statute of Frauds or claim under a law subject to preemption remains relevant to this case. Thus, the Court excludes evidence and argument regarding those defenses.

Miller also moves to exclude evidence of the defenses of license, estoppel, and waiver. Miller here does not argue that the defenses of license, estoppel, and waiver cannot apply to Miller's claims but rather seeks to exclude facts that support the defenses in question. But what facts? The Court is unable to tell at this stage. Each of those defenses remains appropriate and may turn on factual questions appropriate for the jury. For those reasons, the Court denies Miller's motions with respect to those defenses. The Court will consider whether they should be presented to the jury for determination based on how the evidence develops at trial.

F.     *Miller's Motion To Preclude Evidence Or Argument That Miller International Was Set Up As A Tax Haven (Dkt. No. 807 § XXI)*

Caterpillar claims that evidence of Miller's corporate structure undermines Miller's purported self-portrait as David battling against Caterpillar's corporate Goliath. Anticipating evidence along those lines, Miller seeks to exclude evidence or argument that Miller

International was set up as a "tax haven." It is not immediately obvious that facts concerning

Miller's relative sophistication and corporate structure are in fact of any consequence in

determining this action for breach of contract and misappropriation of trade secrets. But to the

extent Miller may seek to portray itself as "simply" a family business to suggest a lack of

sophistication relative to Caterpillar or to explain the impact of Caterpillar's alleged conduct on

Miller's business, Caterpillar may counter such evidence with accurate, factual information

about Miller's business. But describing Miller International as a "tax haven" does not serve this

legitimate purpose. Whether or not that business entity was established in a certain manner or

location to benefit from favorable tax laws is of no consequence to the claims or damages

asserted by Miller (or the counterclaims asserted by Caterpillar). More importantly, the term "tax

haven," or other similar terms, may suggest that there is something untoward or even illegal

about Miller's structure. Some might view the description as code for Miller being a tax evader

or trying to hide assets. In short, the term "tax haven" has negative connotations that would

unduly prejudice Miller. This prejudice outweighs any probative value. The Court grants Miller's

motion to preclude any mention of Miller International being a tax haven.

> ### G. *Miller's Motion To Preclude Evidence On Discovery And Litigation Disputes And Conduct (Dkt. No. 807 § XVIII)*

Miller moves "to preclude any evidence regarding the existence or substance of discovery

disputes." (Dkt. 807 at 29-30.) As a general matter, the Court agrees that evidence regarding

discovery disputes or the conduct of counsel during the pretrial phases of litigation are irrelevant

for the jury's purposes. In this case, there has been no allegation of evidence spoliation or other

claim that would properly bring the parties' conduct during discovery before the jury. Unless and

until such a claim has been raised, evidence and argument regarding pretrial disputes has no

probative value but carries a significant risk of undue prejudice. Accordingly, Miller's motion to preclude evidence on discovery and litigation disputes is granted.

### H.     *Miller's Motion To Preclude Evidence Of Trade Secrets That Are Not At Issue In This Case (Dkt. No. 807 § I)*

Miller has moved to exclude evidence of trade secrets that are not at issue in this case, including those for which Miller has relinquished all claims. Allowing evidence pertaining to trade secrets that the jury will not be asked to consider has limited probative value but substantial potential to confuse the jury and unduly prejudice Miller. This case already involves numerous claimed trade secrets, many of which will require the jury to consider evidence of a complex and highly-technical nature. Introducing additional trade secrets that Miller has not claimed were misappropriated and for which Miller is not seeking damages would only serve to obscure, and divert judicial resources away from, the claims and defenses that are at issue. Thus, the Court grants Miller's motion to preclude evidence of trade secrets that are not at issue in this case.

