IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,**<br><br>　　　Plaintiffs,<br>　v.<br><br>**CATERPILLAR INC.,**<br><br>　　　Defendant.<br><br>**CATERPILLAR INC.,**<br><br>　　　Counterclaim-Plaintiff,<br>　v.<br><br>**MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,**<br><br>　　　Counterclaim-Defendants. | Civil Action No. 10-cv-3770<br><br>Honorable Andrea R. Wood |

**CATERPILLAR INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW
ON CATERPILLAR INC.'S AFFIRMATIVE DEFENSES**

## INTRODUCTION

Miller's motion for judgment as a matter of law on Caterpillar's affirmative defenses should be summarily denied because Miller applies the wrong legal standard. Instead of taking the evidence as a whole and viewing it in Caterpillar's favor—as it must under Rule 50—Miller relies *exclusively* on testimony from its own witnesses. When testing Caterpillar's affirmative defenses against the entire trial record, as is required by Rule 50, there is more than sufficient evidence for the jury to find for Caterpillar.

## ARGUMENT

### I. Miller's Motion Fails To Comply With Rule 50

Judgment as a matter of law may be granted only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue." Fed. R. Civ. P. 50(a)(1). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted). The court "must disregard all evidence favorable to the moving party that the jury is not required to believe" and "should give credence to the evidence favoring the nonmovant[.]" *Id.* at 151. Miller simply ignores this legal standard, relying exclusively on testimony of its own witnesses: Keith, Gary, and Jacqui Miller, Chris Parkin, and Louis Dudney. Because the *only* basis for Miller's motion is evidence that the jury is not required to believe, the motion can and should be denied for this reason alone.

### II. A Reasonable Jury Could Find For Caterpillar On The Affirmative Defenses

On the merits, there is more than sufficient evidence for the jury to find in Caterpillar's favor on the affirmative defenses that remain in the case: license/no restriction on use, waiver, estoppel, failure to mitigate, laches, and unclean hands.

### A.     A Reasonable Jury Could Find For Caterpillar On The Affirmative Defense Of License/No Restriction On Use

Caterpillar has a license to use certain information by virtue of two previous agreements between the parties: the February 1998 Agreement and the September 1998 Agreement.[1] In the February 1998 Agreement, Miller promised that Caterpillar could use, without restriction, any of Miller's improvements, modifications, and derivatives of Caterpillar confidential information. CTX40.  In the September 1998 Agreement, the parties agreed that there would be no restrictions on the handling of the parties' business or technical information, other than certain information related to a Miller latching device for a short period of time.  CTX41.  Although this Court ruled the 1998 Agreements did not survive the 1999 Supply Agreement going forward (an issue on which Caterpillar preserves its objection), there is no question they were valid and governed the parties' relationship before April 1999.  Taken together, the 1998 Agreements gave Caterpillar a license to use (i) any improvements, modifications, or derivatives of Caterpillar information that Miller created before April 1999, or (ii) any Miller information shared before April 1999.

The jury is entitled to find that this license to use information received before April 1999 excuses any breach or misappropriation based on such information.  Although Miller asserts in conclusory fashion that all the Pro-E models Miller relies on were disclosed after the Supply Agreement went into effect, the fact remains that Miller sent Pro-E models (and engineering drawings) to Caterpillar before April 1999 containing the same *information* as reflected in the later models.  Tr. 4531:6-11 ("Many of these files are post-April '99.  However, the information in these files is actually duplicative of -- much of the information is duplicative of information provided pre-April '99."); Tr. 4571:18-22 ("So we see the -- in the middle column, what was in

---

[1] Caterpillar previously asserted license rights under its Purchase Order Terms and Conditions, which are incorporated in Section 2 of the Supply Agreement.  Dkt. No. 569 at ¶¶16-21.  However, the Court ruled that the Supply Agreement conflicts with and controls over the Terms and Conditions.  Tr. 495:14-496:1.

