IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,**<br><br>    Plaintiffs,<br>    v.<br><br>**CATERPILLAR INC.,**<br><br>    Defendant.<br><br>**CATERPILLAR INC.,**<br><br>    Counterclaim-Plaintiff,<br>    v.<br><br>**MILLER UK LTD. AND MILLER INTERNATIONAL LTD.,**<br><br>    Counterclaim-Defendants. | Civil Action No. 10-cv-3770<br><br>Honorable Andrea R. Wood |

**CATERPILLAR INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW
ON CATERPILLAR INC.'S COUNTERCLAIMS**

## INTRODUCTION

Miller's motion for judgment as a matter of law on Caterpillar's counterclaims should be denied. As set forth below, there is more than sufficient evidence for the jury to find in favor of Caterpillar on each and every cause of action.

## ARGUMENT

### I. A Reasonable Jury Could Find That Miller Made A False Statement Of Fact

Miller asserts that "[e]ach of Caterpillar's remaining counterclaims demands that Caterpillar establish . . . that Miller's statements in its January 2011 package were false" and that "no statement" in the package meets this test. Pl. Mem. at 12. Miller is wrong on both counts. Not only can Caterpillar prevail on its statutory claims without showing falsity, but also the jury could readily find that the January 2011 Package contained false statements.

#### A. Caterpillar Need Not Prove Falsity For Its Statutory Counterclaims

Miller once again argues to the wrong legal standard by asserting that each counterclaim requires Caterpillar to prove that Miller made a "false" statement. Pl. Mot. at 12 n.7. Under the Lanham Act, Caterpillar may prevail by showing that Miller made statements that were "***literally true*** or ambiguous, but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999) (emphasis added). Similarly, the Illinois Deceptive Trade and Business Act prohibits not only a "false *or* misleading representation of fact," but also conduct that "creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(8), (12) (emphasis added). Finally, the Illinois Consumer Fraud Act outlaws the "misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon [it]." 815 ILCS 505/2; *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 504-05 (1996). In other words, "falsity" is merely one way of establishing Caterpillar's statutory counterclaims—not the only way.

### B. Miller's January 2011 Package Contained False Statements

In any event, the jury could easily find that the January 2011 Package contained false statements. First, in the tests described and depicted in the January 2011 Package, Miller states that the Center-Lock coupler would drop a work tool attached "as per the manufacturer's operating instructions." CTX151 at 403. But the evidence showed the work tools depicted in the January 2011 Package were *not* installed "as per the manufacturer's operating instructions"—to the contrary, the videos showed a Center-Lock coupler installed with the wrong hydraulic kit. Tr. 3215:15-3217:22 (Robl). With the correct hydraulic kit, the Center-Lock coupler would not drop a work tool. Tr. 3221:6-10 (Robl).

Similarly, Miller stated that the Center-Lock failed to satisfy the European safety standard for the performance of quick couplers set by the Health and Safety Executive ("HSE"), and that it presented a safety risk. CTX627 at 2 ("This coupler DOES NOT meet Machinery Directives and EN474," "[Center-Lock] has also been "rejected by the UK market."); CTX150 at 12 ("The coupler does not meet the basic safety of the applicable EN Standard EN474-1."). Again, the jury could conclude this is literally false; as the evidence showed, HSE tested the Center-Lock in early 2011 and concluded it "complied with the current standard." CTX628.

The jury could also find Miller falsely represented that the video was "independent" and conducted by a third party. The evidence showed that Miller alone performed two of the three tests. JTX9 at 106:9-14 ("Q. Do you have any familiarity whatsoever with test no. 1 that was in the snow? A. I don't recall that, no. Q. Do you have any familiarity all -- at all with test no. 2 that was in the snow? A. I don't recall that one neither.") (Raine). And in the third test, attended by Laidler, the evidence shows that, despite claiming the test was "independent," the coupler was installed by a Miller employee, the machine was operated by a Miller employee, and Miller employees filmed and edited the video, chose the site for the video, and came up with the idea of

2

decapitating the dummy in the video. JTX9 at 21:2-24:10, 72:25-74:4-20 (Raine). Moreover, the jury could conclude that Miller fabricated the "independence" of the test because the evidence shows that Miller's request for a test and Laidler's proposal for a test were both sent *after* the test was conducted. JTX9 at 50:24-56:6.

In sum, the jury could conclude that one or more representations in the 2011 January Package were actually false. Accordingly, judgment as a matter of law cannot be granted on any one of Caterpillar's counterclaims.