### I.     *Miller's Motion To Preclude Evidence Of The So-Called "Cat Attack" (Dkt. No. 807 § XVI)*

Miller's employees used the term "Cat Attack" to describe its response to Caterpillar's development of the Center-Lock Coupler. Caterpillar argues that both the phrase and the corporate strategy to which it refers demonstrate Miller's intent to defame Caterpillar, rather than merely to inform potential users of legitimate safety concerns regarding the Center-Lock Coupler. Miller seeks to preclude this evidence as unduly prejudicial. But the concept of the "Cat Attack" goes to the heart of Caterpillar's counterclaims. It is plainly relevant to those counterclaims, some of which require a showing of intent, as well as punitive damages. The extent to which the "Cat Attack" is probative of Miller's intent far outweighs the risk of undue

prejudice. If the phrase inflames the jury, it does so precisely because Miller chose an inflammatory name for its strategy. The Court denies Miller's motion.

**J.** **_Miller's Motion To Preclude Evidence Of A Relationship Between Former Caterpillar Employee John Walker And Jacqui Miller (Dkt. No. 807 § XVII)_**

During discovery, Caterpillar deposed Jacqui Miller about her romantic relationship with former Caterpillar employee John Walker. Concerned that Caterpillar intends to solicit testimony on the topic at trial, Miller has moved to preclude evidence about the romance. In response, Caterpillar argues that testimony about the relationship is probative because it might explain why Caterpillar began and continued doing business with Miller despite what Caterpillar alleges to have been continual problems with Miller's performance, it undermines Walker's testimony, it demonstrates Walker's disclosure of inside information, and it rebuts the argument that Miller reasonably relied on Caterpillar's assertions because Walker told Jacqui Miller about Caterpillar's actual business plans.

As discussed previously, Miller's performance or nonperformance under the Supply Agreement is not relevant to this case. Moreover, Caterpillar has no need to show Walker's bias unless Miller calls him as a witness, which Miller does not plan to do. Meanwhile, Caterpillar has listed Walker as a "may call" witness. The most likely reason for Caterpillar to call Walker would be to examine him about his disclosure of Caterpillar's plans. Caterpillar suggests that Miller perceived that Walker, because of his personal relationship with Jacqui Miller, would disclose Caterpillar's plans. Whether or not those plans are styled as "inside information," evidence of their disclosure would tend to undermine Miller's claim of reasonable reliance, a necessary element of Miller's fraudulent inducement case. But the Court has already granted summary judgment in Caterpillar's favor on Miller's fraudulent inducement claim so that claim provides no basis to introduce the evidence either. The only remaining purpose for which

Walker's testimony could be relevant is to discuss the origin of the Miller/Caterpillar partnership. The Court will allow Caterpillar to introduce evidence of Jacqui Miller's interactions with Walker for that limited purpose, but it may not discuss the romance, which is irrelevant and potentially prejudicial to Miller in that it would serve no purpose other than to embarrass Jacqui Miller. The Court thus grants Miller's motion to exclude evidence of a romantic relationship between Jacqui Miller and Walker.

### K.    *Miller's Motion To Preclude Evidence That Was Responsive To Miller's Discovery Requests But That Was Not Produced (Dkt. No. 807 § XXII)*

Miller filed a motion *in limine* to exclude the Caterpillar exhibit identified as CTX 1467, which consists of a video purporting to show a test that Caterpillar ran with a roamer to demonstrate the ease with which Miller's coupler design could be reverse engineered without using trade secrets. Miller claims that Caterpillar produced the video too late. Caterpillar disagrees. The Court took this matter under advisement for a separate ruling, which was issued orally on October 27, 2015. At that time, the Court granted Miller's request that the roamer video be excluded for reasons detailed on the record. Nothing further remains to be decided with respect to this motion.