2

CAT's possession pre-April '99. CAT's product from the Center-Lock on the right; what they're accused of using from the Pin Grabber on the left. And you can see that CAT was in possession of most of what they used here or if not all."); *see also* Tr. 4531:25-4532:3; Tr. 4535:10-4536:25; Tr. 4563:15-4564:7; Tr. 4570:5-4572:14.

Miller argues the February 1998 Agreement is irrelevant because the PGP coupler "was not an improvement to, modification of, or derivative of Caterpillar's confidential information." Pl. Mem. at 2. But there was substantial evidence at trial from which the jury could reasonably find that the Pro-E models were derived from Caterpillar Confidential Information. Tr. 2515:6-9 ("Q. What else did Caterpillar give you that was confidential, in your view? A. Well, everything that came from Caterpillar was confidential.") (G. Miller). The information was a crucial input, and the Pro-E models are based specifically on Caterpillar dimensional information. Tr. 1742:5-1744:19; Tr. 2392:24-2393:21; Tr. 2500:1-22; Tr. 2527:24-2528:5; Tr. 2825:20-2826:24; Tr. 2872:5-2880:2. Indeed, Miller's expert conceded that without Caterpillar's information, the Pro-E models would fail (Tr. 2911:13-2912:24; Tr. 2871:15-2872:24; Tr. 2876:3-2877:7), a fact also confirmed—and demonstrated—by Caterpillar's expert, Dr. Glew (Tr. 4639:4-4641:9).

Miller also advances a confused argument about how the September 1998 Agreement only covered information disclosed in a patent for a latching device. Pl. Mem. at 3. But the agreement clearly states that, other than for Proprietary Information related to the latching device (where such information was protected for a very limited time), "[t]here shall be no restrictions on the handling of business or technical information.…" CTX41. Again, this language means what it says: there were "no restrictions" on Caterpillar's use of Miller information.

In short, the jury may find that Caterpillar had a license to use information contained in the Pro-E models based on the February and September 1998 Agreements.

3

### B. A Reasonable Jury Could Find For Caterpillar On The Affirmative Defense Of Waiver

There is sufficient evidence to find that Miller waived the right to assert that the information at issue is confidential, proprietary, or a trade secret. "Waiver is defined as the intentional relinquishment of a known right. In contract law, if a party indicates by its conduct that compliance with a particular provision is not required then waiver of that provision may be implied." *Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 673 (1st Dist. 2007) (citation omitted). "The policy behind this broad doctrine of waiver in contract law is to prevent the waiving party from lull[ing] another into a false assurance that strict compliance with a contractual duty will not be required and then sue for noncompliance." *Id.* at 674 (internal quotation marks omitted). Again, there is sufficient evidence to submit this defense to the jury.

First, it is undisputed that Miller did not mark any of the Pro-E models as "Confidential" or "Proprietary." Tr. 3088:9-16; Tr. 4530:20-4531:5; Miller Demo. No. 6. That omission alone supports a jury finding that Miller intended to waive Caterpillar's compliance with Section 17(a). The Court recognized the importance of this point in its summary judgment ruling: "To the extent that Caterpillar received information that was not identified as confidential, such information does not appear to be covered by the agreement's restrictions." Dkt. No. 871 at 8.

Further, the jury could find Miller waived any confidentiality protection for information shared before March 31, 1999. Again, the evidence showed that Miller had the opportunity to enter into a written confidentiality agreement—but did not—before exchanging information with Caterpillar. Miller's failure to obtain *any* written assurance of confidentiality before the Supply Agreement supports a finding that Miller waived any expectation of confidentiality with respect to such information. The jury has heard abundant evidence that information contained in the Pro-E models was shared by Miller before April 1999.

4

### C. A Reasonable Jury Could Find For Caterpillar On The Affirmative Defense Of Estoppel

There is sufficient evidence to find that Miller is estopped from claiming the information at issue is confidential or a trade secret. "The general rule is that where a person by his or her statements and conduct leads a party to do something that the party would not have done but for such statements and conduct, that person will not be allowed to deny his or her words or acts to the damage of the other party." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001). The jury could readily find the elements of this affirmative defense.[2]

The jury could reasonably find that Miller is estopped from claiming that it disclosed any confidential information to Caterpillar before April 1999, given Miller's express promise in the February and September 1998 Agreements that none of Miller's information would be treated as confidential (with a limited exception of Proprietary Information regarding the blocking bar Invention for a short period of time). CTX41. Miller should not be heard to argue that it sent confidential information in violation of these agreements.