## II. A Reasonable Jury Could Find That Miller Abused A Qualified Privilege

Miller asserts that no reasonable jury could find Miller abused its qualified privilege, which relates *only* to Caterpillar's counterclaims for defamation and commercial disparagement. Dkt. No. 871 at 21-23. Miller abused its qualified privilege if it: (1) knew its statements were false or recklessly disregarded their falsity; or (2) intended to injure Caterpillar or recklessly disregarded Caterpillar's rights. *See Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 519 (7th Cir. 2012); *Giant Screen Sports v. Canadian Imperial Bank Of Commerce*, 553 F.3d 527, 536 (7th Cir. 2009) ("To prove such abuse, a plaintiff must show a direct intention to injure another, or a reckless disregard of [the defamed party's] rights and of the consequences that may result to him."); *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill. 2d 16, 30 (1993) ("We now hold that to prove an abuse of the qualified privilege, the plaintiff must show a direct intention to injure another, or a reckless disregard of the defamed party's rights and of the consequences that may result to him."). "Reckless disregard" includes statements made "despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth," as well as "the failure to properly investigate the truth of the matter." *Id.* at 25, 30. These standards are easily met.

First, the jury could find that Miller's "CAT Attack" strategy was intended to injure Caterpillar. There is substantial evidence from which the jury could find animus toward

3

Caterpillar at the time Miller sent the package. CTX420 ("We now need to seriously consider our position regarding Caterpillar and the Cat attack and in particular North America"); CTX631 ("Give's more credence to the 'CAT Attack' strategy, for sure!"); CTX720 ("I am shocked and surprised at how aggressive a former supplier like Miller has been with this campaign. For a supplier to go as far with such a blatant attack on CAT is amazing to me."); CTX1298 ("How are we doing in getting a small stand for Conexpo outside area so we can demo the Cat machine and coupler dropping the bucket? We need to put Cat under severe pressure and this is one way…."). And Keith Miller made it a priority to "make sure we get to see a CAT coupler drop a bucket on American soil as soon as possible…." CTX193; CTX420 ("We need a bucket to be dropped on American soil, we need to be in front of the dealer principals…."). From this evidence the jury could reasonably—indeed, readily—find that Miller intended to injure Caterpillar by means of the January 2011 Package.

Alternatively, the jury could also reasonably find that Miller knew its statements were false or recklessly disregarded their falsity. Months before Miller sent the video, it knew that the representations contained in the video were false. John Walker, a close friend of the Millers, told Keith Miller in November 2010: "It is important to note that after the hyd[raulic] kit was modified/reworked, the bucket would not fall off as previously experienced." CTX427. Additional testimony from Keith Miller confirms Miller's knowledge. Tr. 1232:17-23 ("Q. So at least as early as November of 2010, and by Mr. Walker's reference as early as February, you were aware of the hydraulic control kit modifications, correct? A. That's correct.") (K. Miller); Tr. 1227:23-1228:3 ("Q. And your reference there to the new Cat fitting kit reflects your recognition that there is a different hydraulic kit that needs to be used associated with the Cat Center-Lock Coupler, correct? A. We heard that Cat had brought an improvement to their kit

4

out, yeah.") (K. Miller); Tr. 1275:21-25 ("Q. And so you were certainly aware that there is a difference in the valves and the lines associated with hydraulic kits that are used on the Center-Lock Coupler, correct? A. That's correct.") (K. Miller). Yet, Miller sent the video anyway. From this, the jury could conclude that Miller was not interested in the truth but instead was focused only on causing harm to Caterpillar.

In fact, the very correspondence Miller cites in its motion could be reasonably viewed by the jury as a series of thinly-veiled threats. Pl. Mem. at 16, citing MTX558 ("As I have stated, lawyers have advised that Miller is in a very strong position should Miller consider commencing legal action. I informed you at our meeting that this is not the preferred route but Miller may be left with no alternative but take that action. . . . Having said all of the above, Miller is still prepared to support and assist Caterpillar providing there is some form of fair commercial written agreement in place."); MTX177 at 5 ("I would also like the opportunity to update you with regard to the product Caterpillar have just released which gives me grave concern and which I believe will tarnish the Caterpillar reputation. . . . I appreciate that you will be very busy but I would only need approximately 2 hours with yourself and time permitting I would also like to invite you to dinner."); *id.* at 3 ("I am very disappointed that this is the route we have ended up with and therefore have attached for your attention a brief overview of . . . a small extract from part of the independent testing we had carried out on a Cat 312 machine with a Cat centre lock coupler fitted which was referred to in my previous correspondence. . . . After viewing this information, should you wish to reconsider and hold a meeting I would be pleased to do so at your earliest convenience.").