## VI.    Motions On Damages And Caterpillar's Counterclaims

### A.    *Miller's Motion To Preclude Evidence Or Argument Of Any Damages Caterpillar Claims It Incurred If Not Previously Disclosed Or Quantified During Discovery (Dkt. No. 807 § IV)*

Miller seeks to preclude Caterpillar from presenting evidence or argument regarding damages associated with its counterclaims that Caterpillar failed to disclose during discovery. But, as Caterpillar points out, it *did* disclose counterclaim damages in its initial disclosures. (Dkt. No. 831 at 6 (citing Dkt. No. 831-4, 12/7/12 Caterpillar's Initial Damage Disclosure).) Yet apparently Miller declined to seek discovery regarding those damages. Only at the summary

judgment stage did Miller finally seek to put Caterpillar to the test of supporting the damages number that it had previously disclosed. At that point, Caterpillar revised its claim to assert the same categories of damages as previously claimed but in lower amounts. Under the circumstances, the Court finds that the initial damages disclosure was sufficient to preserve Caterpillar's right to seek damages for its counterclaims. Moreover, to the extent Caterpillar's current damages claim differs from its earlier position, the fact that the more recent calculation consists of the same categories but in lower amounts belies any contention by Miller that it has been prejudiced due to the change. The Court denies Miller's motion.

> **B.** ***Miller's Motion To Preclude Evidence On Caterpillar's Counterclaims For Commercial Disparagement, Commercial Disparagement Under Statute, Defamation, And Tortious Interference Pending Pre-Trial Ruling On Miller's Affirmative Defense Of Qualified Privilege (Dkt. No. 807 § XV)***

Miller has asserted a qualified (or "conditional") privilege in defense of its allegedly defamatory statements about the Center-Lock Coupler in January 2011. In anticipation of a ruling in its favor on its summary judgment motion, Miller filed a motion *in limine* asking this Court to preclude Caterpillar from introducing evidence in support of its counterclaims regarding those allegedly defamatory statements. Since then, the Court has issued its Memorandum Opinion and Order denying Miller's summary judgment motion with respect to all of Caterpillar's counterclaims, except those for breach of contract and tortious interference. (*See* Dkt. No. 871.) In so doing, the Court specifically held that, although the qualified privilege applies to Miller's statements, Caterpillar may overcome the privilege and prevail on its remaining counterclaims by persuading the jury that Miller acted intentionally or with reckless disregard for Caterpillar's rights. Accordingly, the Court denies as moot Miller's motion to preclude evidence regarding Caterpillar's counterclaims.

**C.** **Caterpillar's Motion To Preclude Plaintiffs From Raising Certain Defenses And Arguments Related To Defamation Counterclaim (Dkt. No. 780)**

Caterpillar seeks to preclude Miller from raising its qualified privilege argument as a defense to Caterpillar's counterclaim for defamation or arguing that Caterpillar's Center-Lock Coupler did not comply with certain European regulations. In addition, Caterpillar asks this Court to hold that Miller's 2011 statements about the Center-Lock Coupler were false as a matter of law. For reasons that should be apparent in light of the Court's Memorandum Opinion and Order ruling on the parties' cross-motions for summary judgment (*see* Dkt. No. 871), this motion is denied in its entirety. As discussed there, the Court has determined that the qualified privilege does apply to Miller's January 2011 commentary on the Center-Lock Coupler, but the jury still must decide whether Miller made false statements with a direct intention to injure or a reckless disregard for the defendant's rights and the consequences of the false communication. *See Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 135 (Ill. 1993). Furthermore, the truth or falsity of Miller's claims about the coupler, including whether or not the coupler actually complied with the referenced European regulations, is a factual matter for the jury to determine.

**D.** **Miller's Motion To Preclude Argument That Miller's Damages Should Be Reduced By Caterpillar's Contribution To The Production Of The Coupler (Dkt. No. 807 § XXV)**

In its final motion *in limine*, Miller seeks to preclude Caterpillar from arguing to the jury that Miller's damages should be reduced by the value of Caterpillar's contribution to the creation of the PGP Coupler. This motion has been taken under advisement as briefed, with the Court to issue a separate ruling.

ENTERED:

Dated:  November 20, 2015

_____
Andrea R. Wood
United States District Judge