The evidence also shows that Miller provided Caterpillar with Pro-E models that lacked any indicia they were considered "confidential" or "proprietary." However, if the jury finds that the models were, in fact, confidential, then it may conclude that Miller was concealing a material fact (*i.e.*, the confidentiality of the models) and that it reasonably should have expected Caterpillar to rely on its omission of a confidentiality designation. *Geddes*, 196 Ill. 2d at 314 ("Estoppel may arise from silence as well as words. It may arise where there is a duty to speak

---

[2] Estoppel requires: "(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *Id.* at 313-14.

and the party on whom the duty rests has an opportunity to speak, and, knowing the circumstances, keeps silent.") (internal quotation marks omitted). The evidence shows that Caterpillar relied in good faith on Miller's omission of any indicia of confidentiality. Tr. 3088:9-16 ("Q. And just to be clear, when you opened the model, is there anything in there that indicates it contains confidential information of someone, some other entity? A. No, ma'am. Q. So when you were designing the CAT Center-Lock coupler, did you think you were using something that didn't belong to Caterpillar? A. No, ma'am."). Finally, the jury may conclude that Caterpillar was both harmed by its reliance (*e.g.*, this lawsuit) and prejudiced if Miller is now permitted to assert that the Pro-E models are confidential or proprietary. In short, the jury could reasonably find all the elements of this affirmative defense.

> **D.      A Reasonable Jury Could Find For Caterpillar On The Affirmative Defense Of Failure To Mitigate Damages**

There is sufficient evidence to find that Miller failed to take reasonable steps to mitigate its damages. Miller's lost profits are based solely on sales to Caterpillar that Miller purportedly "lost" when Caterpillar used its own Center-Lock coupler rather than buying from Miller. But Miller failed to take *any* steps to prevent Caterpillar from selling its coupler. Miller learned of the Center-Lock coupler no later than June 2008. CTX1218; Tr. 2030:22-2032:19. Yet Miller did not file suit until June 2010, and never pursued any type of injunctive relief to prevent Caterpillar from selling its product. If Miller seriously believed that Caterpillar misappropriated its trade secrets or misused Proprietary Information, it could have taken immediate legal action to stop Caterpillar from going to market with its new coupler. Instead, it did nothing. The jury is entitled to find Miller's inaction was a failure to make reasonable efforts to mitigate its damages. *See A & F Enters., Inc. II v. IHOP Franchising LLC*, 742 F.3d 763, 766 (7th Cir. 2014) ("Stays,

6

like preliminary injunctions, are necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits.").

Further, the jury could find that Miller failed to make reasonable efforts to sell the PGP/Bug coupler to existing customers. For example, the evidence showed that by 2013, Miller had lost "key OEM accounts" such as JCB and Volvo and that "losing such major accounts was in effect *a conscious decision*." CTX125 at 4 ("Historically we did not demonstrate we 'loved Volvo' enough"; "Generally, we have executed poor key account management"; "We have all too often shown a lack of clarity to the customer with too many chiefs involved"; "We have at times acted with arrogance") (emphasis added); *see also* Tr. 3308:5-3310:4.[3]

The jury could also find that Miller failed to take reasonable steps to find new distributors and customers. In Fall 2008—immediately after Caterpillar informed Miller of the Center-Lock coupler—Miller decided it would no longer do business with OEMs unless they agreed to *more favorable terms* than Miller had with Caterpillar, such as no restrictions on the distribution of Miller's products or no "OEM badges" on Miller couplers. CTX322 at 9. The evidence also showed that Miller failed to make efforts to sell to the North American market. Former Miller executive Jeff Larson explained that Miller failed to support its U.S. marketing arm. JTX7 at 29:14-17 ("You know, proper staffing, clear direction, go to market strategy, you know, I absolutely felt the company could have been successful."). He also testified that Miller's head of marketing ignored North America and was "not capable of handling marketing for an international organization." JTX7 at 54:8-13, 54:14-54:20. The evidence further showed that Miller waited three years (until 2011) to secure a distributor (Paladin) for its couplers in North