In addition, other evidence readily supports the view that Miller's purported "concerns" were nothing more than threats to force Caterpillar back to the negotiating table. Tr. 1223:11-17

5

("Q. Your objective was to get Caterpillar to the negotiating table, correct? A. Our objective, as I've just clearly explained to you, if Caterpillar had listened, it would have made a lot of sense and we wouldn't be stuck here today. Q. Is that a yes, sir? A. Partially."); CTX420 ("Lets discuss as we need to be ready to press the button and get cracking *if Caterpillar do not come to the negotiating table* in Jan"); CTX1298 ("*We need to put Cat under severe pressure* and this is one way….") (emphasis added in each). Because it was only after Caterpillar refused to accede to Miller's demands that it distributed its package, the jury could find an intent to harm.

Finally, Miller cites *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 392 (2008), for the proposition, "[u]nder Illinois law, commercial competitors are privileged to interfere with one another's prospective business relationships provided their intent is, at least in part, to further their businesses . . . ." Pl. Mem. at 17 ("The law is clear that a desire to compete, without more, does not defeat a qualified privilege."). But Miller omits the very next sentence: "The privilege to compete does not, however, encompass the use of *improper competitive strategies that employ fraud, deceit, intimidation, or deliberate disparagement*." *Imperial Apparel, Ltd.*, 227 Ill. 2d at 392 (emphasis added). For the reasons already stated, there is ample evidence from which the jury could find Miller employed "fraud, deceit, intimidation, or deliberate disparagement" in connection with the January 2011 Package. In short, the jury could reasonably find that Miller abused any qualified privilege.

**III.    A Reasonable Jury Could Find That Caterpillar Suffered Actual Damages**

Miller argues that Caterpillar failed to introduce evidence of damages to support its commercial disparagement, consumer fraud, and false advertising claims. But Caterpillar need not prove actual damages to establish commercial disparagement. Moreover, the jury could find that Caterpillar suffered actual damages sufficient to support its statutory claims.

6

### A. Commercial Disparagement Does Not Require Actual Damages

"As there are two kinds of defamatory statements, so there are two kinds of commercially disparaging statements." *Unique Concepts, Inc. v. Manuel*, 669 F. Supp. 185, 190 (N.D. Ill. 1987) (Moran, J.). "Statements which accuse a businessman of outright dishonesty or reprehensible business methods in connection with his goods are like defamation *per se*. The plaintiff bringing an action on such statements need not plead special damages since some damage can be presumed." *Id.*; *see also Smith-Victor Corp. v. Sylvania Elec. Products, Inc.*, 242 F. Supp. 302, 307 (N.D. Ill. 1965) (Decker, J.) (for claims that "referred to the rival's goods and imputed to the rival dishonesty or reprehensible business methods in connection with the goods . . . it is not necessary to allege special damages since some damage can be presumed").

This Court has already recognized "a single statement could simultaneously constitute defamation and commercial disparagement," in which case "both causes of action may lie." Dkt. No. 871 at 25 (quoting *Crinkley v. Dow Jones & Co.*, 67 Ill. App. 3d 869, 877 (1st Dist. 1978) ("A statement may also simultaneously attack both quality and integrity, in which case both causes of action may lie.")). Having determined that "Miller's communications" in the January 2011 Package fall within "a *per se* category of defamation" (*id.*), it must necessarily follow that they also constitute commercial disparagement *per se*.

In fact, there can be no other conclusion. Miller literally told Caterpillar's customers: ***Caterpillar products kill***. CTX452 (video showing decapitation by tool dropped from Center-Lock coupler). It is hard to imagine that a company could be accused of a more "reprehensible business method in connection with [its] goods." *See Unique Concepts, Inc.*, 669 F. Supp. at 190. Indeed, it would be an anomalous result if the Court were to conclude that Miller's statements were *per se* defamatory as to Caterpillar, but not *per se* disparaging as to its products.

7

Therefore, no proof of "actual damages" is required for Caterpillar's claim for commercial disparagement, and it is entitled to presumed damages as a matter of law.

### B. Caterpillar Suffered Actual Damages

In any event, Caterpillar introduced evidence of two types of actual damages: (1) costs to mitigate Miller's false statements; and (2) loss of goodwill. Moreover, Caterpillar is entitled to other relief under the Lanham Act even if it did not suffer any actual damages.

#### 1. "Damage Control" Damages

As this Court held on summary judgment, Caterpillar may recover its costs for "damage control"; in other words, expenses related to its mitigation efforts in response to the January 2011 Package. Dkt. No. 871 at 19 (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 692 (6th Cir. 2000)). The evidence showed the following such expenses: Rick Oswald attended a two-day test of the Center-Lock coupler conducted by the HSE in the United Kingdom and spent another week working on Caterpillar's response to Miller's false allegations (Tr. 2268:16-2270:16, Tr. 2275:21-2276:5); and Troy Robl and Trent Stefek spent roughly 23 and 19 hours, respectively, investigating and responding to Miller's false claims (Tr. 3223:10-13; Tr. 4136:12-23). Based on the pay rate for Robl and Stefek (Oswald's would be higher as their supervisor), Caterpillar incurred several thousands of dollars in "damage control" costs. Tr. 5230:9-13 ("And then we multiplied that by the hourly rate for the engineers that will likely be involved or the level of experience that would be involved, and that was -- the $45 rate was based upon the pay rate for Troy Robl and Trent Stefek.") (McGavock).