---

[3] There was substantial evidence that the Millers grossly mismanaged their business. For example, Keith Miller's involvement in the business was "very periphery [sic] and on an as and when he can be bothered basis," he "use[d] business resource for personal use (gardening, decorating, [etc.])," and he "use[d] the company as a personal bank." CTX157 at 2; *see also* Tr. 3316:8-3319:9. The jury is entitled to consider this evidence as a reason why Miller failed to sell more couplers.

7

America. JTX6 at 24:18-25:10. Even then, Paladin focused its efforts on sales of Miller's TwinLock and PowerLatch coupler—not the PGP/Bug. JTX6 at 40:11-40:15, 115:17-116:4. Miller's delay in entering the North American market and lack of effort to sell PGP couplers both bear directly on the reasonableness of Miller's efforts to mitigate damages. In short, this is simply not an issue that may be decided as a matter of law.

### E. A Reasonable Jury Could Find For Caterpillar On The Affirmative Defense Of Unclean Hands And Laches

Miller asserts that laches and unclean hands are no longer applicable because there are "no remaining equitable claims or requests for equitable relief in this matter." Pl. Mem. at 1, 7. Miller is mistaken. It still seeks equitable relief by pursuing monetary recovery for unjust enrichment. *See Hess v. Kanoski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012) ("Unjust enrichment is an equitable remedy...."); RESTATEMENT (THIRD) UNFAIR COMPETITION § 45 *Comment b* ("The traditional equitable doctrines of laches, estoppel, and unclean hands are applicable to the award of monetary . . . relief in trade secret actions."). And there is sufficient evidence to support both defenses.[4]

#### 1. Laches

"Laches is an equitable doctrine which precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." *Tully v. State*, 143 Ill. 2d 425, 432 (1991). "Two elements are necessary to a finding of laches: (1) lack of diligence by the party asserting the claim and (2) prejudice to the opposing party resulting from the delay." *Id.* Both of these elements are supported by evidence in the case.

---

[4] The Court ruled that unclean hands is not a jury issue only in the context of Miller's claim for **breach of contract**. Dkt. No. 927 at 18-19.

First, the jury could find that Miller did not exercise diligence in pursuing its trade secrets claim. The evidence showed that in June 2008 Caterpillar gave Miller a presentation on the Center-Lock coupler, demonstrated the coupler in action, answered questions, and allowed Miller to take photographs of the coupler. CTX1218; Tr. 2030:22-2032:9 (Oswald). Yet it was not until October 2009—16 months later—that Miller first asserted that Caterpillar had copied its designs. MTX558. Even then, Miller did not file suit until June 2010. Dkt. No. 1. Based on this evidence, the jury could conclude that Miller failed to act diligently by waiting *two years* to assert its purported rights in court. In fact, given that Miller did not designate the information at issue as "Confidential" in any way, the jury has a reasonable basis to find that Miller waited over *ten years*—1999 to 2009—before asserting that the Pro-E models were a trade secret.

Second, the jury could find that Caterpillar suffered prejudice by Miller's delay. By the time Miller first claimed that Caterpillar had used its trade secrets, Caterpillar had been selling its Center-Lock coupler for over a year, and had incurred the related costs of production. Tr. 2194:10-2195:4; Tr. 2264:21-24. Further, if the jury finds that Miller's delay in asserting its rights can be traced to its initial failure to designate the models as confidential, then Caterpillar suffered additional prejudice in terms of its development and opportunity costs. Either way, there is sufficient evidence to support a jury finding on this element.

### 2. Unclean Hands

"Unclean hands" bars relief to a party that has engaged in misconduct, fraud, or bad faith in connection with the transaction at issue. *See Long v. Kemper Life Ins. Co.*, 196 Ill. App. 3d 216, 219 (2nd Dist. 1990). As discussed below, there is sufficient evidence to support a finding that Miller should be barred here.