Miller asserts that these expenses are not a "cost incurred by Caterpillar" because the Seventh Circuit Pattern Instruction 13.6.3 on the "cost of corrective advertising" does not include "the value of a salaried employee's time." Pl. Mem. at 19 n.15. But Miller's argument is misplaced because Caterpillar's expenses are not a "cost of corrective advertising." Moreover,

8

the diversion of resources from business tasks to respond to Miller's misstatements is surely a "cost" to Caterpillar. *See Plastic Molded Techs., Inc. v. Cinpres Gas Injection Ltd.*, 290 F. Supp. 2d 793, 805 n.14 (E.D. Mich. 2003) ("[Damage control] expenses are recoverable even in the absence of evidence of actual confusion or 'marketplace damages,' such as lost sales, profits, or goodwill. The record here lends some support to this theory of recovery, as Plaintiff's representatives clearly were called upon to address with their customers the statements made in the October 6 letter.") (citation omitted). Thus, these expenses support Caterpillar's claims.

### 2. Damages To Caterpillar's Goodwill

Caterpillar also presented evidence of damages to its goodwill. Caterpillar's brand expert testified that Miller's January 2011 Package could adversely impact the value of Caterpillar's brand. Tr. 4772:8-13 ("Q. Counsel asked you some 'what ifs' with respect to safety. Let me ask you this question. If someone sent out a DVD like the Millers did that misrepresented the safety of Caterpillar products, could that impact the value of Caterpillar's brand? A. Yes, it potentially could.") (Smith). In fact, it was Miller's intent to damage Caterpillar's brand value with its customers. CTX420 ("We need a bucket to be dropped on American soil, we need to be in front of the dealer principals…."); MTX177 at 5 ("I would also like the opportunity to update you with regard to the product Caterpillar have just released which gives me grave concern and which I believe will tarnish the Caterpillar reputation.").

### 3. Other Relief

Caterpillar is entitled to a remedy for violation of the Lanham Act even without actual damages. As the Seventh Circuit has held, even if a party cannot show actual damages, "[o]ther avenues of relief, however, are not foreclosed." *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir. 1990). In this case, Caterpillar may obtain the costs of the action and, potentially, its attorneys' fees. *See id.*; 15 U.S.C. § 1117(a).

Further, Caterpillar is entitled to injunctive relief. Contrary to Miller's contention (Pl. Mem. at 20), Caterpillar introduced evidence of likely consumer confusion to support its Lanham Act claim. CTX720 (spreadsheet showing Miller contacts to Caterpillar dealers). Moreover, despite the demonstrated falsity of the January 2011 Package, Miller has not publicly retracted or revised any of its misstatements, nor has it promised not to disparage Caterpillar in the future. And because Caterpillar and Miller continue to compete in the same market, injunctive relief to address future harm remains warranted.

## CONCLUSION

For the foregoing reasons, Caterpillar respectfully requests that this Court deny Miller's Motion For Judgment As A Matter Of Law with respect to Caterpillar's counterclaims.

Date: December 16, 2015

Respectfully submitted,

*/s/* Gregory L. Baker

John M. Touhy (NDIL 3128400)
Edward H. Williams (NDIL 6217053)
David M. Friebus (NDIL 6286193)
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, IL 60606-1901
(312) 416-6200 phone
(312) 416-6201 facsimile
jtouhy@bakerlaw.com
ehwilliams@bakerlaw.com
dfriebus@bakerlaw.com

Gregory L. Baker (NDIL 288357)
Terry L. Sullivan (admitted *pro hac vice*)
Gregory J. Commins, Jr. (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036-5304
(202) 861-1500 phone
(202) 861-1783 facsimile
gbaker@bakerlaw.com
tsullivan@bakerlaw.com
gcommins@bakerlaw.com

*Attorneys for Defendant and Counterclaim-Plaintiff Caterpillar Inc.*

## **CERTIFICATE OF SERVICE**

   I, Gregory L. Baker, hereby certify that on December 16, 2015, a true and correct copy of ***CATERPILLAR INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON CATERPILLAR INC.'S COUNTERCLAIMS*** was filed with the Clerk of the Court and served by operation of the electronic filing system of the United States District Court for the Northern District of Illinois upon all counsel who have consented to receive notice of filings in the above-captioned matter pursuant to Fed. R. Civ. P. 5(b)(2)(D), the General Order on Electronic Case Filing, and Local Rule 5.9.

              /s/ Gregory L. Baker
              Gregory L. Baker