First, the jury could find that Miller's attempt to assert secrecy over the Pro-E models is an act of bad faith. It is undisputed the models do not contain any confidentiality designation.

9

Yet Miller is now suing Caterpillar for tens of millions of dollars based on Miller's own failure to assert any degree of secrecy over this information. *See id.* ("The doctrine of 'unclean hands' precludes a party from taking advantage of his own wrong.").

Further, the jury could conclude that, even if the Pro-E models were secret, Miller's trade secrets claim was pursued in bad faith. The evidence showed that Miller engaged in a campaign of harassment and intimidation to force Caterpillar back into a commercial relationship. For example, Miller sent a threatening email to Caterpillar's CEO, engaged in the "CAT attack," and disparaged Caterpillar and its products. MTX177; CTX420; Tr. 1230:15-1231:3; Tr. 1258:13-23; Tr. 1270:23-1272:4. From this evidence, the jury could find that Miller was not attempting to assert its rights in a trade secret, but rather retaliating against Caterpillar for its decision to phase-out Miller as a supplier.

### F. The Affirmative Defenses Of Preemption, Standing, Statute Of Frauds, And Statute Of Limitations Are Not Issues For The Jury To Decide

Preemption is not a jury issue, Caterpillar is no longer asserting statute of limitations, and this Court has ruled that standing "is a jurisdictional requirement that [Miller] has the burden of establishing." Dkt. No. 927 at 17.[5] Therefore, the Court need not decide these issues here.

## CONCLUSION

For the foregoing reasons, Caterpillar respectfully requests that this Court deny Miller's Motion For Judgment As A Matter Of Law with respect to Caterpillar's affirmative defenses.

---

[5] At present, the "gentlemen's agreement" is in issue as an alleged oral contract. For reasons advanced in Caterpillar's Motion For Judgment As A Matter Of Law, the Court should instruct the jury to disregard it. Dkt No. 938 at 10-12. However, if the "gentlemen's agreement" goes to the jury, the jury should be instructed on the Statute of Frauds because there is evidence that the purported agreement was an oral contract for the sale of goods of more than $500 and could not be performed within a year. *See* 810 ILCS 5/2-201(1); 740 ILCS 80/1.

Date: December 14, 2015                              Respectfully submitted,

                                                    */s/* Gregory L. Baker
John M. Touhy (NDIL 3128400)                        Gregory L. Baker (NDIL 288357)
Edward H. Williams (NDIL 6217053)                   Terry L. Sullivan (admitted *pro hac vice*)
David M. Friebus (NDIL 6286193)                     Gregory J. Commins, Jr. (admitted *pro hac vice*)
BAKER & HOSTETLER LLP                               BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100                  1050 Connecticut Ave., N.W., Suite 1100
Chicago, IL 60606-1901                              Washington, D.C. 20036-5304
(312) 416-6200 phone                                (202) 861-1500 phone
(312) 416-6201 facsimile                            (202) 861-1783 facsimile
jtouhy@bakerlaw.com                                 gbaker@bakerlaw.com
ehwilliams@bakerlaw.com                             tsullivan@bakerlaw.com
dfriebus@bakerlaw.com                               gcommins@bakerlaw.com


*Attorneys for Defendant and Counterclaim-Plaintiff Caterpillar Inc.*

11

## **CERTIFICATE OF SERVICE**

  I, Gregory L. Baker, hereby certify that on December 14, 2015, a true and correct copy of ***CATERPILLAR INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON CATERPILLAR INC.'S AFFIRMATIVE DEFENSES*** was filed with the Clerk of the Court and served by operation of the electronic filing system of the United States District Court for the Northern District of Illinois upon all counsel who have consented to receive notice of filings in the above-captioned matter pursuant to Fed. R. Civ. P. 5(b)(2)(D), the General Order on Electronic Case Filing, and Local Rule 5.9.

            /s/ Gregory L. Baker
            Gregory L. Baker